```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                    MIAMI DIVISION
                CASE NO. 1:16-cv-24431
 3

 4   GOLTV, INC., et al.,           Miami, Florida

 5         PLAINTIFFS,              November 4, 2016

 6      vs.                        1:32 p.m. to 1:54 p.m.

 7   FOX SPORTS LATIN AMERICA       Courtroom 13-4
     LTD., et al.,
 8                                 (Pages 1 to 21)
              DEFENDANTS.
 9
```

```
10                    STATUS CONFERENCE
           BEFORE THE HONORABLE CECILIA M. ALTONAGA,
11                UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE PLAINTIFFS:   PETER H. LEVITT, ESQ.
                           STEPHEN B. GILLMAN, ESQ.
14                         Shutts & Bowen
                           200 South Biscayne Boulevard
15                         Suite 4100
                           Miami, Florida 33131
16                         (305) 358-6300
                           Plevitt@shutts.com
17                         Sgillman@shutts.com

18                         THOMAS J. MCCORMACK, ESQ.
                           Chadbourne & Parke
19                         1301 Avenue of the Americas
                           New York, New York 10019-6022
20                         (212) 408-5182
                           tmccormack@chadbourne.com
21

22

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2     FOR THE DEFENDANTS:      JAY B. SHAPIRO, ESQ.
                                Stearns Weaver Miller Weissler Alhadeff
 3                              & Sitterson, P.A.
                                Museum Tower
 4                              Miami, Florida 33130
                                (305) 789-3229
 5
                                TOBIN ROMERO, ESQ.
 6                              Williams & Connelly LLP
                                725 Twelfth Street, Northwest
 7                              Washington, D.C. 20005
                                (202) 434-5140
 8                              tromero@wc.com

 9                              JUAN RODRIGUEZ, ESQ.
                                CAREY RODRIGUEZ, ESQ.
10                              Carey Rodriguez Greenberg O'Keefe LLP
                                1395 Brickell Avenue
11                              Suite 700
                                Miami, FL 33131
12                              (305) 372-7474
                                jrodriguez@careyrodriguez.com
13
                                ANDREW J. DURKOVIC, ESQ.
14                              Amsterdam & Partners, LLP
                                The Homer Building
15                              601 13th Street, Northwest
                                Eleventh Floor South
16                              Washington, D.C. 20005
                                (202) 534-1804
17                              (Appeared telephonically)

18                              James Sharp, ESQ.

19

20

21

22

23

24

25
```

```
 1

 2     APPEARANCES CONTINUED:


 3

       REPORTED BY:              STEPHANIE A. McCARN, RPR
 4                               Official Court Reporter
                                 400 North Miami Avenue
 5                               Twelfth Floor
                                 Miami, Florida 33128
 6                               (305) 523-5518
                                 Stephanie_McCarn@flsd.uscourts.gov
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              **I N D E X**

2                              **WITNESSES**

3
     **WITNESSES FOR THE PLAINTIFFS:**                      **Page**
4                                                             **--**

5


6
     **WITNESSES FOR THE DEFENDANTS:**                      **Page**
7                                                             **--**

8


9    **EXHIBITS MARKED & ADMITTED IN EVIDENCE   MARKED   ADMITTED**

10   **Plaintiffs' Exhibit No.**                   **--**       **--**

11   **Defendants' Exhibit No.**                   **--**       **--**

12

13

14

15

16

17                          **MISCELLANEOUS**

18                                                             **Page**
     **Proceedings.......................................     5**
19   **Court Reporter's Certificate......................    21**

20

21

22

23

24

25

1          (The following proceedings were held at 1:32 p.m.)

2          THE COURT:  In the matter of GolTV, Inc., and Global

3  Sports Partners, LLP, v. Fox Sports Latin America and a number

4  of other defendants, I will wait for counsel to be seated and

5  ask that you begin stating your names, please.

6          MR. LEVITT:  Good afternoon, Your Honor.  Peter Levitt

7  and Steve Gillman of Shutts & Bowen.  We are Florida counsel

8  for the Plaintiffs.  And with me to my left is Tom McCormack of

9  Chadbourne & Parke, who is lead counsel for the Plaintiffs.

10          THE COURT:  Good afternoon.

11          MR. MCCORMACK:  Good afternoon, Your Honor.

12          MR. SHAPIRO:  Good afternoon, Your Honor.  Jay Shapiro

13  for the Defendant from the Sterns Weaver firm on behalf of the

14  Fox Defendants, and for the record, the Fox Defendants are the

15  first four corporate entities in the complaint and they are Fox

16  Sports Latin America, Pan American Sports Enterprises Company,

17  Fox International Channels (US), Inc., and Fox Networks, Inc.

18          Your Honor, I would also like to introduce you to

19  Mr. Tobin Romero from the Williams & Connolly firm in

20  Washington, D.C.  Mr. Romero has, as of about an hour ago, been

21  admitted *pro hac vice* in the case.

22          THE COURT:  All right.  And could you spell that name,

23  please, for the court reporter.

24          MR. ROMERO:  Certainly.  First name is Tobin,

25  T-O-B-I-N, last name is Romero, R-O-M-E-R-O.

1        Good afternoon, Your Honor.

2        THE COURT:  Good afternoon.

3        Do we have anyone else appearing?

4        MR. RODRIGUEZ:  Your Honor, good afternoon.  Juan

5  Rodriguez, Carey Rodriguez.  We are representing CONMEBOL.

6        THE COURT:  C-O-N-M-E-B-O-L.  Okay.

7        Are we missing anyone?  No?  All right.  I thought

8  somebody was appearing by phone or no?  No?  Okay.

9        MR. SHAPIRO:  Your Honor, Jay Shapiro for the record.

10  I -- we thought there would be two other Defendants appearing

11  by phone.  But it is my understanding that at least half of the

12  Defendants have not yet been served in the case, so they are

13  not going to be here, I suspect, today.  In fact, Your Honor,

14  when I checked the docket this morning, I didn't see any

15  returns of service, but I am sure Mr. McCormack can update the

16  Court as to who's been served today.  I know that my clients

17  were served within the last day or two, but I know there's a

18  substantial number of other Defendants who are not before the

19  Court.

20        THE COURT:  That's why we are all here today.

21        All right.  Let me explain the purpose of this status

22  conference and why I felt it prudent to at least get us all

23  together at this early stage.

24        When I reviewed the complaint, I noted a number of

25  foreign Defendants; I noted some who are not.  And that always

```
 1    becomes problematic in the management of a case.  You have
 2    90 days to serve the defendants, and if you are intending --
 3    you, being the plaintiffs, if you are intending to go through
 4    any procedures like The Hague Convention, it's going to delay
 5    the case and I'm going to close it out while you go after all
 6    the various defendants and get services.  I'm not going to have
 7    a scheduling order in place with one track only to have to
 8    revisit it when other parties start appearing.  That's not
 9    effective.
10            So this status conference is mostly for the Plaintiff.
11    I did not think that any Defendants would be served.  But I
12    welcome all of you being here because it obviously impacts you
13    as well.
14            So why don't I hear from Mr. McCormack.
15            MR. MCCORMACK:  Thank you, Your Honor.  It is correct
16    that the various Fox entities have accepted service of process.
17    Mr. Martinez and Mr. Lopez have also accepted service of
18    process although they apparently do not have counsel yet.  Mr.
19    Gambli is a Florida resident.  We are in the process of serving
20    him.  T & T Sports Marketing Limited, Atornios are foreign
21    entities.
22            THE COURT:  Which one?  I'm -- which one?
23            MR. MCCORMACK:  T & T Sports Marketing, about maybe
24    60 percent down from the top.
25            THE COURT:  All right.  Is a foreign entity?
```

```
 1              MR. MCCORMACK:  Yes, ma'am.

 2              THE COURT:  Out of where?

 3              MR. MCCORMACK:  It's -- let me look.  I've got my

 4    cheat sheet here.  I think it is a Cayman Islands company.

 5              THE COURT:  All right.

 6              MR. MCCORMACK:  It is a Cayman Islands limited

 7    liability company.  And Atornios is a entity.  Atornios is also

 8    a foreign entity.  Atornios is an Argentine company.  Alexandro

 9    Versato is an Argentine citizen but he resides in the United

10    States as best as we understand it.  He is -- Full Play Group

11    is from Argentine.  The Jinkis father and son team are from

12    Argentine.

13              THE COURT:  Mariano Jinkis?

14              MR. MCCORMACK:  Yes, Your Honor, and also Hugo Jinkis.

15    There are two of them.  One is the father and one is the son.

16              THE COURT:  Hold on.  Hold on.  Hugo and Mariano.

17              MR. MCCORMACK:  Yes, Your Honor.

18              THE COURT:  All right.

19              MR. MCCORMACK:  They are Argentinians.  CONMEBOL is

20    the one that we've already talked about.  They have also

21    accepted service.  Mr. Fideo is a citizen of the United States

22    and Uruguay.  My understanding is he's in Uruguay currently.

23    And Mr. Naput I believe is also a resident of the United

24    States.

25              So we are in the process and believe we are making
```

```
 1    progress on serving all of these Defendants.  I should mention,
 2    however, in response to something Your Honor mentioned earlier.
 3    The Jinkis entities, the father and son, have been indicted as
 4    have a number of these defendants.  Some have already pled
 5    guilty.  But the Jinkis individuals have evaded service from
 6    the U.S. Government in Argentina and efforts to have them
 7    extradited to the United States.
 8              THE COURT:  Hold on.  I'm sorry.  Osama pled guilty
 9    but not Jinkis.
10              MR. MCCORMACK:  That is correct.
11              THE COURT:  All right.
12              MR. MCCORMACK:  The two Jinkis guys had not pled
13    guilty but they are under indictment and the U.S. is seeking to
14    extradite them from Argentina.  It is possible that they will
15    evade service from us.  If that's the case, we will
16    respectfully, Your Honor, return to this court and perhaps seek
17    other means, then, to serve them if possible.  But it is also
18    possible that they will continue to evade service or to run
19    from the responsibility for this, in which event, then I guess
20    I would say to Your Honor, I wouldn't want to wait for six
21    months or a year for the rest of the Defendants.  The primary
22    focus of the lawsuit, obviously, is the Fox entities and
23    CONMEBOL.  They're now here.
24              So my view would be that we're going to work very
25    diligently to serve these parties as quickly as we can.  We're
```

1  underway with all of them.  And I guess I would say that if it

2  turns out that we can't get one, that I wouldn't -- at least I

3  would respectfully suggest that holding up the entire thing to

4  try to serve somebody who is affirmatively evading us might

5  not -- might not be something that we would willingly go along

6  with and we might be back before Your Honor to ask for perhaps

7  alternate means of service or some other vehicle to allow this

8  case to proceed if that circumstance arose.

9          THE COURT:  How many defendants have you named?

10          MR. MCCORMACK:  We have named approximately 13, Your

11  Honor, 14.

12          THE COURT:  13, 14.  Of those, how many do you need to

13  serve through international means?

14          MR. MCCORMACK:  I would probably say maybe five of

15  them.

16          THE COURT:  Okay.  And of the five that you intend to

17  serve internationally, several -- one is in the Cayman Islands,

18  some are in Argentina.  Uruguay?

19          MR. MCCORMACK:  Yes, one is in Uruguay.

20          THE COURT:  Well?

21          MR. MCCORMACK:  I think that's it, Your Honor.

22          THE COURT:  That's it.  Those three countries?

23          MR. MCCORMACK:  Yes.

24          THE COURT:  How are you going to be serving these

25  companies and people who are not located in the United States?

```
 1              MR. MCCORMACK:  There is a -- there is an

 2   interstate -- well, I don't know how much I should --

 3              THE COURT:  Well, here is the thing.  We have some

 4   Defendants already here.  My practice is to send out an order

 5   immediately.  I think we have folks who are on the phone.

 6              Do we have any parties who have called in?

 7              MR. MCCORMACK:  Well, they're on mute if you want

 8   to --

 9              THE COURT:  All right.

10              Excuse me.

11              This is Judge Altonaga.  Do we have any parties on the

12   phone who would like to state your names, please?

13              MR. SHARP:  Yes, Your Honor.  James Sharp, counsel for

14   Carlos Martinez.

15              THE COURT:  Could you spell your last name, please?

16              MR. SHARP:  S-H-A-R-P.

17              THE COURT:  Thank you.

18              Anyone else?

19              MR. DURKOVIC:  Hello.  This is Andrew Durkovic with

20   Amsterdam & Partners in Washington.  We're counsel for the

21   South American Football Confederation CONMEBOL.  My last name

22   is spelled D-U-R-K-O, V as in Victor, I, C as in Charlie.

23              THE COURT:  Thank you.

24              Anyone else?

25              Okay.  We have begun this status conference, Mr. Sharp
```

```
 1   and Mr. Durkovic.  I have been hearing mostly from

 2   Mr. McCormack about the various Defendants, how many of them

 3   are located in other countries.  And we began the status with

 4   me explaining the purpose of the status which was to get a

 5   handle on when it is we can expect to have all Defendants

 6   before the Court and what efforts Plaintiffs may be undertaking

 7   because I don't want the case to go on more than one track.  We

 8   don't get off the ground until all parties are before the

 9   Court, and if they start trickling in weeks and months and

10   years after others have been engaged in discovery, case

11   management is not to my liking.  So my practice --

12            I will put the question to you, Mr. McCormack.  You

13   have -- you filed the -- well, actually it was -- let me see.

14   The case was filed on the 20th of October?

15            MR. MCCORMACK:  Yes, Your Honor.

16            THE COURT:  And you have 90 days to serve.

17            MR. MCCORMACK:  Yes.

18            THE COURT:  And so once those -- and I am going to be

19   asking for a scheduling order from the parties so to have you

20   give me your estimate of what you want -- when you want the

21   case to go to trial and what your discovery time period looks

22   like but you really can't formulate that until all the folks

23   are before me, right?

24            MR. MCCORMACK:  Yes, I recognize that.  We have

25   already discussed with a number of the Defendants possible
```

1   scheduling dates for motions to dismiss, I presume, or for

2   responses, and we are actively seeking to serve the remaining

3   entities and that's what we are going to do.

4          I guess I had a sense that maybe we could run two

5   tracks but that's not my call.  So if you are not inclined to

6   do that, then maybe what I need to do --

7          THE COURT:  It drags out the case.  It makes it

8   duplicative and repetitive.  It has parties who come on board

9   later trying to catch up not having been parties to depositions

10  and other proceedings.  And I frankly don't like it.  It is not

11  case management effective or efficient.  So we can close it out

12  administratively, you go about seeking to -- that all the

13  parties before the Court whom you want to have here and let me

14  know when you are ready to go forward, and they have all been

15  properly served, or you want to go ahead and sue others

16  separately later on the road, but it won't impact the progress

17  of this case.

18         MR. MCCORMACK:  All right, Your Honor.  So as I

19  understand it, you would like me to either solve the service

20  problem as soon as I can, once I have come back to you and if I

21  think of alternatives to that, for instance, dropping certain

22  defendants or conceivably putting them in a separate case or

23  maybe even asking Your Honor under the Federal Rules and some

24  case law for alternate means of service if I have people

25  evading me, etc., all of those options would be available to me

1    but I understand that --

2         THE COURT:  They are.  But alternate means of service,

3    I mean you get to that point after you have exhausted other

4    avenues, and all of that consumes time.

5         MR. MCCORMACK:  Absolutely.  And I have already

6    underway several different ways to do this, and I understand

7    what you're saying to me is, Counsel make progress the night

8    before we get going, and I get that.

9         THE COURT:  Now, being a multidefendant case, case

10   management -- the purpose of case management is to make all of

11   their lives easier, and it doesn't make my life any easier or

12   that of my law clerk to have multiple motions to dismiss the

13   complaint filed by various and sundry defendants who

14   incorporate various parts of each other's motions and memoranda

15   and refer back and forth.  You are all going to file one.  It's

16   going to be one motion, one combined motion, so that I don't

17   have to read the background facts over and over again, and I

18   don't have to be referring back and forth and have, I don't

19   know, 13 fully briefed motions to dismiss with their responses

20   and replies and try to make sense of that.

21        I will hear from Defense counsel.

22        MR. SHAPIRO:  Your Honor, that makes perfect sense.  I

23   certainly agree that you don't need to read the same discussion

24   of *Iqbal* and *Twombly* in 9(b) five different times.  But I would

25   suggest when I've done this in other multidefendant cases --

```
 1   because not all of the Defendants are named to all of the

 2   counts and not all of the Defendants are similarly situated.  I

 3   don't think this is going to be a completely cohesive group.

 4   What I would suggest is that the parties can get -- once

 5   everybody is before the Court, the Defendants get together,

 6   figure out what common defenses they want to assert on a motion

 7   and file a common brief, but then if there are individual

 8   motions to dismiss that only affect certain Defendants, maybe

 9   you'd want to have those submitted separately, that an overlap

10   and resuscitation of all --

11        THE COURT:  No, they would be subparts.  They would be

12   subparts of that comprehensive motion.  So after all of the

13   common arguments are addressed and briefed, following which

14   there might be a particular argument that one Defendant is

15   making as to one count.  But I am not going to have multiple

16   filings.

17        MR. SHAPIRO:  Okay.  But -- of course, we will do it

18   however you'd like, Your Honor.  The only issue that raises is

19   an issue of page --

20        THE COURT:  No, you'll have -- of course, I am not

21   going to hold you to the page limit.  That would be

22   unreasonable.

23        MR. SHAPIRO:  Okay.  So once -- I suspect once

24   everybody -- we figure out who is going to be in the case and

25   once you get the case started again, I suppose we can get with
```

1    Mr. McCormack, try to negotiate a stipulation on page

2    limitations and submit it to you, I suspect we will be able to

3    get that done.

4              THE COURT:  Correct.

5              MR. SHAPIRO:  Okay.

6              MR. MCCORMACK:  Your Honor --

7              MR. DURKOVIC:  Good evening, Your Honor.  If I might

8    be heard.  It is Andrew Durkovic for CONMEBOL.  And further to

9    the point that counsel made about the -- sort of the separate

10   standing that these parties may have.  My client does come at

11   this from a unique perspective and of course we don't have an

12   objection if the Court wants to hear motions to dismiss all in

13   one comprehensive motion so long as we have the ability in our

14   section to distinguish our background facts from those of the

15   other Defendants and preserve our rights that way.  And I am

16   sure the Court has no objection to that either.

17             THE COURT:  Right.  Mr. Shapiro knows exactly where I

18   am coming from.  I don't want to see *Iqbal* and *Twombly*

19   discussed in 13 different ways and summarized in 13 different

20   ways or the 56-page complaint summarized and everyone's

21   background facts and then have to go back to -- refer back to

22   different motions and portions of memorandum that are

23   incorporated by reference, that if you want to slow me down,

24   that will do it, but we are not going to be there because I

25   don't like that and I won't have that.

```
 1              Mr. McCormack?

 2              MR. MCCORMACK:  Your Honor, thank you for the

 3    conference.  I think it does get everybody at least in mind how

 4    we are going to proceed here.  And I have already had a --

 5    positive communications with Defense counsel.  It's been

 6    cordial and professional so far.  I don't know if it will stay

 7    that way but it certainly has been so far.  We've been -- we've

 8    been talking about dates and times.  Some of that is now a

 9    little bit obsolete because I think Your Honor would like to

10    see the progress we make on naming everybody before we get into

11    it.

12              THE COURT:  Right.

13              MR. MCCORMACK:  So perhaps what I can do is report

14    back to this assembled group in 30 days --

15              THE COURT:  Uh-huh.

16              MR. MCCORMACK:  -- on the progress I have made on

17    service, and if I have a different view about what I will do in

18    the event somebody is evading my service, I will bring it to

19    the Court's attention at that time.

20              THE COURT:  So why don't we do the following:  I will

21    enter an order today that requires Plaintiffs to supply all of

22    us with a status regarding service on the outstanding

23    Defendants.  I don't want to see any responses to the complaint

24    until after we have had that status conference so we have an

25    idea in terms of timetable.
```

```
 1              I am going to be issuing my order that requires

 2    certificates of interested parties.  Not -- not that I'm going

 3    to be asking for a joint scheduling report because it would be

 4    premature to ask for that now, but I do need to know if I need

 5    to be out of the case or not or who has an interest in the case

 6    so I do need that information from all of you.  And I will get

 7    that part of my standard order out.  And then 30 days from

 8    Mr. McCormack to let us know where we are and where we are

 9    going.

10              Mr. Sharp, any issues from you?

11              MR. SHARP:  None.

12              THE COURT:  Mr. Durkovic?

13              MR. DURKOVIC:  No.

14              THE COURT:  Mr. Romero?

15              MR. ROMERO:  No, Your Honor.

16              THE COURT:  Mr. Shapiro.

17              MR. SHAPIRO:  Just one housekeeping matter, Your

18    Honor, because I think you have hit on a very important point

19    with respect to the geographic dispersement of all the

20    Defendants.  There are also going to be a significant number of

21    nonparty witnesses who are located throughout the -- Latin and

22    South America.  So that is also going to require service at the

23    time the case gets going of process.  They are not going to be

24    subject to compulsory process from a U.S. court so we are going

25    to have to engage either The Hague or depending on what
```

```
 1    countries they're in processed through another convention or
 2    treaty.
 3              So I bring all this up now because I think you've hit
 4    on part of the issue.  It is also going to affect our ability
 5    to get discovery from nonparties.  So perhaps once
 6    Mr. McCormack reports back to the Court and lets us know either
 7    all the parties are served or we are only going forward with
 8    nine out of the 12 Defendants, perhaps you can bring us back in
 9    at that point because I would like to have a conversation with
10    scheduling about you before you enter your standard scheduling
11    order because I think -- I am sure you have had cases where you
12    had nonparty discovery go through The Hague.  It is not a
13    speedy process.
14              THE COURT:  It is not.
15              MR. SHAPIRO:  So the last case I had, it took
16    six months to get a subpoena issued out of Europe for European
17    defendants.  So I'd like to at least have a conversation with
18    Your Honor at that point about scheduling before you enter your
19    standard scheduling order, even if it's on a complex track,
20    because those issues we should deal with up front, I think.
21              THE COURT:  I agree with you.  I normally don't have
22    scheduling conferences before I enter my scheduling order but
23    in this case I think it would be prudent to do so and have us
24    all back together.  And you all don't have to be appearing
25    personally, if you are traveling --
```

1    Mr. McCormack, you are in New York?

2    MR. MCCORMACK:  Yes, Your Honor.

3    THE COURT:  Right.  So you could appear by phone, for

4 example, and we can all look at the calendars and discuss

5 what's realistic and who is out there that needs to be deposed

6 or -- Argentina, Uruguay.  Well, all right.  Anything else?

7    MR. MCCORMACK:  Nothing, Your Honor.  I would be happy

8 to report in 30 days.

9    THE COURT:  Excellent.

10    MR. SHAPIRO:  Yes, Your Honor.  Just so I'm

11 understanding, you're suspending all of the deadlines in --

12    THE COURT:  Correct.

13    MR. SHAPIRO:  -- so we don't have to respond.  Okay.

14    THE COURT:  Correct.  Correct.  Once we know that we

15 are going forward and who we're going forward with and on, then

16 we will discuss a briefing schedule for all of you to get your

17 12(b)(6) motion together.  It will probably take you longer

18 than normal because it's all of you coordinating your various

19 sections and subparts and agreeing on how to present it and the

20 format and so forth, so we would discuss an extension of time

21 for that as well.

22    MR. SHAPIRO:  All right.  Thank you, Your Honor.

23    MR. MCCORMACK:  Thank you, Your Honor.

24    THE COURT:  Thank you very much.  Nice to see

25 everyone.

```
 1          MR. SHARP:  Thank you, Your Honor.

 2      (The proceedings concluded at 1:54 p.m.)

 3

 4                  C E R T I F I C A T E

 5

 6      I hereby certify that the foregoing is an

 7  accurate transcription of the proceedings in the

 8  above-entitled matter.

 9

10

11  _11/09/16_              STEPHANIE A. McCARN, RPR
       DATE                 Official United States Court Reporter

12                          400 North Miami Avenue, Twelfth Floor
                            Miami, Florida 33128

13                          (305) 523-5518

14

15

16

17

18

19

20

21

22

23

24

25
```