**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-24431-CIV-ALTONAGA/O'Sullivan**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOLTV, INC., and GLOBAL SPORTS
PARTNERS LLP,

                                     Plaintiffs,

      - against -

FOX SPORTS LATIN AMERICA, LTD., PAN
AMERICAN SPORTS ENTERPRISES
COMPANY, d/b/a FOX SPORTS LATIN
AMERICA (individually and as successor to FOX
PAN AMERICAN SPORTS LLC), FOX
INTERNATIONAL CHANNELS (US), INC.,
FOX NETWORKS GROUP, INC. (as successor to
FOX INTERNATIONAL CHANNELS (US),
INC.), CARLOS MARTINEZ, HERNAN LOPEZ,
JAMES GANLEY, T&T SPORTS MARKETING
LTD., TORNEOS Y COMPETENCIAS, S.A.,
ALEJANDRO BURZACO, FULL PLAY GROUP
S.A., CONFEDERACION SUDAMERICANA DE
FUTBOL, d/b/a CONMEBOL, EUGENIO
FIGUEREDO, and JUAN ÁNGEL NAPOUT,

                                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>**UNITED STATES' MOTION TO INTERVENE**</u>
<u>**AND TO STAY CIVIL PROCEEDINGS**</u>

<u>PRELIMINARY STATEMENT</u>

        The United States (the "government"), through the undersigned Special Assistant

United States Attorney, respectfully submits this redacted motion to intervene in the above-

captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of

the related criminal case <u>United States v. Hawit, et. al</u>, 15 CR 252 (S-1) (PKC) (the "Criminal

Case"), in the United States District Court for the Eastern District of New York, and a related,

ongoing grand jury investigation.[1]   The same underlying facts are at issue in both the Civil and Criminal Cases.

Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, d/b/a Fox Sports Latin America, Fox International Channels (U.S.), Inc., and Fox Networks Group, Inc., (collectively, the "Fox Entities"); Carlos Martinez, Hernan Lopez, and James Ganley (collectively, the "Fox Executives"); T&T Sports Marketing Ltd. ("T&T"); Torneos y Competencias S.A. ("Torneos"); Alejandro Burzaco; Full Play Group S.A. ("Full Play"); and the Confederacion Sudamericana de Futbol, d/b/a Conmebol ("Conmebol"), have advised the government through retained counsel that they take no position on (Fox Entities, Carlos Martinez, Hernan Lopez, T&T, Full Play), do not object to (James Ganley, Conmebol), or consent to (Torneos, Burzaco) the government's motion for a stay of the Civil Case.   Counsel for plaintiffs GolTV, Inc. and Global Sports Partners LLP and for defendant Juan Ángel Napout have indicated that the Plaintiffs and Napout oppose the government's motion for a stay.[2]

A stay of proceedings is appropriate because the government's motion is timely and because the Civil Case relies on the same alleged bribery schemes and related conduct that are at issue in the Criminal Case and are the subject of an active, ongoing grand jury investigation.   A

---

[1] The government is filing this motion in redacted form pursuant to the Court's order dated April 17, 2017, ECF Document No. 127, allowing the government to file a redacted motion to intervene and stay, deleting those matters it does not want to make public.  The government respectfully submits that the information provided publicly herein strongly supports the granting of its motion to intervene in and stay the Civil Case.   Should the Court request additional details relating to the particular risks posed by the Civil Case to the integrity of the government's ongoing investigation, non-parties to the case, and the safety of witnesses, among other relevant factors, the government proposes to file an unredacted version of this brief ex parte and under seal.

[2] The parties' positions are the same with respect to the government's motion to intervene except that the Fox Entities consent to and the Plaintiffs do not oppose the motion to intervene. Civil Defendant Eugenio Figueredo has yet to indicate whether he intends to proceed in the Civil Case pro se or through retained counsel.   Because Figueredo is a charged defendant in the Criminal Case, the government has not attempted to contact him directly.

stay of proceedings is necessary and in the interest of justice to protect the integrity of the ongoing investigation, to prevent certain defendants named in the Civil Case from using civil discovery to avoid the restrictions on criminal discovery that would otherwise pertain to them in the Criminal Case, to protect trial witnesses from the risk of interference, to prevent charged defendants from having to forego their Fifth Amendment right against self-incrimination or risk an adverse inference or judgment in the Civil Case, and to promote judicial economy.   Accordingly, the government respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24; and (2) order, pursuant to the Court's inherent power, that proceedings in the Civil Case be stayed until the conclusion of the related Criminal Case and the ongoing grand jury investigation.

## FACTUAL BACKGROUND

I.    The Civil Case

On March 6, 2017, Plaintiffs GolTV, Inc. and Global Sports Partners LLP (collectively, the "Plaintiffs") filed an amended complaint (the "Complaint" or "Civil Complaint") (ECF Docket Entry No. 78) against the Fox Entities, the Fox Executives, T&T, Torneos, Burzaco, Full Play, Conmebol, Figueredo, and Napout (collectively, the "Civil Defendants").[3]   The Complaint alleges that the Plaintiffs are "victims of a bribery scheme described by the U.S. Department of Justice ("DOJ") in its criminal indictments against, among others," Burzaco, a former principal of Civil Defendant T&T; Hugo and Mariano Jinkis, principals of Civil Defendant Full Play; Figueredo and Napout, both former presidents of Civil Defendant Conmebol, and numerous other Conmebol officials.   Complaint ¶ 2.   The allegations in the Complaint derive from the allegations at issue in the Criminal Case, as set forth in the superseding indictment, which

---

[3] The Plaintiffs' initial complaint, filed on October 20, 2016 (ECF Docket Entry No. 1), also named Hugo and Mariano Jinkis as additional defendants.   Hugo and Mariano Jinkis are charged defendants in the criminal case, as are Figueredo, Napout, and Burzaco, as discussed in greater detail herein.

was filed in this Court as Exhibit A to the Civil Complaint.  Plaintiffs cite extensively to the superseding indictment and related court filings in the Criminal Case as the basis for the allegations in the Civil Complaint.  See, generally, id. ¶¶ 1-267.

Plaintiffs allege, among other things, that T&T "paid tens of millions of dollars in bribes and kickbacks to corrupt Conmebol directors between 2000 and 2015 in exchange for the exclusive television rights to Conmebol's prestigious international soccer club tournaments."  Id. ¶ 3.  These tournaments include the Copa Libertadores de America ("Copa Libertadores"), the Copa Sudamericana, and the Recopa Sudamericana (collectively, the "Club Tournaments").  Id. Plaintiffs allege that Fox Pan American Sports LCC (as predecessor of Fox Sports Latin America) and Torneos used T&T to pay bribes to Conmebol officials to perpetuate the bribery schemes described in the superseding indictment.  Id. ¶¶ 3, 5-10, 61-63.  Plaintiffs contend that, as a result of "T&T's unlawful agreement with Conmebol and its payment of tens of millions of dollars in bribes to Conmebol officials . . . Conmebol repeatedly rejected Plaintiffs' superior offers for the Club Tournament television rights in favor of inferior terms from T&T."  Id. ¶ 108.  Based on these allegations, Plaintiffs assert violations of, among other statutes, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Sections 1 and 2 of the Sherman Act.  Id. ¶ 13.

II.    The Criminal Investigation

A.    The Indictments

On May 20, 2015, a federal grand jury sitting in the Eastern District of New York returned a 47-count indictment charging 14 individuals, including Burzaco and Figueredo, as well as Full Play principals Hugo and Mariano Jinkis, with racketeering conspiracy, wire fraud, and money laundering offenses, among other crimes.  See United States v. Webb, et al., 15-CR-252. The original indictment was unsealed on May 27, 2015, following the arrests of some of the charged defendants.  On November 25, 2015, the Grand Jury returned a 92-count superseding indictment charging 16 additional defendants, including Napout, with racketeering conspiracy,

wire fraud, and money laundering offenses, among other crimes.   See United States v. Hawit, et al., 15-CR-252 (S-1) (PKC).[4]   The superseding indictment (hereinafter, the "Indictment") was unsealed on December 3, 2015, following the arrests of certain of the newly charged defendants.

Several of the defendants in the Criminal Case were charged with, among other conduct, the same conduct the Plaintiffs subsequently alleged in the Civil Complaint.   The Indictment alleges, for example, that Burzaco, Figueredo, Napout, Hugo Jinkis, and Mariano Jinkis, along with other criminal defendants and their co-conspirators, participated in criminal schemes involving the agreement to pay and receive more than $200 million in bribes and kickbacks.   Indictment ¶ 100.   One of these schemes, entitled "Conmebol Copa Libertadores Scheme #2" in the Indictment and referred to herein after as the "Copa Libertadores Scheme," formed the basis for the Plaintiffs' allegations in the Civil Complaint.   See id. ¶¶ 174-85; Complaint ¶¶ 61-107.   The Indictment alleges that beginning in or about 1999 and continuing through 2015, T&T acquired the exclusive worldwide broadcasting rights to each edition of the Club Tournaments, through a series of contracts between T&T and Conmebol.   Indictment ¶ 177. The Indictment describes the bribe payments that enabled T&T to obtain the broadcasting rights to the Club Tournaments from Conmebol between 2000 and 2012 and the roles that Napout, Figueredo, Burzaco, Hugo and Mariano Jinkis, Full Play, Conmebol, T&T, and Torneos played in executing these payments.   Id. ¶¶ 178-85.   Based on these allegations, the government charged Napout, Figueredo, and Hugo and Mariano Jinkis, among other defendants, with conspiratorial racketeering, wire fraud, and money laundering offenses related to the Conmebol Copa Libertadores Scheme.   Id. ¶¶ 362-64, 378-81.

---

[4] Burzaco pled guilty to various charges on November 16, 2015, and thus was not charged in the Superseding Indictment on November 25, 2015. ██████████████████████████████
████████████████████████████████████████████████████████████████████████████████████

B.     Guilty Pleas and Related Proceedings

The guilty pleas of more than 20 defendants have been made public during the course of the Criminal Case and the related investigation, including as follows:

- Alejandro Burzaco, an Argentine sports marketing executive charged in the original indictment and a participant in the bribery schemes alleged in the Civil Complaint, pled guilty to conspiratorial racketeering, wire fraud, and money laundering charges on November 16, 2015.  See Webb, et al., 15-CR-252 (PKC), ECF Docket Entry No. 263.

- José Margulies, a broadcasting intermediary charged in the original indictment and a participant in the bribery schemes alleged in the Civil Complaint, pled guilty to conspiratorial racketeering, wire fraud, and money laundering charges on November 25, 2015.  See Webb, et al., 15-CR-252 (PKC), ECF Docket Entry No. 96

- Luis Bedoya, former president of the Colombian soccer federation, vice president of the Conmebol executive committee, member of the FIFA executive committee, and participant in the bribery schemes alleged in the Civil Complaint, pled guilty on November 12, 2015 to a two-count information charging him with conspiratorial racketeering and wire fraud offenses.  See United States v. Bedoya, 15-CR-569 (PKC), ECF Docket Entry Nos. 5, 7.

- Sergio Jadue, former president of the Chilean soccer federation, vice president of the Conmebol executive committee, and participant in the bribery schemes alleged in the Civil Complaint, pled guilty on November 23, 2015 to a two-count information charging him with conspiratorial racketeering and wire fraud offenses.  See United States v. Jadue, 15-CR-570 (PKC), ECF Docket Entry Nos. 3, 4.

- Rafael Esquivel, the longtime president of the Venezuelan soccer federation, a vice president of the Conmebol executive committee, and a participant in the bribery schemes alleged in the Civil Complaint, pled guilty on November 10, 2016 to conspiratorial racketeering, wire fraud, and money laundering offenses alleged in the Indictment.  See Hawit, et al., 15-CR-252 (S-1) (PKC), ECF Docket Entry No. 476.



On December 13, 2016, Torneos entered into a four-year deferred prosecution agreement ("DPA") with the United States Attorney's Office for the Eastern District of New York. See United States v. Torneos y Competencias S.A., No. 16-CR-634 (PKC) (E.D.N.Y. Dec. 13,

2016) (ECF Docket Entry Nos. 4-1 and 4-2).   In connection with the deferred prosecution agreement, Torneos admitted to its involvement ███████████████████████████████ ████████████████████████████████████ in the Copa Libertadores scheme.

### C.   Trial in the Criminal Case

Trial in the Criminal Case is scheduled to begin on November 6, 2017.   At present, there are five defendants before the Court who are scheduled to be tried starting on that date, including Napout.[5]   Severance motions are pending before the court and additional pre-trial motions are expected to be filed between now and the start of trial. ████████████████



### D.   The Government's Ongoing Investigation

The government's investigation into corruption in international soccer is ongoing, active, ████████████████████████████████████

---

[5] The other trial defendants are José Maria Marin, the former president of the Brazilian soccer federation, and Manuel Burga, the former president of the Peruvian soccer federation, both charged as co-defendants of Napout and Figueredo, among others, in counts relating to the Copa Libertadores Scheme; Costas Takkas, former attaché to former CONCACAF president Jeffrey Webb; and Hector Trujillo, the former general secretary of the Guatemalan soccer federation and a judge on the Constitutional Court of Guatemala.   Although Burga was charged in several counts of the Indictment, he was extradited from Peru solely on the top count, charging racketeering conspiracy, and thus will be tried solely on that count, though evidence of his involvement in the Copa Libertadores Scheme, among other schemes, will be introduced as proof of his involvement in the racketeering conspiracy.



ARGUMENT

I.      Applicable Law

        A.      Legal Standard Governing Motions to Intervene

                The Federal Rules of Civil Procedure provide that anyone, including the

government, may move to intervene in a civil action either as a matter of right or on a permissive

basis.   Rule 24(a) of the Federal Rules of Civil Procedure provides that courts must permit anyone

to intervene as of right who:

                        claims an interest relating to the property or transaction that is the
                        subject of the action, and is so situated that disposing of the action may
                        as a practical matter impair or impede the movant's ability to protect
                        its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).   Intervention is thus appropriate under Rule 24(a)(2) if the application is

timely, the movant has an interest in the transaction, the action may impede the movant's ability

to protect that interest, and the movant's interests are not adequately represented in the action.

See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 132-36 (1967) (holding

State of California had right to intervene in antitrust case to protect state's interest in promoting

competition in California); Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1123-26 (5th Cir.

1970) (holding that the United States had right to intervene in civil action to assert tax lien on a

fund before the court).

8

Additionally, Rule 24(b) provides that courts may permit intervention when the movant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact."   Fed. R. Civ. P. 24(b)(1)(B).   The rule further provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."   Fed. R. Civ. P. 24(b)(3).   In resolving applications for permissive intervention, courts thus consider the existence of common claims or defenses, the timeliness of the movant's application, and whether intervention will unduly delay or prejudice the original parties.   See, e.g., Davis v. Southern Bell Tel. & Tel. Co., 149 F.R.D. 666, 668-70 (S.D. Fla. 1993) (granting state of Florida's motion to intervene in utility's antitrust action on permissive basis).

> B.     Legal Standard Governing Motions to Stay Civil Proceedings

District courts have the inherent authority and broad discretion to stay their own civil proceedings in favor of parallel criminal proceedings.   Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936) (observing that decision whether to issue stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); S.E.C. v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) ("No question exists that this court has the power to stay a civil proceeding due to an active, parallel criminal investigation.").   "[A] court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'"   United States v. Lot 5, Fox Grove, Alachua Cnty., Fla., 23 F.3d 359, 364 (11th Cir. 1994) (quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)).

"The degree to which the issues in the simultaneous civil and criminal proceedings overlap is the most important threshold issue in deciding whether the court should stay the civil proceeding."   Healthsouth Corp., 261 F. Supp. 2d at 1326; accord Lay v. Hixon, No. 09-CIV-0075 (WS), 2009 WL 1357384, at *3 (S.D. Ala. May 12, 2009) (citing Dominguez v. Hartford

Fin. Services Group, Inc., 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008) and Chao v. Fleming, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)); see also United States v. Pinnacle Quest Int'l, No. 08-CIV-136 (RV), 2008 WL 4274498, at *2 (N.D. Fla., Sept. 11, 2008) (citing Healthsouth Corp.).   Other factors courts in the Eleventh Circuit consider include the extent to which any defendant's Fifth Amendment rights are implicated by the parallel proceedings and:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Pinnacle Quest Int'l, 2008 WL at *2 (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 324-25 (9th Cir. 1995)); see also id. (noting that the Eleventh and Ninth Circuits "have agreed on the factors to consider").

While courts consider a number of factors in determining whether a stay is warranted in the interests of justice, "the critical factors in this analysis are the degree and severity of overlap between the civil and criminal proceedings; whether the criminal charges are hypothetical or, by contrast, whether an indictment or its equivalent has been issued; and the specificity of the invocation of the Fifth Amendment privilege relative to the civil proceeding." Gonzalez v. Israel, No. 15-CIV-60060-BLOOM, 2015 WL 4164772, at *3 (S.D. Fla. July 9, 2015). Finally, "a trial judge should give substantial weight to [the policy giving priority to the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities."   Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962).

II.    Analysis

    A.    Intervention Is Appropriate

Allowing the United States to intervene in this case under Rule 24 is appropriate both as of right and on a permissive basis.

The government meets the requirements set forth in Rule 24(a)(2) for intervention as of right.   First, the motion is timely, as it is being filed before discovery has taken place in the Civil Case.[6]   Additionally, intervention is also warranted in light of the strong interest of the government and the public in the enforcement of criminal laws in connection with the bribery schemes that underlie both the Civil and Criminal Cases.   That interest will be substantially impaired and impeded if civil proceedings are allowed to continue in this matter before the resolution of the Criminal Case, as explained further in Part II.B below.   Finally, the United States' interests are certainly not adequately represented in the Civil Case.   See generally Cascade Natural Gas Co., 386 U.S. at 132-36; Diaz, 427 F.2d at 1123-26.

The government also meets the requirements set forth in Rule 24(b) for intervention pursuant to this Court's discretionary authority because several of the Civil Defendants are charged with engaging in the same bribery schemes alleged in the Criminal Case.   Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Case – namely, whether the defendants named in the Civil Case and charged in the Criminal Case participated in bribery schemes related to the Club Tournaments in violation of RICO and other federal laws.   The United States seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions.   Just as the

---

[6] The government has been monitoring the Civil Case through public filings and updates from various of the parties in order to stay apprised of developments as they relate to and might affect the Criminal Case.   Now that Plaintiffs have advanced the prospect of broad jurisdictional discovery and served discovery demands on certain defendants, including requests for information relating to the government's ongoing investigation, the government seeks a stay in the interest of justice, for the reasons discussed herein.

unsealing of the indictment and superseding indictment plainly benefited the Plaintiffs, the completion of the criminal prosecutions will ultimately benefit all parties to the Civil Case by bringing out facts relevant to the Civil Case and streamlining the ensuing litigation.  See In re Grand Jury Proceedings (Williams), 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues.").   Finally, given the circumstances presented more fully in Part II.B below, any delay or even modest prejudice that Plaintiffs may argue they will experience on account of a stay cannot be considered "undu[e]."   Fed. R. Civ. P. 24(b)(3).

Accordingly, this Court should permit the government to intervene as a matter of right and, in the alternative, on a permissive basis.

B.      A Stay of Civil Proceedings Should Be Granted

The relevant factors for determining whether a stay would be in the interests of justice weigh heavily in favor of granting a stay of proceedings in the Civil Case until the conclusion of the criminal prosecution under way in the Eastern District of New York.   The government discusses below each of these factors in turn, beginning with the factors courts in the Eleventh Circuit have identified as the "most important" and "critical," and concluding with additional factors set forth in Keating and related cases.   See, e.g., Healthsouth Corp., 261 F. Supp. 2d at 1326; Gonzalez, 2015 WL 4164772 at *3.

1.      The Overlap Between the Civil and Criminal Proceedings Is Complete

The degree of overlap between parallel civil proceedings and criminal proceedings is "the most important threshold issue" in determining whether a stay of the civil proceeding is warranted.   Healthsouth Corp., 261 F. Supp. 2d at 1326 (finding that "the criminal and civil cases overlap completely and that "[t]he issues in both are identical," and granting stay); Lay, 2009 WL 1357384 at *3 (finding "the identity of key factual issues joined in the criminal prosecution and in these maritime proceedings counsels in favor of a stay" and granting stay); Pinnacle Quest Int'l,

2008 WL 4274498 at *2 (finding that "as for 'the most important threshold issue,' it appears to be undisputed that there is significant overlap between the two cases" and granting stay).

Here, the allegations underpinning the Civil Case do not just overlap with the Criminal Case, they are entirely subsumed within the broader allegations at issue in the Criminal Case. Plaintiffs' claims are based on the very same allegations of bribery and corruption in connection with the marketing rights to the Copa Libertadores that are set forth in the Criminal Case. See Complaint ¶¶ 61-76; Indictment ¶¶ 174-85. Plaintiffs' reliance on the Criminal Case began with the filing of their initial civil complaint on October 20, 2016 – seventeen months after the first indictment in the Criminal Case was first unsealed on May 27, 2015 – and continued in the operative Civil Complaint filed on March 6, 2017. Plaintiffs expressly rely on the allegations in the Criminal Case as the basis for their allegations in the Civil Case, citing extensively to the Indictment and to related Criminal Case filings, including allegations set forth in, for example, the deferred prosecution agreement entered into by Torneos on December 13, 2016. See, e.g., Complaint ¶¶ 6-9, 29, 60, 62, 66, 71-75, 188-191.

The "overwhelming degree of overlap" between the Civil and Criminal Cases thus weighs powerfully in favor of issuing a stay of the Civil Case. See Gonzalez, 2015 WL 4164772 at *3 (granting stay based in part on "overwhelming degree of overlap" between civil claims and criminal charges and observing that defendants were "charged criminally for the very acts Plaintiff here claims give rise to civil liability"); Pinnacle Quest Int'l, 2008 WL 4274498 at *2 (granting stay of civil proceeding where civil and criminal cases "share the same operative facts, arise out of the same general allegations, and involve many of the same defendants").

2.    The Criminal Charges Are Not Hypothetical, and the Ongoing Criminal Investigation Is Active

Another "critical factor" in the stay analysis is "whether the criminal charges are hypothetical or, by contrast, whether an indictment or its equivalent has been issued." Gonzalez,

13

2015 WL 4164772 at *3.[7]   Given that several Civil Defendants have been indicted and that the government is conducting a related, ongoing grand jury investigation, this factor also weighs heavily in favor of a stay.

A stay of proceedings and discovery in a civil case is particularly appropriate when, as here, a criminal indictment has been filed in a parallel proceeding.   See Harris v. City of Boynton Beach, No. 9:16-CV-80148, 2016 WL 3747680, at *2 (S.D. Fla. July 13, 2016) (observing that "degree and severity of overlap between the civil and criminal proceedings" and "whether an indictment or its equivalent has been issued. . ." are among factors considered by district courts in the Eleventh Circuit (internal quotation marks omitted)); Twenty First Century Corp., 801 F. Supp. at 1011 ("[C]ourts are more likely to grant [a stay] when an indictment has already been issued.").   Stays have been granted to halt civil litigation that threatened to impede criminal investigations which had yet to yield an indictment.   For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell v. Eastland, 307 F.2d 478, 480 (5th Cir. 1962); insider trading, see, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988); insurance fraud, see, e.g., Raphael v. Aetna Cas. and Sur. Co., 744 F. Supp. 71, 73 (S.D.N.Y. 1990); bank fraud, see, e.g., Board of Gov. of Fed. Res. Sys. v. Pharaon, 140 F.R.D. 634, 639 (S.D.N.Y. 1991); customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437, 1441 (U.S. Ct. Int'l Trade 1986); and immigration fraud, see, e.g., Souza v. Schiltgen, No. C-95-3997 (MHP), 1996 WL 241824 at *3 (N.D. Cal. May 6, 1986).

The prospect of indictment in this case is not speculative or hypothetical.   Three of the defendants in the Civil Case – Burzaco, Napout, and Figueredo – have been charged in the

---

[7]   The last of the three "critical factors" identified by the court in Gonzalez, the "specificity of the invocation of the Fifth Amendment privilege," 2015 WL 4164772, at *3, has not yet been raised by any of the defendants in the Civil Case.   The likelihood of an invocation and other matters bearing on the burden on the defendants if no stay is issued are discussed below in Part II.B.3.b.

Criminal Case, as were Hugo and Mariano Jinkis, the principals of Civil Defendant Full Play, all based in part on the same allegations underpinning the Civil Case.   Civil defendants Torneos, Full Play, and Conmebol are named in the superseding indictment and factor prominently in the Criminal  Case.  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████   The prosecution in this case will therefore vindicate substantially the same public interest underlying the Plaintiffs' civil action, namely preventing bribery and racketeering.   See, e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (observing that criminal prosecution would serve to advance public interest in preserving integrity of competitive markets).

3.    The Other *Keating* Factors

a.    Interests of the Plaintiffs

The Plaintiffs' interest in expeditious resolution of their claims and the potential prejudice to Plaintiffs of a delay merit careful consideration, see Keating, 45 F.3d at 324-25, but here those interests are entirely outweighed by the interests served by implementing a stay pending resolution of the criminal proceeding.

This is in part because the potential prejudice to the Plaintiffs is limited.   The proposed stay will not alter the parties' respective positions, and the completion of the criminal prosecutions ultimately will benefit all parties to the Civil Case, including Plaintiffs, by streamlining the civil litigation.   See In re Grand Jury Proceedings (Williams), 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) (observing that stays of civil proceedings "may prove useful as the criminal process may determine and narrow the remaining civil issues"); Twenty First Century Corp., 801 F. Supp. at 1011 (noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties").   In addition, to the extent the Plaintiffs can establish that they were victims of the

15

Copa Libertadores Scheme, as alleged in the Civil Complaint, a remedy may be available to them in the Criminal Case in the form of restitution pursuant to 18 U.S.C. § 3663A.

In sum, the Plaintiffs and Civil Defendants may well benefit from a stay of proceedings and discovery in the Civil Case. In any event, as discussed further below, the Plaintiffs' interests in expeditious resolution of their claims pale in comparison to the countervailing interests favoring a stay.

b.    The Burden on the Defendants

The Civil Defendants would be minimally burdened, if at all, by a stay of the Civil Case. Indeed, for the reasons stated above, the defendants may benefit from the streamlining of factual issues in the Criminal Case. In any event, some of the defendants will be unduly burdened by being forced to proceed with the Civil Case while the Criminal Case is pending. Defendants Napout and Figueredo, for example, may be forced to choose between participating fully in discovery, thereby potentially jeopardizing their defenses in the Criminal Case, and invoking their rights under the Fifth Amendment, thereby risking an adverse inference or judgment in the Civil Case.



For these reasons, to the extent the potential burden on the Civil Defendants factors into the Court's analysis, it should weigh in favor of granting the requested stay.

c.    <u>The Convenience of the Court</u>

The Court will not be inconvenienced as a result of the stay.   To the contrary, as stated above, the results of the Criminal Case could greatly streamline the Civil Case by narrowing or eliminating factual issues in the civil litigation.   See, e.g., <u>In re Grand Jury Proceedings</u>, 995 F.2d at 1018 n.11 ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); <u>United States v. Mellon Bank</u>, 545 F.2d 869, 873 (3d Cir. 1976) (affirming stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); <u>Villani v. Devol</u>, No. 15-CIV-852 (JWD), 2016 WL 1383498, at *5 (M.D. La. Apr. 7, 2016) (observing that conviction of civil defendant "can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges" (internal quotation marks omitted)).   The narrowing of issues will save the Court's time and resources when the stay of civil proceedings, should it be granted, is lifted at the conclusion of the criminal proceedings.

d.    <u>The Interests of Non-Parties</u>

The interests of non-parties to the Civil Case favors the granting of a stay, in particular to protect the identities of cooperating witnesses and entities in the Criminal Case.



e.    The Public Interest

The public interest in law enforcement, including in avoiding prejudice to the government's prosecution of defendants already charged in the criminal case and in the integrity of the government's ongoing investigation, strongly favors the requested stay.

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities."   Campbell, 307 F.2d at 487;

see also <u>SEC v. Mutuals.com, Inc.</u>, No. A.3:03-CIV-2912-D, 2004 WL 1629929, at \*4 (N.D. Tex. July 20, 2004) ("The Fifth Circuit has long recognized the public interest in law enforcement."). Here, even at this early stage, the Civil Case poses a risk to the government's prosecution of the Criminal Case and its ability to successfully carry out its ongoing investigation.   This risk is heightened by the extraordinary degree of overlap between the parties to the Civil Case and the focus of the Criminal Case.



     Of particular concern is the potential that the Plaintiffs or Civil Defendants will use the tools of civil discovery to gain insight into the contours of the government's investigation or, for those already charged in the Criminal Case, to bolster their defenses against or undermine the government's prosecution of the Criminal Case.[8]   Courts have long recognized that "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as

---



a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to use for his criminal trial." <u>Campbell</u>, 307 F.2d at 487; <u>see also</u> <u>Mail Tree</u>, 2016 WL 3950034, at *2 (granting stay and observing that "the public has an interest in ensuring the criminal discovery process is not subverted" (internal quotation marks omitted)); <u>Chestman</u>, 861 F.2d at 50 (recognizing that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter."). The use of broad civil discovery by subjects or targets of the government's investigation of notes of interviews of witnesses, or the taking of such witnesses' depositions, would undoubtedly provide information to the defendants not otherwise discoverable in the Criminal Case, and shed light on the strategies and progress of the ongoing investigation as well as any resulting, additional prosecution, thus enhancing the defendants' ability to manufacture evidence, tailor testimony, or otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution.

In light of the foregoing, the public interest in law enforcement and in the integrity of the government's ongoing government investigation powerfully support the granting of the government's request for a stay.

<u>CONCLUSION</u>

In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting this motion for a stay. In the interests of permitting the government to complete its prosecution in the Criminal Case, as well as the ongoing criminal investigation, the government respectfully requests that its motion to intervene and for a stay of civil proceedings in the Civil Case be granted.

[SIGNATURE ON NEXT PAGE]

Dated:   Brooklyn, New York
        April 24, 2017

Respectfully submitted,

BENJAMIN G. GREENBERG
Acting United States Attorney

By:    /s/ Samuel P. Nitze
Samuel P. Nitze
Special Assistant United States Attorney
Special Florida Bar ID No. A5502327
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6465
Fax: (718) 254-6320
samuel.nitze@usdoj.gov

M. Kristin Mace
Special Assistant United States Attorney
Special Florida Bar ID No. A5502326
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6879
Fax: (718) 254-6478
kristin.mace@usdoj.gov

Patrick T. Hein
Special Assistant United States Attorney
Special Florida Bar ID No. A5502324
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6284
Fax: (718) 254-7499
patrick.hein@usdoj.gov

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF on the 24th day of April, 2017.

    /s/ Samuel P. Nitze
Samuel P. Nitze
Special Assistant United States Attorney