UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24431-CIV-ALTONAGA/Goodman

**GOLTV, INC.**, *et al.*,

    Plaintiffs,

v.

**FOX SPORTS
LATIN AMERICA LTD.**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on the United States of America's Motion to Intervene and to Stay Civil Proceedings [ECF No. 134]. The Government seeks to stay this case due to *United States v. Hawit*, 15-CR-252 (S-1) PKC, pending in the Eastern District of New York, and a related ongoing grand jury investigation. Plaintiffs, GolTV, Inc. and Global Sports Partners LLP, and two Defendants, Full Play Group, S.A. and Juan Angel Napout, filed responses in opposition to the Motion.[1] The Government filed a Reply [ECF No. 139] on May 15, 2017. The Court has carefully considered the parties' submissions, the record, and applicable law.

## I. BACKGROUND

**A. Criminal Investigation**

On May 20, 2015, a federal grand jury sitting in the Eastern District of New York returned a 47-count indictment charging 14 individuals with several crimes including racketeering, conspiracy, wire fraud, and money laundering offenses in connection with securing

---

[1] The memoranda consists of Full Play Group, S.A.'s Response ("Full Play's Response") [ECF No. 135]; Plaintiffs' Memorandum of Law in Opposition ("Plaintiffs' Response") [ECF No. 136]; and Juan Angel Napout's Opposition ("Napout's Response") [ECF No. 137].

exclusive worldwide rights for international soccer tournaments. (*See* Mot. 4 (citation omitted)). On November 25, 2015, the grand jury returned a 92-count superseding indictment charging 16 additional defendants with racketeering, conspiracy, wire fraud, and money laundering, among other offenses. (*See id.* 4–5 (citation omitted); Superseding Indictment [ECF No. 1-3]). Several Defendants here, including Alejandro Burzaco, Eugenio Figueredo, and Juan Angel Napout, are implicated in the criminal case and charged with the same conduct subsequently alleged in the Amended Complaint [ECF No. 78]. (*See* Mot. 5). The Government's investigation into the bribery schemes is ongoing, and trial is set to begin on November 6, 2017. (*See id.* 7).

### B. Procedural History of the Civil Case

On October 20, 2016, Plaintiffs filed an initial Complaint [ECF No. 1], alleging 16 named Defendants were involved at various levels in bribery schemes to award and obtain exclusive television rights to Defendant, Conmebol's international soccer club tournaments. The allegations relied extensively on the Superseding Indictment in the criminal case. (*See generally* Compl.). Plaintiffs filed an Amended Complaint on March 6, 2017, after service was perfected on all Defendants.[2] (*See* Am. Compl.; *see also* Plaintiffs' Third Status Report [ECF No. 77] 1–2). After a March 15 Status Conference [ECF No. 104], the Court entered an Order [ECF No. 105] setting deadlines for Defendants to inform the Court about the need for jurisdictional discovery and for briefing on any motion to dismiss for lack of jurisdiction. Upon receipt of the Report on Issues Concerning Jurisdictional Discovery [ECF No. 111], the Court entered another Order [ECF No. 113] giving Plaintiffs 60 days to conduct jurisdictional discovery in anticipation of a motion to dismiss based on lack of personal jurisdiction or *forum non conveniens* due May 23, 2017. Before the close of jurisdictional discovery, on April 24, 2017, the Government filed the Motion.

---

[2] The Amended Complaint dropped Defendants, Hugo Jinkis and Mario Jinkis, from the action.

CASE NO. 16-24431-CIV-ALTONAGA/Goodman

## II.  ANALYSIS

### A. Motion to Intervene

Federal Rule of Civil Procedure 24 allows anyone to file a motion to intervene in a civil action either as of right or on a permissive basis.  *See* FED. R. CIV. P. 24.  Rule 24(a), which governs interventions as of right, states the Court must permit anyone to intervene if: (1) a federal statute gives an unconditional right to intervene, or (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  *Id.* 24(a).  Rule 24(b), which governs permissive interventions, states the Court may permit anyone to intervene who: (1) is given a conditional right to do so by federal statute, or (2) "has a claim or defense that shares with the main action a common question of law or fact."  *Id.* 24(b).  "In exercising its discretion, the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Id.* 24(b)(3) (alteration added).

The Government asserts it meets the requirements both for intervention as of right and by permission of court.  (*See* Mot. 11).  With the exception of Napout, the parties filing responses do not take a position as to the propriety of intervention and instead focus on the requested stay of these civil proceedings.  (*See* Full Play Resp. 1; *see generally* Pls. Resp.).  Napout argues the Government has not met its burden to show it is entitled to either intervention as a matter of right or permissive intervention.  (*See* Napout Resp. 3–5).  Because the Court determines the Government is entitled to permissive intervention under Rule 24(b), it does not address whether the Government has met the requirements for intervention as of right under Rule 24(a).

3

*Timeliness.*  As a preliminary matter, regardless of whether a prospective intervenor intends to intervene under section (a) or section (b) of Rule 24, it must file a timely motion to intervene.  *See Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1366 (11th Cir. 1984); *see also Davis v. Butts*, 290 F.3d 1297, 1300 (11th Cir. 2002).  In assessing timeliness, courts consider:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).  The Eleventh Circuit has noted "[t]imeliness is not a word of exactitude or of precisely measurable dimensions," and the requirement "must have accommodating flexibility" in order for courts to "regulate intervention in the interest of justice."  *Id.* (citation omitted; alteration in original).

The Motion was filed approximately six months after the initial Complaint, but only a month after all Defendants were served and the Amended Complaint was filed.  No scheduling order has been entered and no discovery has taken place, aside from jurisdictional discovery incidental to a potential motion to dismiss for lack of personal jurisdiction.  In view of these circumstances, while certainly not indicative of diligence, the length of time the Government delayed in filing the Motion is not unreasonable.

There is also no evidence of prejudice to the original parties due to the Government's filing of the Motion on April 24, 2017, versus the October 20, 2016 date of the original Complaint, the March 6, 2017 date of the Amended Complaint, or the March 15 date of the Order setting a briefing schedule for a motion to dismiss on jurisdictional grounds.  Between October 2016 and March 6, 2017, Plaintiffs were perfecting service on the numerous Defendants,

4

many of whom were located abroad. (*See* Dec. 2, 2016 Status Report [ECF No. 36]; Jan. 18, 2017 Status Report [ECF No. 53]; Mar. 6, 2017 Status Report [ECF No. 77]). During that time, the deadlines for filing responses were suspended (*see* Nov. 4, 2016 Status Conference Tr. [ECF No. 44] 17:23–25; Dec. 5, 2016 Status Conference Tr. [ECF No. 45] 11:5–11), and it was unclear whether the case would be administratively closed pending international service or whether Plaintiffs would elect to proceed but voluntarily dismiss certain Defendants (*see* Dec. 5, 2016 Status Conference Tr. 8:13–20; Jan. 20 Status Conference Tr. 9:16–22, 13:16–21).

In short, for six months the only activity in the case consisted of attempts to effect service of process. Even after the filing of the Amended Complaint, fact discovery has not commenced; jurisdictional discovery has been temporarily stayed and the stay will not substantially affect the original parties' interests in a speedy resolution of the case. There are also no unusual circumstances counseling in favor of or against a determination the Motion is timely. Given these circumstances, the Motion is not untimely.[3] *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259–60 (finding a motion to intervene was timely despite the fact it was filed six months after the intervenor had copies of the papers and after discovery was completed and the parties had agreed upon a schedule for briefing).

*Permissive Intervention.* The Government satisfies its burden as to the remaining factors required for permissive intervention. First, the Government "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). Several Defendants are alleged to have engaged in the same bribery and schemes as are charged in the criminal case, and "there is substantial overlap in the core factual allegations underlying" the two actions. (Mot. 11). Indeed, the Amended Complaint attaches the Superseding Indictment as an

---

[3] The third factor for determining the timeliness of a motion to intervene — the extent of prejudice to the proposed intervenor if the motion is denied — is discussed in the section relating to the Government's request to stay the case, as it is also relevant for assessing the propriety of issuing a stay.

5

exhibit and liberally cites the document to support its allegations. (*See generally* Am. Compl.). Second, the Government's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Because the Court will not be granting the Government's requested stay, as explained more fully below, the civil proceeding will not be delayed at all. The original parties will not be prejudiced by the Government's involvement in the suit, because the civil proceeding will continue as usual without the extension of any deadlines except for those affected by the stay of jurisdictional discovery. (*See* Order [ECF No. 133]).

### B. Motion to Stay

District courts have broad discretion in deciding whether to stay proceedings incidental to their powers to control and efficiently manage their dockets. *See, e.g.*, *Coquina Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 2530945, at *1 (S.D. Fla. June 24, 2011) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). "The mere existence of parallel criminal and civil proceedings does not compel a stay of the civil proceeding." *Pozdol v. City of Miami*, 996 F. Supp. 2d 1290, 1301 (S.D. Fla. 2014) (citing *United States v. Lot 5, Fox Grove*, 23 F.3d 359, 364 (11th Cir. 1994)). "Rather, a court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *Lot 5, Fox Grove*, 23 F.3d at 364 (alteration added) (quoting *United States v. Kordel*, 397 U.S. 1, 12 & n.27 (1970)).

In deciding whether to issue stays in civil cases with parallel criminal proceedings, courts in the Eleventh Circuit consider several factors, including: the extent to which the issues in the two cases overlap; the status of the criminal case, including whether the defendants have been indicted; the interests of and burden on the parties; the interests of the court; and the public

interest. *See, e.g.*, *Whitaker v. Miami-Dade Cty.*, No. 13-24450-CIV, 2014 WL 12513590, at *2 (S.D. Fla. Apr. 23, 2014) (citation omitted); *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1383 (S.D. Fla. 2015) (citation omitted); (*see also* Mot. 12–20).

The Government states a stay of this case would promote the interests of justice given, among other factors, the substantial overlap between the civil and criminal proceedings, the existence of an indictment, and the interest of protecting cooperating witnesses in the criminal case. (*See* Mot. 12–20). Among the Government's main concerns in seeking a stay appears to be the possibility Defendants "will use the tools of civil discovery to gain insight into the contours of the government's investigation or . . . bolster their defenses against or undermine the government's prosecution." (Mot. 19 (alteration added)).

Full Play and Plaintiffs oppose a complete stay, but do not object to the Government's intervention and a limited stay of the civil proceedings. (*See* Full Play's Resp. 3–4 (contending a stay until completion of the criminal case's prosecution should not include Full Play's motion to dismiss for lack of personal jurisdiction); *see generally* Pls.' Resp. (objecting to indefinite stay and offering options for limiting scope of stay)). In contrast, Defendant Napout asserts a stay would prejudice him because he has a strong interest in clearing himself of the allegations of misconduct contained in the Amended Complaint. (*See* Napout's Resp. 10 (citing cases indicating prejudice to defendant over serious charges involving harm to defendant's reputation and credibility)).

Weighing the relevant factors, the Court determines a stay of this case is not necessary. The Court acknowledges the substantial overlap between the civil and criminal proceedings and the fact an indictment has been returned in the criminal case. However, remaining considerations counsel against issuing the stay. Certainly, the Government and the public have

7

"a discernible interest in intervening in order to prevent discovery in [the] civil case from being used to circumvent the more limited scope of discovery [available] in [the] criminal matter." (Mot. 20 (first and third alterations added; second alteration in original) (quoting *SEC v. Chestman*, 861 F. 2d 49, 50 (2d Cir. 1988)). But, absent articulation of a more specific harm arising from the taking of discovery, the "loss of the government's usual tactical advantage" in criminal cases is insufficient to warrant issuing a stay. *United States v. Fin. Indus. Regulatory Auth.*, 607 F. Supp. 2d 391, 394 (E.D.N.Y. 2009) (citing *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272–73 (S.D.N.Y. 1998)); *see also First Bank Business Capital, Inc. v. Agriprocessors, Inc.*, No. C08-1035, 2008 WL 4693320, *7 (N.D. Iowa 2009).

Additionally, and importantly, the Government has not shown why "other methods of protecting its interests [aside from a stay] are insufficient." *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990) (alteration added). Any potential concerns regarding discovery are adequately addressed if the civil case proceeds as usual, but the Government is allowed to participate in the civil discovery process as needed to "object to particular requests" or request protective orders related to certain evidence. *SEC v. Cioffi*, No. 08-CV-2457 (FB) (VVP), 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008) (citation omitted). This arrangement best vindicates interests of the public, the Court, and the original parties in the speedy resolution of civil disputes; as well as the Government's interest in preserving the integrity of the criminal case.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion **[ECF No. 134]** is **GRANTED in part** and **DENIED in part**.
2. As an intervenor, the United States of America may participate in discovery in the case. Pursuant to 28 U.S.C. section 636 and this District's Magistrate Judge Rules, all discovery matters are referred to Magistrate Judge Jonathan Goodman. Judge

> Goodman holds a regular discovery calendar. No written discovery motions, including motions to compel, for protective order, or related motions for sanctions shall be filed unless the Magistrate Judge so directs at his discovery calendar. If, after conferring, the parties are unable to resolve their discovery dispute without Court intervention, they shall not file written motions. Rather, the "moving party" shall contact the chambers of Magistrate Judge Goodman at (305) 523-5720 and place the matter on the next available discovery calendar.

3. The deadlines in the Court's March 23, 2017 Order [ECF No. 113] are revised as follows:

   a. Plaintiffs have until June 21, 2017 to complete jurisdictional discovery in anticipation of intended motions to dismiss on personal jurisdiction grounds.

   b. Those Defendants wishing to challenge personal jurisdiction or raise issues regarding sufficiency of service of process or *forum non conveniens* shall file a single, consolidated motion to dismiss the Amended Complaint [ECF No. 78] one day after the close of jurisdictional discovery, on **June 22, 2017**.

**DONE AND ORDERED** in Miami, Florida this 25th day of May, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record