**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-24431-CIV-ALTONAGA/Turnoff**

GOLTV, INC.; and GLOBAL SPORTS
PARTNERS LLP,

      Plaintiffs,

               -v.-

FOX SPORTS LATIN AMERICA, LTD.;
PAN AMERICAN SPORTS ENTERPRISES
CO. d/b/a FOX SPORTS LATIN AMERICA
(individually and as successor to FOX PAN
AMERICAN      SPORTS      LLC);      FOX
INTERNATIONAL CHANNELS (US), INC.;
FOX NETWORKS       GROUP,    INC.   (as
successor    to    FOX    INTERNATIONAL
CHANNELS      (US),    INC.); CARLOS
MARTINEZ; HERNAN LOPEZ; JAMES
GANLEY; T&T SPORTS MARKETING
LTD.; TORNEOS Y COMPETENCIAS, S.A.;
ALEJANDRO BURZACO; FULL PLAY
GROUP      S.A.;      CONFEDERACION
SUDAMERICANA DE FUTBOL d/b/a
CONMEBOL; EUGENIO FIGUEREDO; and
JUAN ANGEL NAPOUT,

      Defendants.

**DEFENDANTS' CONSOLIDATED JURISDICTIONAL MOTION TO DISMISS**

# <u>PREFATORY NOTE</u>

## THIS CONSOLIDATED MOTION CONSISTS OF TWO PARTS:

**Part 1**
**Motion to Dismiss for Lack of Personal Jurisdiction**
**(by Defendants Confederación Sudamericana de Futbol and Full Play Group S.A.)**

**Part 2**
**Motion to Dismiss for Forum *Non Conveniens***
**(by Defendant Alejandro Burzaco)**

(No party joins the Part of any other party unless otherwise specified.)

## TABLE OF CONTENTS

**Page(s)**

**PART ONE**

Motion to Dismiss for Lack of Personal Jurisdiction by

Defendants CONMEBOL and Full Play .................................................................2

I.   Introduction.......................................................................................................3

   A.  For Conmebol.............................................................................................3

   B.  For Full Play...............................................................................................6

II.  Jurisdictional Facts...........................................................................................7

   A.  The Parties..................................................................................................7

     1.  Conmebol. ............................................................................................7

     2.  Full Play.................................................................................................9

     3.  Global Sports.........................................................................................9

     4.  GolTV...................................................................................................10

   B.  Plaintiffs' Claims......................................................................................11

   C.  Facts Pertinent to Jurisdiction Over CONMEBOL..................................12

     1.  Business Activities in Forum...............................................................16

       a.   The Assignments of the Broadcast Rights................................17

       b.   Financial Transactions..............................................................18

     2.  Alleged Wrongdoing...........................................................................19

   D.  Facts Pertinent to Jurisdiction Over Full Play.........................................24

     1.  The Substantive Allegations Against Full Play...................................24

     2.  The Jurisdictional Allegations Against Full Play................................25

III. Applicable Legal Standards.............................................................................26

   A.  Statement by CONMEBOL......................................................................26

     1.  The Burden Is on Plaintiff to Establish Personal

       Jurisdiction..........................................................................................26

     2.  The Exercise of Personal Jurisdiction Must Comport

       with Due Process.................................................................................26

     3.  The Relevant Forum............................................................................29

i

B.  Additional Statement by Full Play.......................................................30

IV.   CONMEBOL Arguments.................................................................31

A.  As a Threshold Matter, Global Sports Made the Offers
and, Therefore, the Alleged Injury Was to a Foreign
Entity Outside the Forum................................................................31

B.  CONMEBOL's Contacts in the Forum Were Insufficient
for Specific Personal Jurisdiction....................................................33

1.  CONMEBOL's Business Activities Do Not Support
Jurisdiction............................................................................34

2.  Worldwide Broadcasting Grants Did Not Target
the Forum...............................................................................36

3.  CONMEBOL's Insignificant Banking Activities Are
Unrelated to the Causes of Action and No Basis
for Specific Personal Jurisdiction.............................................37

C.  The Bribed Former Officials Acted Without Authority,
and Personal Jurisdiction Over CONMEBOL Cannot Rest
on Their Actions.............................................................................38

D.  The Allegations of Conspiracy Add Nothing to the
Jurisdictional Analysis...................................................................41

V.   Full Play Arguments.....................................................................43

A.  Personal Jurisdiction Over Full Play Does Not Lie
in Florida......................................................................................43

1.  The Alleged Attendance of Full Play's Owners at a
Meeting in Florida Cannot Be Imputed to Full Play
Under Florida's Long-Arm Statute............................................44

2.  Plaintiffs Cannot Satisfy the Long-Arm Statute
Because Injury Has Not Been Suffered in Florida.........................48

3.  Plaintiffs Cannot Satisfy Florida's Constitutional
Standards for Personal Jurisdiction..........................................50

a.  Plaintiffs' Claims Do Not Arise Out of Any
Contact Between Full Play and Florida.................................51

      b.  Full Play Has Not "Purposefully Availed"

          Itself of the Privilege of Conducting Business in Florida..........................53

      c.  Exercising Jurisdiction Over Full Play Would

          Offend Traditional Notions of Fair Play and

          Substantial Justice......................................................................56

    4.  The Conspiracy Allegations Do Not Confer Personal

        Jurisdiction in Florida....................................................................57

  B.  Personal Jurisdiction Over Full Play Does Not Lie in

      the United States.............................................................................60

VI.    Conclusion.......................................................................................62


**PART TWO**

    Motion to Dismiss for Forum *Non Conveniens* by Defendant

    Alejandro Burzaco............................................................................63

      Introduction.............................................................................64

      Memorandum of Law....................................................................66

I.    The Doctrine of Forum *Non Conveniens* Warrants Dismissal

    of this Case in this Court.................................................................66

  A.  The EDNY Is An Adequate and Available Alternative

      Forum....................................................................................66

  B.  The Private Interests of the Parties Weigh in Favor of

      Applying the Doctrine...................................................................67

  C.  The Public Interest Factors Weigh in Favor of Dismissal....................................69

  D.  Plaintiffs Will Not Be Unduly Prejudiced or

      Inconvenienced by Trying Their Case in the EDNY.............................................70

II.    Alternatively, This Court Should Transfer Venue of This

    Matter to the Eastern District of New York..................................................70

  A.  Plaintiffs' Action Could Have Been Brought in the EDNY.................................72

  B.  The Private and Public Interest Factors Weigh Heavily

      in Favor of Transfer of This Matter to EDNY.......................................................72

Conclusion.................................................................................73

Certificate of Good Faith Conference................................................................................74

Certificate of Service.......................................................................................................75

## DEFENDANTS' CONSOLIDATED JURISDICTIONAL MOTION TO DISMISS

Defendants Confederación Sudamericana de Fútbol ("CONMEBOL"), Full Play Group S.A. ("Full Play"), and Alejandro Burzaco ("Burzaco") (collectively, "Defendants"), pursuant to this Court's Orders addressing the structure and timing of Defendants' response to the Amended Complaint (D.E. 105 & 156), hereby file their consolidated jurisdictional motion to dismiss.

# <u>PART ONE</u>

## Motion to Dismiss for Lack of Personal Jurisdiction
### (by Defendants CONMEBOL and Full Play)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Local Rule 7.1 and this Court's order of May 25, 2017 (D.E. 140 at 9 (the "May 25 Order")), Defendants CONMEBOL and Full Play respectfully submit this consolidated motion to dismiss the Amended Complaint (D.E. 78) filed by Plaintiffs GolTV, Inc. ("GolTV") and Global Sports Partners LLP ("Global Sports") (collectively "Plaintiffs"), for lack of personal jurisdiction.

## I.   INTRODUCTION

### A.  For CONMEBOL

In the present case, two international sports broadcasters owned by four Uruguayans complain that CONMEBOL, the Paraguay-based non-profit governing body for South American soccer, granted worldwide broadcast rights for three specific South American soccer tournaments to a company from the British Virgin Islands ("BVI") instead of the Uruguayans, because some of CONMEBOL's officials – all of whom lived in South America at the time – allegedly accepted bribes from the BVI company (and its Argentinian and Uruguayan agents) in exchange for votes cast at executive committee meetings held in South America. CONMEBOL has no meaningful connection to the forum. Plaintiffs cannot carry their burden of establishing specific personal jurisdiction.

GolTV and its owner Francisco "Paco" Casal ("Casal"), a notorious firebrand in Uruguayan soccer, are attempting to enlist the United States Courts in a decades-old turf war over the spoils of South America's favorite sport. Literally, books have been written about the bitter struggles for power and money, including crises within CONMEBOL attributed to interference by Casal, and charges against Casal by the Uruguayan government, some of which ironically have involved allegations that Casal improperly locked competitors out of bidding against one of his companies for television rights to Uruguayan soccer association games – allegations similar to those that Casal's companies now make in this case.

3

At various times between 2009 and 2015, Casal used plaintiff Global Sports – a limited liability partnership controlled by Casal and located in Uruguay, but organized under English law – to pepper CONMEBOL with astronomical proposals to acquire the broadcast rights (the "Broadcast Rights") for three specific CONMEBOL tournaments: the Copa Libertadores, the Copa Sudamericana and the Recopa Sudamericana (collectively, the "Club Tournaments"). Plaintiffs now sue because CONMEBOL did not break its existing contracts and grant the Broadcast Rights for the Club Tournaments to Global Sports.

As a threshold matter, it is clear that any alleged injury in this case could only have been suffered by Global Sports, an entity with no connection to this forum, and not by GolTV. GolTV, while related to the forum, made no offers for the broadcast rights to the Club Tournaments and, consequently, suffered no injury. GolTV is named as a plaintiff solely as an attempt to manufacture jurisdiction, and the Court should not be gulled by the pretext.

Plaintiffs sue CONMEBOL for declining to accept Global Sports' proposals, based on the premise that former CONMEBOL officials were bribed by Plaintiffs' competitors, to the great detriment of CONMEBOL itself. In other words, Plaintiffs – by their own allegations – blame the victim.  Indeed, to the extent any former CONMEBOL officials did in fact accept illicit payments in exchange for agreements to assign various commercial rights owned by CONMEBOL, their illegal conduct was adverse to CONMEBOL and deprived CONMEBOL, its member associations and their respective soccer clubs of significant income. ████████

████████████████████████████████████████████████████

███████████████████████████████

This Court lacks personal jurisdiction over CONMEBOL.  CONMEBOL is a Paraguayan non-profit entity with no offices, employees or business activities in Florida or the United States.

Its assignments of the Broadcast Rights to the Club Tournaments have consistently been worldwide in scope, with no specific attention to the United States. CONMEBOL exclusively used its own Paraguayan financial institutions to receive all funds in consideration of the assignment of those rights.

Further, to the extent Plaintiffs allege that Florida or the United States was the site of any bribery or conspiracy to pay a bribe, the Amended Complaint makes clear that such illegal behavior was secret, was hidden from CONMEBOL, and victimized CONMEBOL. By no judicial alchemy can the acts of alleged perpetrators in Florida subject the victim CONMEBOL, a Paraguayan entity, to personal jurisdiction in this forum.

As noted above, the U.S. Attorney for the EDNY has filed criminal charges against a number of individuals and entities in connection with the alleged scheme of bribes and kickbacks. The indictment in those proceedings recognizes that CONMEBOL was the victim, not a perpetrator. Accordingly, CONMEBOL is not a defendant in the EDNY proceedings. Further, Plaintiffs' Amended Complaint is based on, and incorporates, the DOJ's indictment. Plaintiffs cannot justify blaming CONMEBOL where the DOJ does precisely the opposite.

The indictment alleges wrongdoing in a series of agreements with defendant T&T Sports Marketing Ltd. ("T&T") and its affiliate, defendant Torneos y Competencias, S.A. ("Torneos"), for broadcast rights to the Club Tournaments (the "T&T Agreement(s)"). ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████ Plaintiffs' Amended Complaint, based as it is on the EDNY indictment, accordingly alleges bribery and corruption in the T&T Agreements, but not in the subsequent Fox Agreement.

Because specific personal jurisdiction is evaluated claim by claim, Plaintiffs must show that CONMEBOL purposefully directed its activities toward this forum, and that Plaintiffs' claims arise out of those activities. Plaintiffs cannot carry that burden. Nothing about the T&T Agreements would support a determination that CONMEBOL purposefully directed its activities toward this forum. Those agreements were between South American and Caribbean entities, were negotiated by South Americans in either South America or the Caribbean, and concerned worldwide broadcast rights. And even if CONMEBOL sufficiently directed its activities toward the forum in connection with the subsequent Fox Agreement (which it did not), Plaintiffs' claims do not arise from that agreement.

Personal jurisdiction over CONMEBOL is absent, and the Amended Complaint should be dismissed as to CONMEBOL.

**B.  Для Full Play**

**B.  Для Full Play**

**B.  For Full Play**

The Amended Complaint is devoid of any specific allegations to link Full Play directly to the United States or Florida.  Instead, Plaintiffs generally and conclusorily state that Full Play is "vicariously liable" for the acts committed in Florida and in the United States by individuals and an entity other than Full Play.  *See* Am. Compl. at § 182(g).  This is what Plaintiffs have pled:

- Two "principals" of Full Play (who are not parties to this action), Am. Compl. ¶ 9, met in South Florida to discuss the payment of bribes to CONMEBOL officials.  (Am. Compl. at ¶ 44 (citing Superseding Indictment (Am. Compl. Ex. A) at ¶ 360)).

- Bribe payments were wired to New York and Swiss Bank accounts, respectively, of Yorkfields and Cross Trading, other companies allegedly owned by the non-party

principals of Full Play. Am. Compl. at ¶ 76.

- Yorkfields and Cross Trading are Full Play's "affiliates." (Am. Compl. at ¶ 102).

As a matter of pleading and of law, these allegations are insufficient to impute the non-parties' conduct to Full Play, much less to confer personal jurisdiction over Full Play.[1] *See, e.g., Ellis v. Celebrity Cruises, Inc.*, No. 10-205410CIV-Altonaga, 2010 WL 6730808, *1 (S.D. Fla. July 15, 2010*); Mother Doe I v. Al Maktoum,* 632 F. Supp. 2d 1130, 1141 (S.D. Fla. 2007). Accordingly, the Court should dismiss the Amended Complaint filed against Full Play.

## II.    JURISDICTIONAL FACTS

The parties have agreed to limit the time period at issue to 2009-2015 (the "Relevant Period"). (*See* D.E. 170 (incorporating agreement of Plaintiffs and CONMEBOL)). The facts pertaining to the Relevant Period, as set forth in the allegations of the Amended Complaint (and in CONMEBOL's case, as supplemented and in part rebutted by the affidavit of CONMEBOL's corporate representative, Fátima González, filed herewith) do not support the exercise of personal jurisdiction over defendants CONMEBOL and Full Play.

### A.    The Parties

#### 1.    CONMEBOL

CONMEBOL is a non-profit association organized under the laws of Paraguay and headquartered in Luque, Paraguay. CONMEBOL serves as the governing body for professional

---

[1]    Plaintiffs rely heavily on a Superseding Indictment they attach as Exhibit A to the Amended Complaint. In order to try to establish jurisdiction in Florida, the Superseding Indictment relies in turn upon a Deferred Prosecution Agreement (the "DPA") between the Government and Defendant Torneos y Competencias, S.A. (Torneos"). But the DPA itself makes clear that the "facts" relied upon therein are hearsay. Specifically, the DPA expressly states that "[c]ertain of the facts herein are based on information obtained through third parties by the Office through their investigation and described to TORNEOS." In other words, the Amended Complaint's jurisdictional allegations purportedly attributable to a "witness" (Torneos) cannot actually be said to be attributable to it at all.

soccer in South America. (González Aff. ¶ 6). CONMEBOL and its ten member South American soccer associations (the "Member Associations") also fall under the aegis of the Fédération Internationale de Football Association ("FIFA"). (*Id.* ¶¶ 7-8). Every year, CONMEBOL organizes and presents the three Club Tournaments that are relevant to this case. (*Id.* ¶¶ 16-19).

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ The present case concerns a series of agreements assigning the Broadcast Rights to the Club Tournaments during the period 2009 through 2015.

All of CONMEBOL's Member Associations and their respective soccer clubs are in South America, as are all of the members of CONMEBOL's governing body. (*Id.* ¶¶ 7, 13; Am. Compl. ¶ 32 ("Conmebol is organized under Paraguayan law as a non-profit and non-governmental association of ten national soccer associations from Argentina, Bolivia, Brazil, Chile, Colombia, Ecuador, Paraguay, Peru, Uruguay, and Venezuela.")). During the Relevant Period, CONMEBOL owned no real estate in the United States, and had no offices or other facilities in the United States. (González Aff. ¶ 39). CONMEBOL also had no U.S. employees or U.S. staff working on matters relating to the Club Tournaments, other than outside attorneys and accountants providing professional services. (*Id.* ¶ 40).

During the Relevant Period, CONMEBOL was governed by its Executive Committee (referred to, as of 2016, as the Council) consisting of a president, three vice presidents, seven directors, a treasurer, and a secretary general. (*Id.* ¶ 12; *cf.* Am. Compl. ¶ 32 ("The Executive Committee of CONMEBOL – consisting since at least 2013 of one president, three vice

presidents, a secretary general, a treasurer, and six directors . . . – is CONMEBOL's permanent authoritative body."). The bylaws in effect during the Relevant Period required that contracts like the T&T Agreements and the Fox Agreement be signed by the President (and, since 2013, also the Secretary General), and approved by a majority of the eleven voting members of the Executive Committee. (González Aff. ¶ 25).

All members of CONMEBOL's Executive Committee (and now its Council) are bound by FIFA's Ethics Code and its Disciplinary Code, which were in force during the Relevant Period. (*Id.* ¶ 62; *see also* González Aff. Ex. O (FIFA Ethics Code (2012 ed.) (hereinafter, "FIFA Ethics Code")); González Aff. Ex. P (FIFA Disciplinary Code (2011 ed.) (hereinafter, "FIFA Disciplinary Code")). The FIFA Ethics Code prohibits conflicts of interest, bribery and other corrupt activities. (*See* González Aff. Ex. O § II, arts. 19-21; González Aff. Ex. P, tit. I, ch. II § 6).

In addition, in 2013 and 2014, respectively, CONMEBOL adopted its own Code of Ethics (González Aff. ¶ 63, Ex. Q (Code of Ethics (2013 ed.) (hereinafter, "CONMEBOL Code of Ethics")) and Disciplinary Regulations (González Aff. Ex. R (Disciplinary Regulations (2014 ed.) (hereinafter, "CONMEBOL Disciplinary Regulations")), which applied to all members of CONMEBOL's Executive Committee during the Relevant Period. These governing rules prohibit accepting bribes and other unlawful gifts, conflicts of interest and self-dealing. (González Aff. ¶ 63; *id.* Ex. Q art. 27; *id.* Ex. R arts. 1, 2, 5.)

### 2. **Full Play**

Full Play is a Uruguayan sports and media marketing business.  (Am. Compl. at ¶ 31).  It has its principal place of business in Uruguay. (*Id.).*

### 3. **Global Sports**

Plaintiff Global Sports is a British limited liability partnership owned by Casal (a

9

Uruguayan), and Nelson Gutierrez ("Gutierrez") (also a Uruguayan). (Am. Compl. ¶¶ 15-16). Global Sports is located in Uruguay, the home of its owners. (*Id.* ¶ 16). Global Sports exists to obtain television and marketing rights to international soccer matches. (*Id.* ¶ 16).  CONMEBOL has done business with Global Sports in the past. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████    ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

While Plaintiffs allege that, among other things, Global Sports acted as agent for GolTV to attempt to acquire broadcast rights for the Club Tournaments during the Relevant Period (*see* Am. Compl. ¶ 16), ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

### 4.  GolTV

GolTV is incorporated in Florida and owned by the Uruguayans Casal and Gutierrez, plus Enzo Francescoli (another Uruguayan). (Am. Compl. ¶ 15). GolTV operates an international

broadcast business that provides professional soccer programming "in the United States and abroad." (*Id.* ¶ 14).

**B.  Plaintiffs' Claims**

The Amended Complaint alleges eleven counts. Neither CONMEBOL nor Full Play is named in every count:

| Count | CONMEBOL | Full Play |
|---|---|---|
| 1. Civil RICO | — | ● |
| 2. Civil RICO conspiracy | — | ● |
| 3. Conspiracy in violation of § 1 of the Sherman Act as to the "Americas" television market | ● | ● |
| 4. Conspiracy in violation of § 1 of the Sherman Act as to the United States television market | ● | ● |
| 5. Conspiracy in violation of § 1 of the Sherman Act as to the United States television advertising market | ● | ● |
| 6. Monopsonization in violation of § 2 of the Sherman Act as to the Americas television rights market | — | — |
| 7. Attempted monopsonization in violation of § 2 of the Sherman Act as to the Americas television rights market | — | ● |
| 8. Conspiracy to monopsonize in violation of § 2 of the Sherman Act as to the Americas television rights market | ● | ● |
| 9. Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") | ● | ● |
| 10. Tortious interference with prospective economic advantage under Florida | — | — |

| common law | | |
|---|---|---|
| 11. Conspiracy to commit tortious interference under Florida common law | — | ● |

(*See* D.E. 78 at 58-96).

Counts not asserted against CONMEBOL or Full Play, respectively, are not relevant to the jurisdictional analysis.

### C.  Facts Pertinent to Jurisdiction Over CONMEBOL

The Amended Complaint relies in large part on the criminal indictment brought by the U.S. Attorney for the EDNY, charging numerous defendants with alleged bribery in connection with broadcasting rights to CONMEBOL's soccer tournaments.  Copies of the indictment, and a related deferred prosecution agreement, are attached to, and therefore part of, the Amended Complaint. (See Am. Compl. Ex. A (the "Superseding Indictment"); *id.* Ex. B (the "DPA")).[2] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Berry v. Keller*, 157 Fed. App'x 227, 338 (11th Cir. 2006) ("Documents attached to the complaint are treated as part of the allegations."); *Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) ("Attachments to a Complaint are to be considered in the same manner as the Complaint itself.").

During the Relevant Period, the Club Tournaments were held entirely in South America,

---

[2] CONMEBOL objects to the admissibility of the DPA because, among other grounds, it is inadmissible hearsay for which there is no valid exception.  *See United States v. Todd S. Farha, et al.,* 8:11-CR-115-T-30MAP, 2012 U.S. Dist. LEXIS 178185 (M.D. Fla. Mar. 28, 2012) (granting defendants' motion *in limine* to preclude Government from offering deferred prosecution agreement against Defendants because the agreement "is similar in nature to a guilty plea entered by a co-defendant and is inadmissible.")

not the United States.[3] (González Aff. ¶ 43). The Copa Libertadores is an annual tournament involving the top-ranked soccer clubs within the ten Member Associations throughout South America. The Copa Sudamericana, also an annual tournament, is played between the top Member Association clubs that did not qualify for the Copa Libertadores. The Recopa Sudamericana pits the previous year's winners of the Copa Libertadores and the Copa Sudamericana. (*Id.* ¶ 18).

Naturally, CONMEBOL owns the rights to CONMEBOL tournaments, including the Club Tournaments, and like any other sports league or tournament organizer, is entitled through its Council (formerly its Executive Committee) to determine whether and to whom to assign some or all of those rights, such as the right to televise the Club Tournaments. (*Id.* ¶¶ 23, 25; Ex. 1 (*Bylaws: Approved by the Extraordinary Congress of CONMEBOL on February 4, 2012 in the city of Luque, Gran Asuncion, Paraguay* (2012 ed.); Am. Compl. ¶ 59 ("Only CONMEBOL, by decision of the Executive Committee, has the authority to award the television rights for the Club Tournaments.")).



Because the assigned exclusive Broadcast Rights have always been worldwide in scope,

---

[3] CONMEBOL is alleged to have held its Recopa Sudamericana tournament in Fort Lauderdale once in 2004 (Am. Compl. ¶ 48), but that isolated instance was well before the Relevant Period.

██████████████████████████████████████████ ██████████ ████████████

████████████████████████████████████████████

     ■ █████████████████████████████████████████████
       ██████████████████████████████

     ■ █████████████████████████████████████████████
       ███████████████████████████████

     ■ █████████████████████████████████████████████
       █████████████████████████████

     ■ █████████████████████████████████████████████
       ██████████████████████████████

     ■ █████████████████████████████████████████████
       ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

According to the Superseding Indictment and the Amended Complaint, each of the T&T Agreements was tainted by bribery. (Am. Compl. Ex. A ¶¶ 179-184). Neither the Superseding Indictment nor the Amended Complaint, however, alleges that the Fox Agreement was tainted by bribery. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████
_____
■ ██████████████████████████████████████████████
██████████████████

■ ██████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████



With respect to the place of alleged injury, the Amended Complaint alleges – in conclusory fashion – that Plaintiffs were injured in Florida where GolTV is located. (Am. Compl. ¶ 141). ████████████████████████████████████
███████████████████████████████████████████████████████████ (González Aff. ¶ 52; *id.* Exs. I-N). It is undisputed that Global Sports is a completely foreign entity. (*See supra* pp. 9-10). ██████████████████████████████████████
██████████████████████████ (González Aff. ¶ 53; *id.* Exs. I-N). █████████████
████████████████████████ (*Id.* ¶ 33; *id.* Ex. G). ██████████████████████
███████████████████████████████████████████████████████████
(*Id.* Exs. M, N). This flatly contradicts the repeated claims in the Amended Complaint that Global Sports acted as agent for GolTV. (*See* Am. Compl. ¶¶ 1, 12, 16).

Notably, CONMEBOL is not a defendant in the EDNY criminal case. To the contrary, the Amended Complaint and the Superseding Indictment explicitly recognize that CONMEBOL is the victim of the alleged wrongdoing. (*See* Am. Compl. ¶ 12, 110; *id.* Ex. A ¶ 97). Plaintiffs nonetheless seek their own pound of flesh from the victim.

CONMEBOL is a Paraguayan entity with no presence in the United States. Attempting to overcome the obvious problem of personal jurisdiction, the Amended Complaint offers several kinds of alleged contacts between CONMEBOL and either Florida or the United States: (1) general business activities; (2) grants of broadcast rights; (3) financial transactions; and (4) the

alleged wrongdoing. Those allegations are rebutted by the Affidavit of Fátima González, as detailed below; however, to the extent they are not, they are legally insufficient to confer personal jurisdiction.

### 1. **Business Activities in Forum**

The Amended Complaint alleges that CONMEBOL "operates, conducts, engages in, or carries on a business or business venture in Florida, which demonstrate [*sic*] a general course of business activity for pecuniary benefit in connection with the Club Tournament television rights." (Am. Compl. ¶ 48). In support of this sweeping allegation, the Amended Complaint claims that CONMEBOL, "either itself or through its agents or licensees, extensively promoted and commercialized CONMEBOL tournaments in Florida" (Am. Compl. ¶ 48), and that CONMEBOL "representatives routinely traveled to Florida for business-related purposes, including business relating to the Club Tournaments" (*id.*). Yet the Amended Complaint offers no specifics in support of these assertions.

In fact, CONMEBOL has had no offices, employees or business activities in Florida or the United States during the Relevant Period, ███████████████████████████ ██████████████████████ (Ex. 3 at 11; González Aff. ¶ 44). None of the Club Tournament games were played in Florida or the United States during the Relevant Period. (González Aff. ¶ 43).

Neither CONMEBOL's Executive Committee nor its Congress held any meetings in the United States during the Relevant Period. (*Id.* ¶ 41). ████████████████████ ████, there were no meetings in the United States to discuss Club Tournament broadcast rights (*id.* ¶ 44), and there was no other travel by CONMEBOL officials to the United States for Club Tournament business. (*Id.*)███████████████████

16



(*Id.* ¶ 45).

During the Relevant Period, CONMEBOL has only once availed itself of any judicial assistance in this country, in a 2016 lawsuit filed in state court in New York to remedy fraud in connection with a tournament sponsorship (not broadcast rights) agreement. (*Id.* ¶ 50; *see also Confederación Sudamericana de Fútbol v. Int'l Soccer Mktg., Inc.*, No. 0655619/2016 (N.Y. Sup. Ct. filed Oct. 21, 2016). Besides the present case, CONMEBOL has been a defendant in only one other case in the United States, as one of many defendants in a 2011 lawsuit filed in state court in Florida. *See Traffic Sports Int'l, Inc. v. Confederacion Sudamericana de Futbol*, No. 11-38881 (CA 40) (Fla. Cir. Ct. filed Nov. 21, 2011).  In July 2012, CONMEBOL moved to dismiss that case for lack of personal jurisdiction.  In June 2013, before the court ruled on the issue of personal jurisdiction, the parties stipulated to dismiss the case. (González Aff. ¶ 51).

### a.   The Assignments of the Broadcast Rights



(González Aff. ¶ 45; *id.* ¶ 30; *id.* Exs. A-E).

(González Aff. ¶ 46).

(*Id.* ¶ 44; Ex. 3 at 11).



(González Aff. ¶ 46; Ex. 3 at 6).

(González Aff. ¶ 46).

Recognizing that CONMEBOL directed insufficient purposeful activity at this forum in connection with any of the allegedly tainted T&T Agreements, the Amended Complaint attempts to blur the distinction between CONMEBOL and the recipients of the assignments of the Broadcast Rights, alleging that "CONMEBOL . . . has promoted its Club Tournaments through their broadcast or transmission via television, radio or internet by Florida based entities, including Fox Pan American and FSLA." (Am. Compl. ¶ 48).

(González Aff. ¶ 36; *id.* Exs. A-E, G).

(González Aff. ¶ 36).

(González Aff. ¶ 36; *id.* Ex. G ¶ 19).

(González Aff. ¶ 36; *id.* Exs. A-G).

**b.  Financial Transactions**

The Amended Complaint alleges that "Conmebol conducted business using accounts at

the Florida and New York branches of major U.S. and Swiss financial institutions." (Am. Compl. ¶ 48). Further, it is alleged that "the foreign defendants[] . . . purposely availed themselves of the United States financial system by using bank accounts in the United States to send and receive the bribes at issue." (Am. Compl. ¶ 50; *see also id.* ¶ 75 ("T&T and other defendants used wire facilities and financial institutions located in the United States, among other countries, to make and receive bribe payments . . . ."); *id.* ¶ 84 (alleging that bribe payer used intermediary accounts "in the Florida and New York branches of major U.S. and European financial institutions to move millions of dollars among the sports marketing companies (such as T&T) to soccer officials who were the recipients of the illicit payments")).

The U.S. financial accounts referenced in the Amended Complaint, however, are not CONMEBOL's accounts.



. (González Aff. ¶ 47).

(*Id.*).

. (*Id.* ¶ 49).

## 2. Alleged Wrongdoing

On the face of the Amended Complaint, CONMEBOL is the principal victim of the alleged wrongdoing, not one of the perpetrators. The Amended Complaint alleges that Global Sports "repeatedly offered Conmebol substantially more for the television rights to air the Club Tournaments than the amounts T&T paid or offered to Conmebol for those rights." (Am. Compl. ¶ 12). "Even though Conmebol officials were obligated, pursuant to their fiduciary duties to

Conmebol's member associations, to obtain the best terms for the television rights, the Conmebol officials repeatedly rejected Plaintiffs' superior offers in favor of T&T's inferior offers because of the bribes paid to those officials by T&T." (*Id.* ¶ 12). CONMEBOL officials, according to the Amended Complaint, "owed fiduciary duties to Conmebol and to their member associations that required them to license the rights on the terms most favorable to Conmebol and its member associations." (*Id.* ¶ 115; *see also* Am. Compl. Ex. A ¶ 94 ("The foregoing officials of . . . CONMEBOL . . . were bound by fiduciary duties to . . . their . . . organization[].")).

However, the Amended Complaint itself also alleges that CONMEBOL officials breached those fiduciary duties and licensed the broadcast rights on less favorable terms – *i.e.*, to CONMEBOL's detriment. (Am. Compl. ¶ 178.e. (alleging effect of wrongdoing was "[r]educing Conmebol's revenues for television rights to the Club Tournament"); *id.* ¶ 164 ("Conmebol rejected the well-qualified Plaintiffs' much more lucrative offer for the rights to televise the Club Tournaments."); *id.* ¶ 143 ("Defendants' conduct also injured Conmebol member associations and affiliated soccer clubs, which obtained less revenue from the Club Tournaments than they otherwise would have because Conmebol accepted lower television rights payments due to Defendants' bribery of its Executive Committee officials."); Am. Compl. Ex. A ¶ 95 (charging officials with "the abuse of their position of trust and the violation of their fiduciary duties"); *id.* ¶ 97 ("[T]he defendants deprived . . . the confederations [including CONMEBOL], and their constituent organizations – and, therefore, the national member associations, national teams, youth leagues, and development programs that relied on financial support from their parent organizations – of the full value of those [media and marketing] rights. . . . Finally, the schemes deprived . . . the confederations [including CONMEBOL], and their constituent organizations of

20

their right to the honest and loyal services of the soccer officials involved. . . . [S]uch deprivations inflicted significant reputational harm on the victimized institutions, damaging their prospects for attracting conscientious members and leaders and limiting their ability to operate effectively and carry out their core missions.")).

Thus, Plaintiffs have placed themselves in the odd position of alleging victimhood, while seeking recovery from an alleged fellow victim. To arrive at this contorted position, the Amended Complaint depends on the actions of allegedly corrupt CONMEBOL officials. It states that "Plaintiffs are victims of a bribery scheme described [in the Superseding Indictment] against, among others, . . . Defendants Eugenio Figueredo and Juan Angel Napout, former presidents of [CONMEBOL], and numerous other Conmebol officials." (Am. Compl. ¶ 2). Figueredo served as a CONMEBOL vice president from 1993 to 2013, and as president from April 2013 to August 2014. (Am. Compl. ¶ 33). Napout served as a CONMEBOL vice president from 2007 to 2014, and as president from August 2014 to December 11, 2015. (Id. ¶ 34). Various other CONMEBOL officials are alleged to have been involved in bribery over the years. (Am. Compl. ¶ 66 (alleging "bribe and kickback payments to 16 Conmebol officials")). Those officials included: Rafael Esquivel (*id.* ¶ 4); "Luis Bedoya and Sergio Jadue" (*id.*); "Nicolas Leoz, . . . Eduardo Deluca, and Romer Osuna" (Am. Compl. ¶ 62); and "Manuel Burga, Carlos Chavez [and] Luis Chiriboga" (Am. Compl. ¶ 69).

All told, "Defendant T&T paid tens of millions of dollars in bribes and kickbacks to corrupt Conmebol officials between 2000 and 2015 in exchange for the exclusive television rights" to the Club Tournaments. (*Id.* ¶ 3). The Amended Complaint further alleges that "former Conmebol President Eugenio Figueredo attested in Uruguayan criminal proceedings that 'the FOX company was behind all the illicit negotiations.'" (*Id.* ¶ 10).

Other aspects of the alleged wrongdoing are that CONMEBOL officials

> agreed to prevent Plaintiffs from obtaining the Club Tournament television rights
> by misleading Plaintiffs about when proposals for the rights would be considered;
> by licensing the Club Tournament television rights in advance of expected offers
> from Plaintiffs, then using the existence of such agreements as an excuse to reject
> Plaintiffs' more favorable proposals; and by refusing to revoke rights wrongfully
> awarded to T&T at below-market prices.

(Am. Compl. ¶ 139).

None of the allegations, however, specifically identify wrongdoing that occurred in Florida or the United States. The Amended Complaint simply states in general and without supporting detail that "meetings in furtherance of the bribery took place in the United States." (Am. Compl. ¶ 50; s*ee also id.* ¶ 75 ("Defendants . . . on information and belief, conducted meetings in the United States in furtherance of their schemes.")). Even if so, those trips were at the personal choice and expense of the wrongdoers. (González Aff. ¶ 61). CONMEBOL has found no record of directing, approving or reimbursing expenses for such trips. (*Id.*). If such activities occurred, they were outside the scope of the officials' authority, and without CONMEBOL's knowledge or approval. (*Id.*).

Indeed, Plaintiffs' pleadings make clear that the alleged wrongdoing was secret and hidden from CONMEBOL, which had no knowledge of it and therefore obviously did not authorize, approve or ratify any of it. (*See* Am. Compl. Ex. A ¶ 361 ("[N]o disclosure of any of the foregoing bribery and kickback schemes was made to . . . CONMEBOL, including without limitation to [its] . . . executive committee[], congress[], or constituent organizations.").

Plaintiffs allege that Global Sports attempted to purchase the Club Tournament broadcast rights at higher prices than CONMEBOL accepted from others. Global Sports is alleged to have attempted to purchase the Club Tournament broadcast rights first in 2010, then in 2012, 2013, and finally in 2015. (*See* Am. Compl. ¶¶ 111-134). Casal is alleged to have had multiple

meetings with CONMEBOL's former presidents Leoz and Napout about acquiring the Club Tournament broadcast rights. (*Id.* ¶¶ 111, 116, 129). And Global Sports is alleged to have submitted numerous written proposals to CONMEBOL's Executive Committee, ███████████ ████████████ (*Id.* ¶¶ 111-134; *see also* González Aff. ¶ 52; *id.* Exs. I-L).

All of these events occurred in South America. ████████████████████

████████████████████████████████████████████

████████████████████ (González Aff. Exs I-N). ████████████████████

████████████████████████████████████████████

(*Id.*). ████████████████████████████████████████

████████████████████████████████ (González Aff. ¶ 45).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (*Compare* González Aff. Ex. I ████████████████

████████████████████████████████████████ *and id.* Ex. J

(████████████████████████████████████████████

████████████████ *with* Exs. A-E ████████████████

███ ); *compare* González Aff. Ex. K ████████████████████

████████████████████████ ) *with* González Aff. Exs A-E (███████

████████████████ 8); *compare* González Aff. Ex. L ████████

████████████████████████████████ *with* Ex. 4 (████████

████████████████████████████████████████ ).

Conceding this point, the Amended Complaint alleges that CONMEBOL "could have revoked, and was in fact legally obligated to revoke, its wrongful sale of the Club Tournament

rights to T&T in favor of GolTV." (Am. Compl. ¶ 115). However, according to the Amended Complaint's own allegations, CONMEBOL was not aware of any alleged fraud. (*See* Am. Compl. Ex. A ¶ 361). 

The Fox Agreement is the only one for which the Amended Complaint even vaguely alleges any specific activity directed at the forum. (Am. Compl. ¶ 132 (alleging on information and belief that "the agreement was negotiated in part by phone and in-person meetings in Florida," while offering no details)).

(González Aff. ¶¶ 34-35). Accordingly, the Amended Complaint fails to allege that the Fox Agreement was the product of bribery, and instead alleges only that the agreement "was negotiated in secret and violated CONMEBOL's procedures" (Am. Compl. ¶ 133).

(González Aff. ¶ 34; *id.* Ex. H at p. 17).

    **D.**  <u>**Facts Pertinent to Jurisdiction Over Full Play**</u>

        **1.**  <u>**The Substantive Allegations Against Full Play**</u>

Plaintiffs claim that Defendants T&T (a Cayman Islands corporation owned by Fox Pan

American Sports, LLC)[6], Torneos, and Alejandro Burzaco (an Argentine resident and principal of Torneos) paid and caused to be paid bribes and kickbacks to CONMEBOL officials in exchange for those officials awarding the television rights for the Club Tournaments to the Fox television channels instead of to Plaintiffs.  Plaintiffs' allegations against Full Play arise from the Superseding Indictment and Torneos' DPA, which claim "that [Torneos] at times relied on a sports marketing company and two of its principals, who are believed to be Defendant Full Play and [its owners], to facilitate the payment of bribes and kickbacks in connection with the Club Tournament television rights." *Id.* at ¶¶ 9, 72 (citing *Id.* Ex. B at ¶ 38); *see also id.* at ¶¶ 79, 101-05. Plaintiffs allege that Full Play knew that the payments that are the subject of the Amended Complaint were intended to serve as bribes relating to the Club Tournament television rights, *id.* at ¶ 77, and that Full Play benefitted from the bribes because it obtained agency rights from CONMEBOL in connection with the 2019-2022 Club Tournaments. *Id.* at ¶182(g).[7]

## 2.  <u>The Jurisdictional Allegations Against Full Play</u>

While Plaintiffs' allegations against many of the Defendants are specific, the substantive allegations against Full Play are general and conclusory, and there are no jurisdictional allegations that tie Full Play directly to Florida or the United States.   In fact, the only jurisdictional allegation about Full Play itself (as opposed to against its owners and/or two other entities) is that it is an Uruguayan corporation and a sports media and marketing business with its

---

[6] Defendant Pan American Sports Enterprises Company merged with Fox Pan American and became the surviving entity and legal successor to Fox Pan American. *Id.* at ¶ 19.

[7] The Superseding Indictment relates to a number of tournaments that are not the subject of the Amended Complaint here. Accordingly, reliance upon the Superseding Indictment alleging conduct relating to those tournaments would be improper even if that indictment could otherwise form the basis for Plaintiff's claims here. For this and the reasons described in footnote 1, the Court should not rely upon references to the DPA or the Superseding Indictment in weighing the jurisdictional claims here.

principal offices in Argentina and Uruguay.  *Id.* at ¶ 31.  Plaintiffs do not allege that Full Play

does business in, has a presence in, or has any ties to Florida or the United States.

Instead, Full Play's only alleged connections to Florida or the United States arise from

purported conduct by its so-called affiliates.  Plaintiffs have made the allegations against those

non-parties in paragraphs 44, 76, and 101 through 105 of the Amended Complaint and then

attempt to tie Full Play to those non-parties in paragraph 182(g).  Based on these allegations,

Plaintiffs seek to establish personal jurisdiction over Full Play pursuant to Fla. Stat. §

48.193(1)(a)(2); the worldwide service of process provision of 15 U.S.C. § 22; and Federal Rule

of Civil Procedure 4(k)(2).  *Id.* at ¶¶ 41, 46, 49, 50.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Statement by CONMEBOL

#### 1.   The Burden Is on Plaintiff to Establish Personal Jurisdiction

"It goes without saying that, where the defendant challenges the court's exercise of

jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal

jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir.

2009). Thus, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident

defendant bears the initial burden of alleging in the complaint sufficient facts to make out a

prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.

2009). A defendant may then challenge jurisdiction "by submitting affidavit evidence in support

of its position." *Id.* At that point, the burden "'shifts back to the plaintiff to produce evidence

supporting jurisdiction.'" *Id.* (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th

Cir. 2002)).

#### 2.   The Exercise of Personal Jurisdiction Must Comport with Due Process

The exercise of personal jurisdiction is subject to the Due Process Clause of the Fifth and

Fourteenth Amendments of the United States Constitution.  General jurisdiction applies where a defendant's contacts with the forum are "continuous and systematic," regardless of whether the claims in suit arise out of, or relate to, those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Specific jurisdiction applies where a defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted). In the present case, Plaintiffs allege only specific jurisdiction.  Specific personal jurisdiction is a claim-specific inquiry. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (holding that specific personal jurisdiction is "a claim-specific inquiry"); *see also* 7 Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks and Monopolies* § 24:4 (4th ed. 2017) ("Specific (a/k/a 'limited') jurisdiction is claim-specific. It depends on the applicable defendant's purposeful ties to the forum *which are related to the claim at issue*. Defendant-forum contacts unrelated to the claim do not count toward the constitutionally required minimum contacts.").

The "purposeful direction" (*i.e.,* "purposeful availment") element of specific jurisdiction reflects the "constitutional touchstone . . . whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Jurisdiction is proper only if "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (emphasis in original)). Thus, a defendant's transmission of goods that reach the forum through the stream of commerce supports the exercise of jurisdiction "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre*, 564 U.S. at 882.

Even if sufficient minimum contacts are found as a result of a defendant's purposeful availment of the privilege of conducting activities in the forum, those contacts must be further "evaluated in light of other factors to ensure that the exercise of jurisdiction comports with traditional notions of 'fair play and substantial justice.'" *Oldfield*, 558 F.3d at 1221 (quoting *Int'l Shoe*, 326 U.S. at 320). "A 'primary concern' of the 'fairness' test is the burden placed on the defendant." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). This primary concern is of especially amplified importance "in cases involving international defendants, [where] courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987)).

Moreover, the "arise out of or relate to" element of specific jurisdiction requires a court to "focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'" *Oldfield*, 558 F.3d at 1222 (quoting *Helicopteros*, 466 U.S. at 414). "Necessarily, the contact must be a 'but for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Burger*

*King*, 471 U.S. at 472 (alteration in original)). Put another way, "Florida's specific jurisdiction requires the plaintiff to establish connexity between the injuries suffered and the defendant's contacts." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1341 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015), *quoted in Maguire v. Hong Kong Int. Aviation*, 2017 U.S. Dist. LEXIS 22371 (S.D. Fla. 2017), *Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010).

These dual requirements "ensure that a defendant is only burdened with litigation in a forum where his 'conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there.'" *Oldfield* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Courts are to apply the Due Process Clause "in such a way as to provide 'a degree of predictability to the legal system,' thereby allowing foreign residents the opportunity to 'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

      3.  **The Relevant Forum**

The Amended Complaint alleges several purported bases for jurisdiction: the Florida long-arm statute, Fla. Stat. 48.193(1)(a); Section 12 of the Clayton Act, 15 U.S.C. § 22; and Federal Rule of Civil Procedure 4(k). Regardless of which avenue is traveled, the exercise of personal jurisdiction must satisfy the constitutional requirements of due process reviewed above. The relevant forum for measuring a defendant's minimum contacts, however, varies.

Under the Florida long-arm statute, the relevant forum is Florida for both CONMEBOL and Full Play. *See* Fla. Stat. 48.193(1)(a) (providing jurisdiction based on acts "in this state" or "within this state").

"[T]o activate the worldwide service provision of Section 12 of the Clayton Act, a plaintiff must actually serve the defendant pursuant to that provision." *Gen'l Cigar Holdings,*

*Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1340 (S.D. Fla. 2002). CONMEBOL accepted service of process (*see* D.E. 36 at 2), and Full Play was served through issuance of letters rogatory in Uruguay (*see* D.E. 41, 42). Accordingly, despite Plaintiffs' reference to Section 12 of the Clayton Act, the relevant forum for the antitrust claims is Florida for both CONMEBOL and Full Play. *See Gen'l Cigar Holdings*, 205 F. Supp. 2d at 1341 ("[B]ecause Plaintiff served Altadias, S.A. under the Hague Convention rather than the Clayton Act, the applicable forum for determining Altadis, S.A.'s contacts is the State of Florida.").

Rule 4(k) applies only to claims arising under federal law, and thus cannot provide a basis for jurisdiction as to Plaintiffs'' FDUTPA claim. Fed. R. Civ. P. 4(k)(2) (providing for service "[f]or a claim that arises under federal law"). And again, jurisdiction premised on Rule 4(k) must arise out of, or relate to, the Plaintiffs' causes of action, and must, in any event, satisfy constitutional standards.

### B.  <u>Additional Statement by Full Play</u>

Full Play incorporates the standard set forth by CONMEBOL, above.  However, in the case of Full Play, because the Amended Complaint's allegations do not establish a prima facie case of personal jurisdiction over Full Play, dismissal based upon those allegations alone is proper, and the Court need not consider any evidence in deciding Full Play's motion. *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 n. 19 (11th Cir. 2009) (stating that court may resolve personal jurisdiction challenge on pleadings); *Buccellati Hldg. Italia SPA v. Laura Buccellati, LLC*, No. 1:13-CV-21297-KMM, 2014 WL 11880964 *5 (S.D. Fla. Jan. 24, 2014) (dismissing for lack of personal jurisdiction based on allegations of counter-complaint alone where allegations were legally insufficient); *Arbitrage Int'l Mktg, Inc. v. Demaria*, No. 10-80399, 2010 WL 3941805, *4 n.1 (S.D. Fla. Oct. 6, 2010) (dismissing complaint and stating that there was no need to address affidavits because the complaint and attached documents failed to

make out a prima facie case for personal jurisdiction).

## IV.   CONMEBOL ARGUMENTS

The facts alleged in the Amended Complaint, as supplemented and partially rebutted by the González Affidavit, do not support the exercise of personal jurisdiction over CONMEBOL. Any alleged injury was to a foreign company outside the forum.  Moreover, the jurisdictional facts fail both the "purposeful direction" and "arise out of" elements of specific personal jurisdiction. Exercising jurisdiction over CONMEBOL with respect to claims over the Club Tournament broadcast rights agreements would also offend fair play and substantial justice by subjecting a foreign entity to U.S. jurisdiction in a matter over which it did not, and could not, reasonably foresee being haled into court in this forum.

Plaintiffs have failed to carry their burden, and the Court should dismiss the claims against CONMEBOL with prejudice.

### A.   As a Threshold Matter, Global Sports Made the Offers and, Therefore, the Alleged Injury Was to a Foreign Entity Outside the Forum

Plaintiffs endeavor to support jurisdiction based on alleged injury in the forum. But as the documentary record and the allegations of the Amended Complaint make clear, ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ The only possible injury was therefore to Global Sports, outside the forum.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. (*See* González Aff. Exs. I-N). ████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

         ███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ (González Aff Exs. M, N) (emphasis added)). This raises serious

concerns about the candor of Plaintiffs before this Court.  Underscoring these concerns, Plaintiffs

responded to document requests propounded by CONMEBOL, narrowly tailored to this specific

issue, and confirmed that no written agency agreements exist or existed between Global Sports

and GolTV concerning any proposal to acquire the Broadcast Rights to the Club Tournaments.

(Ex. 5 (Pls.' Objections & Resps. to Def. CONMEBOL's 2nd Jurisdictional Disc. Req. for

Produc.), at pp. 4-5). Plaintiffs appear to be using GolTV for the purpose of fabricating injury in

Florida where there was none in reality, in a failed attempt to manufacture jurisdiction in the

United States. The Court should disregard Plaintiffs' unsupported claims of forum injury.

         ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████

**B.  CONMEBOL's Contacts in the Forum Were Insufficient for Specific Personal Jurisdiction**

The Amended Complaint asserts specific personal jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(1), on the theory that CONMEBOL "operates, conducts, engages in, or carries on a business or business venture in Florida, which demonstrate [*sic*] a general course of business activity for pecuniary benefit in connection with the Club Tournament television rights." (Am. Compl. ¶ 48). "In order to constitute doing business under this statute, the nonresident defendant's activities must be considered collectively and show a general course of business activity in the state for pecuniary benefits." *Foster, Pepper & Riviera v. Hansard*, 611 So. 2d 581, 582 (Fla. 1st DCA 1992). Relevant factors include "'(1) the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the overall revenue gleaned from Florida clients.'" *Malgarejo v. Pycsa Panama, S.A*, 537 Fed. App'x 852, 860 (11th Cir. 2013) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)); *accord Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1334 (S.D. Fla. 2010) (reciting same factors).

Moreover, section 48.193(1)(a) is a specific personal jurisdiction statute. It applies only to the extent that the "cause of action aris[es] from" the alleged acts. Fla. Stat. § 48.193(1)(a).

Plaintiffs' allegations fail to satisfy either the "doing business" requirement of section 48.193(1)(a) or the minimum constitutional requirements for the exercise of specific personal jurisdiction.

1.  **CONMEBOL's Business Activities Do Not Support Jurisdiction**

CONMEBOL's business activities do not constitute doing business under section 48.193(1)(a). CONMEBOL had no offices, employees or business activities in Florida or the United States during the Relevant Period. None of the tournaments at issue during the Relevant Period was held in Florida or the United States. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Nor do CONMEBOL's activities "manifest an intention to submit to the power of a sovereign." *J. McIntyre*, 564 U.S. at 882. CONMEBOL did not purposefully direct its activity at the forum. The Club Tournaments are South American sporting events, organized by CONMEBOL, a Paraguayan non-profit, between South American teams. ██████████████

████████████████████████████████████████████████

CONMEBOL's counterparties in the T&T Agreements were Caribbean and South American, and were represented by individuals who were South American. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ (Ex. 3 at 11). ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████

The Fox Agreement differs in the U.S. presence of the assignee, but making a contract with a party in the forum is insufficient to establish specific personal jurisdiction. *See Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.*, No. 14-20914-Civ., 2015 WL 1437689, at *3 (S.D.

Fla. 2015) ("It is not enough that a foreign defendant merely contract with a Florida resident, or that performance under the contract could have been made in Florida; rather, the contract itself must require performance in Florida in order to invoke Florida jurisdiction."). ███████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████. So again, CONMEBOL directed insufficient activity toward the forum in connection with the Fox Agreement to support the exercise of specific personal jurisdiction.

Nor do Plaintiffs' causes of action arise from CONMEBOL's activity in the forum. "[T]he contact must be a 'but for' cause of the tort," *Oldfield*, 558 F.3d at 1222, and nothing CONMEBOL did meets that test. ████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████. (Ex. 3 at 11). ████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. On those facts, there is no way that a foreign entity could have "'fair warning'" that its conduct would "'subject [it] to the jurisdiction of a foreign sovereign.'" *Oldfield*, 558 F.3d at 1222 (quoting *Burger King*, 471 U.S. at 472 (alteration in original)).

In view of the negligible contacts with the forum in connection with the agreements granting Club Tournaments broadcast rights, CONMEBOL could not possibly have foreseen that

it would be haled into court here, and it would be grossly unfair to subject CONMEBOL to jurisdiction here.

### 2.   Worldwide Broadcasting Grants Did Not Target the Forum

Plaintiffs suggest that the broadcast of CONMEBOL soccer games in the forum is a basis for jurisdiction. The argument has no merit.

CONMEBOL is not a broadcaster. CONMEBOL is a South American soccer federation and tournament organizer. ███████████████████████

████████████████████████████████████████████████

Any broadcasting of Club Tournament matches in the forum was entirely the result of the intervening business decision-making of the assignee of the broadcast rights.

In that context, CONMEBOL did not itself have Florida clients or otherwise do business in Florida within the meaning of section 48.193(1)(a). *Malgarejo*, 537 Fed. App'x at 860.  And it clearly did not "target" the forum in a manner that would satisfy the purposeful-direction element of specific personal jurisdiction. *See J. McIntyre*, 564 U.S. at 882 (permitting exercise of jurisdiction "only where the defendant can be said to have targeted the forum"); *Kernel Records Oy v. Mosley*, No. 09-21597-Civ., 2010 WL 2812565, at *4-*5 (S.D. Fla. July 5, 2010) (rejecting personal jurisdiction where music publishing rights were granted "throughout the universe" such that "the alleged injury is in no way particular to, or directed at, Florida," because "[n]ot only did the EMI licensing agreement place no obligation to distribute the song in Florida, but it also rendered Nelstar entirely incapable of directing the song into Florida"). ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ (See Gonzalez Aff. ¶¶ 36-37).

██████████████████████████████████████

███████████████████████████████████ Plaintiffs' theory knows no bounds, as it would subject the assignor to jurisdiction in virtually any country worldwide. That is wholly antithetical to the goal of "ensur[ing] that a defendant is only burdened with litigation in a forum where his 'conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there.'" *Oldfield*, 558 F.3d at 1222 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). CONMEBOL was entitled "to 'structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). ████████████

██████████████████████████████████████

██████████████████

Plaintiffs have failed to carry their burden of establishing specific personal jurisdiction.

### 3. **CONMEBOL's Insignificant Banking Activities Are Unrelated to the Causes of Action and No Basis for Specific Personal Jurisdiction**

As another purported ground for personal jurisdiction, Plaintiffs claim that "CONMEBOL conducted business using accounts at the Florida and New York branches of major U.S. and Swiss financial institutions." (Am. Compl. ¶ 48). ████████████

██████████████████████████████████████

(González Aff. ¶ 49). Second, Plaintiffs fail to allege how any purported account was related to Plaintiffs' causes of action, as would be required to satisfy the "arising from" element of specific personal jurisdiction. ███████████████████████

██████████████████████████████████████

██████████████████ After all, CONMEBOL was the victim, not the perpetrator, of the alleged wrongdoing. Plaintiffs fail to carry their burden of establishing

sufficient grounds for the exercise of specific personal jurisdiction.

Plaintiffs also make undifferentiated allegations about all defendants, stating that "Defendants . . . avail[ed] themselves of the banking system in Florida and utilize[ed] banks in Florida to wire illicit bribes" (Am. Compl. ¶ 41), and that "the foreign defendants[] . . . us[ed] bank accounts in the United States to send and receive the bribes at issue" (*id.* ¶ 50). These allegations make no sense with respect to CONMEBOL, which obviously did not send bribes to anyone. Such carelessly drafted allegations, which are clearly counterfactual, provide no serious ground for the exercise of specific personal jurisdiction.[8]

## C. **The Bribed Former Officials Acted Without Authority, and Personal Jurisdiction Over CONMEBOL Cannot Rest on Their Actions**

The Amended Complaint asserts specific personal jurisdiction under the Florida long-arm statute, section 48.193(1)(a)(2), on the theory that each of the defendants "committed the RICO, antitrust, and intentional torts pled herein within the state of Florida." (Am. Compl. ¶ 41). Again, specific jurisdiction applies only to the extent that the "cause of action aris[es] from" the alleged acts. Fla. Stat. § 48.193(1)(a).

Defendants are alleged to have "made communications into Florida, visited Florida, and conducted meetings in Florida in furtherance of the intentional tortious acts." (*Id.* ¶ 41). In particular, the Amended Complaint alleges that "Defendants CONMEBOL (through its agents),

---

[8] To the extent Plaintiffs might seek to rely on CONMEBOL's receipt of funds through Florida or U.S. intermediary or correspondent banks, such transfers do not provide the requisite minimum contacts for personal jurisdiction. *See, e.g., Banco Cont'l, S.A. v. Transcom Bank (Barbados), Ltd.*, 922 So. 2d 395, 399 (Fla. 3d DCA 2006) (holding that under Florida's long arm statute, the defendant did not submit itself to personal jurisdiction by maintaining a correspondent banking relationship with UPB); *see also Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1983) (examining whether the defendant bank was doing business in Florida through its correspondent bank accounts in Miami, and ultimately holding that "a foreign [bank] engaged in the normal activity with resident correspondent banks to facilitate the movement of money is not subject to long-arm jurisdiction in Florida, even though it makes certain passive investments in federal funds").

Figueredo and Napout engaged in communications to and from Florida and/or traveled to Florida in furtherance of the torts alleged herein." (Am. Compl. ¶ 45).

CONMEBOL cannot be held responsible for the plainly unauthorized and adverse behavior of its faithless officials. The Supreme Court established in *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (hereinafter, "*ASME*"), that the test for such vicarious responsibility under antitrust law is whether an entity's representatives acted with apparent authority. *See id.* at 570 ("We hold that the apparent authority theory is consistent with the congressional intent to encourage competition."). "Apparent authority is the power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestation." Restatement (Third) of Agency § 2.03 (2006).

It should be needless to say that no reasonable belief in apparent authority is possible where the agent is acting illegally and contrary to the interests of the principal. "If a third party knows or has reason to know that an agent lacks authority to take a particular action, the agent does not act with apparent authority." *Id.* § 7.08 cmt. b. (2006). This includes any transaction that "the third party knows or has reason to know is irregular or otherwise not within the ordinary course of business that the agent conducts for the principal." *Id.* As the Restatement explains:

> Some transactions by their nature should strike a dissonant chord for a reasonable third party. . . . A basic circumstance is whether the transaction is itself legal. . . . A transaction that lacks any evident connection with a principal's interests . . . is on its face inconsistent with the fiduciary character of the relationship between principal and agent.

*Id.* § 2.03 cmt. d. This requirement of reasonable belief extends to a situation where a fourth party alleges harm resulting from a third party's belief in apparent agency. *Id.* cmt. e, illus. 12; *see also ASME*, 456 U.S. 556.

In the present case, the Amended Complaint and the Superseding Indictment allege

bribery that resulted in tremendous financial and non-economic loss to CONMEBOL. Obviously, no third party could possibly believe that such corrupt, adverse activities by CONMEBOL's faithless officials were within the scope of apparent authority. Indeed, Plaintiffs concede that the bribery and corruption were secret, hidden from CONMEBOL, and unknown to CONMEBOL. (*See* Am. Compl. Ex. A ¶ 361 ("[N]o disclosure of any of the foregoing bribery and kickback schemes was made to . . . CONMEBOL, including without limitation to [its] . . . executive committee[], congress[], or constituent organizations.")).

Moreover, bribery and other forms of corruption were plainly contrary to the publicly available FIFA Ethics Code, FIFA Disciplinary Code, CONMEBOL Code of Ethics and CONMEBOL Disciplinary Regulations. (*See supra* p. 9). A third party could have readily verified that the principal, CONMEBOL, did not authorize its agents to engage in bribery and corruption (as if such verification would ever be needed).

It is not clear that Plaintiffs believe their own allegations. The Amended Complaint contains an entire section alleging grounds for holding various entities vicariously liable for their officials' conduct. (Am. Compl. ¶ 182). CONMEBOL is conspicuously absent from that section of the Amended Complaint. Plaintiffs thus fail to allege that CONMEBOL is vicariously liable for its former officials' conduct, which after all was faithless, adverse and injurious to CONMEBOL.[9]

---

[9] In addition to the absence of actual or apparent authority, any contacts to the United States by former CONMEBOL officials in furtherance of the illegal scheme alleged by Plaintiffs cannot be attributed to CONMEBOL on the additional ground of the adverse interest exception to principles of vicarious liability. *See, e.g., O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007) ("But if a corporate agent was acting adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation.") (internal citations omitted). Again, despite spelling out the alleged basis for vicarious liability of numerous other defendants, nowhere in the Amended Complaint do

Personal jurisdiction cannot be premised on any Florida or United States connection to Plaintiffs' various allegations of bribery, because CONMEBOL was the victim of that alleged misconduct, not the perpetrator, and the recipients of the bribes acted with neither actual nor apparent authority from CONMEBOL.

### D. The Allegations of Conspiracy Add Nothing to the Jurisdictional Analysis

The Amended Complaint alleges specific personal jurisdiction under the Florida long-arm statute, section 48.193(1)(a)(2), on the theory that "the statute supports personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy." (Am. Compl. ¶ 46). In support of this allegation, the Amended Complaint states that "numerous Defendants committed tortious acts in Florida in furtherance of the conspiracy" (Am. Compl. ¶ 46), and that "[a]ll Defendants participated in the conspiracy to commit such actions, knowing that members of the conspiracy were responsible for committing tortious acts in Florida" (*id.*).

 "An action for civil conspiracy ordinarily requires proof of an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998); *see also Principal Life Ins. Co. v. Mosberg*, No. 09-22341-CIV, 2010 WL 473042, at *5 (S.D. Fla. Feb. 5, 2010) (Altonaga, J.) (stating elements of civil conspiracy as "'(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy")) (quoting *UTC Indus., Inc. v. Presidential Fin. Corp.*, 976 So. 2d 92, 94 (Fla. 3d DCA 2008)).

---

Plaintiffs allege any facts to support the notion that CONMEBOL is vicariously liable for the illegal conduct of its former officials.

Accordingly, an alleged conspirator must enter an agreement with the alleged co-conspirators. *See, e.g.*, *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1244 (S.D. Fla. 2010) (dismissing conspiracy claim where plaintiff failed to allege that cruise company agreed with on-ship medical provider for the latter to commit wrongdoing). And the alleged conspirator must "'know of the scheme and assist it in some way.'" *Principal Life*, 2010 WL 473042, at *5 (quoting *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)).

Plaintiffs' casual allegations about "all Defendants" fail to establish a basis for specific personal jurisdiction over CONMEBOL. Indeed, as applied to CONMEBOL, the allegation of conspiracy is rather nonsensical, as it amounts to a claim that the victim conspired to victimize itself. The Amended Complaint and the Superseding Indictment (which is part of the complaint for all purposes (*see* p. 12, *supra*), recognize that CONMEBOL knew nothing about, and was the victim of, the alleged wrongdoing. (*See supra* pp. 15, 19). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Thus, Plaintiffs' own pleadings negate the claim that CONMEBOL was inside the alleged conspiracy. This conclusion is further bolstered by the evidence submitted by CONMEBOL, which makes clear that it was not a party to the alleged conspiracy. (Gonzalez Aff. ¶¶ 64-65).

Nor can the actions of CONMEBOL's allegedly corrupt officials bring CONMEBOL itself into the conspiracy. As explained above (*see supra* § IV.C.), those faithless officials acted without actual or apparent authority, and cannot subject CONMEBOL to liability. The *ASME* case was a conspiracy case, and its adoption of the apparent authority test established the outer limit of vicarious liability for antitrust conspiracy. *ASME*, 456 U.S. 556 (affirming Second Circuit's adoption of apparent authority test for holding entity liable for an official's involvement

in conspiracy); *Hydrolevel Corp. v. Am. Soc'y Mech. Eng'rs*, 635 F.2d 118, 120 (2d Cir. 1980) (stating that underlying claim was for "conspiracy to restrain trade in violation of § 1 of the Sherman Act"); *cf. ASME*, 456 U.S. at 592 (Powell, J., dissenting) (expressing concern over Court's recognition of conspiracy liability based on apparent authority); *see also In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1323 & n.30 (S.D. Fla. 2010) (Altonaga, J.) (rejecting parent company's involvement in conspiracy where no actual or apparent agency was sufficiently alleged, in part because plaintiffs alleged "no facts suggesting the other alleged co-conspirators assumed Prestige had the authority to bind VCNA to the alleged unlawful agreement").

Plaintiffs have failed to carry their burden of establishing that CONMEBOL is subject to specific personal jurisdiction in this forum.[10]

## V.   FULL PLAY ARGUMENTS[11]

As set forth below, personal jurisdiction over Full Play does not lie in Florida or in the United States because Plaintiffs cannot satisfy the requirements of Florida's long-arm statute, constitutional due process concerns, or Federal Rule of Civil Procedure 4(k)(2).

### A.   Personal Jurisdiction Over Full Play Does Not Lie in Florida

Plaintiffs are seeking to establish personal jurisdiction over Full Play pursuant to section

---

[10] In addition to the foregoing arguments, CONMEBOL objects on due process grounds to the May 25 Order, which required CONMEBOL to prepare and file this Motion to Dismiss in consolidated format with co-defendants Full Play and Alejandro Burzaco. Assuming the truth of Plaintiffs' allegations, CONMEBOL is a victim and, thus, should not have been compelled to present its case in cooperation and collaboration with alleged perpetrators. The procedure has not only distracted CONMEBOL from the task of marshaling its own facts and arguments, but diluted CONMEBOL's presentation, scattering it betwixt and between the presentations of those who allegedly injured CONMEBOL. To hamper a party's ability effectively to present its case undermines due process.

[11] The analysis set forth below applies to all of the claims that Plaintiffs have asserted against Full Play. Accordingly, a count-by-count discussion is not necessary.

48.193(1)(a)(2) of Florida's long-arm statute. (Am. Compl. ¶ 41). This provision confers personal jurisdiction over one "who personally or through an agent" commits "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Plaintiffs' conclusory allegations regarding Full Play are legally insufficient to satisfy Florida long-arm statute or the state's constitutional due process requirements. Accordingly, Florida lacks personal jurisdiction over Full Play.

### 1.  The Alleged Attendance of Full Play's Owners at a Meeting in Florida Cannot Be Imputed to Full Play Under Florida's Long-Arm Statute

Plaintiffs have not alleged, and cannot in good faith allege, that Full Play committed any tort in Florida or that there are any direct contacts between Full Play and Florida to satisfy section 48.193(1)(a)(2). Rather, Plaintiffs have made the conclusory assertion that Full Play is "vicariously liable" for the conduct of certain non-parties whose conduct they describe more specifically. Am. Compl. ¶ 182(g). Plaintiffs are asking the Court to ignore the corporate form and, without establishing a legal or factual basis for doing so, attribute to Full Play the one alleged contact between Full Play's *owners* and Florida.[12] *See* Am. Compl. at ¶ 44.  Florida law does not support such a theory because conclusory allegations regarding corporate relationships are legally insufficient to establish personal jurisdiction under Florida's long-arm statute. *See, e.g., Brownsberger v. Gexa Energy, LP*, 10-CV-81021, 2011 WL 197464, at *4 (S.D. Fla. Jan. 20, 2011), *aff'd sub nom. Bronsberger v. Nextera Energy, Inc.*, 436 Fed. Appx. 953 (11th Cir. 2011) (holding that allegations of specific jurisdiction based on agency theory were legally insufficient and *conclusory* where plaintiff simply asserted that subsidiary over which jurisdiction was sought was "substantially if not totally" controlled by Florida parent); *Ellis v. Celebrity Cruises, Inc.*, No. 10-205410CIV-Altonaga, 2010 WL 6730808, *1 (S.D. Fla. July 15, 2010) (granting motion to dismiss for lack of personal jurisdiction where plaintiff's allegations

---

[12] To the extent Plaintiffs also seek to impute Yorkfields's conduct, that conduct allegedly occurred in New York and is not relevant under Florida's long-arm statute.

of agency "hinge on an *unsupported legal conclusion*" that nonresident defendant is resident's agent); *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. 3d DCA 2011) (same where plaintiff claimed that agent committed tort in Florida but did not allege "high and very significant" level of control).

Instead, to impute in-state contacts to a foreign company under the long-arm statute's agency provision, the person or entity acting in the state must be "merely an agent" through which the foreign company conducts its business, or the separate corporate status must be "formal only and without any semblance of individual identity." *See Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240 (S.D. Fla. 2015) (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002)). **Additionally**, imputation for jurisdictional contacts requires a "high and very significant" amount of control or that the entity conducting activities within the state function "solely to achieve the purpose of the dominant corporation." *See Hard Candy* at 1241, 1249 (citations omitted) (holding that related entity's Florida contacts could not be imputed to defendants for jurisdiction where defendant did not exercise requisite amount of control over entity); *see also Baban v. Intercont. Hotels Group, PLC*, No. 04-21065-CIV-COOKE/BROWN, 2006 WL 8418675, *4 (S.D. Fla. Mar. 8, 2006) (holding that activities of defendant's purported agents could not be imputed where defendant did not exercise substantial control over agent companies that functioned independently); *Universal Music Venezuela, S.A. v. Montaner*, 105 So. 3d 588, 589 (Fla. 3d DCA 2012) (holding that dismissal for lack of personal jurisdiction was warranted where defendant did not control or direct operations of alleged affiliate in Florida); *Gadea*, 949 So. 2d at 1148-49 (finding that agency relationship could not be established for personal jurisdiction and stating that for agency to exist subsidiary must manifest "no separate corporate interests of its own and function[] solely to achieve the

45

purposes of the dominant corporation") (citation omitted); *Banco Cont., S.A. v. Transcom Bank (Barbados), Ltd.*, 922 So. 2d 395, 400 (Fla. 3d DCA 2006) (holding that plaintiff did not establish agency relationship for personal jurisdiction where, although there was a link between defendant and its agent, and defendant's president was involved with both companies, this did not rise to the level of operational control required by law).

Under these authorities, personal jurisdiction over Full Play does not exist simply because two non-party owners of Full Play allegedly attended a meeting in Florida during which bribes allegedly were discussed. This is especially true when the Amended Complaint itself alleges that the purported bribes were not directed to or through Full Play but, rather, through two separate entities controlled by the individuals alleged to have attended the purported meeting. *See* Am. Compl. ¶¶ 102 and 104.  For these actions to be attributable to Full Play, Plaintiffs would need to allege more – that the non-party owners exercised a high and significant amount of control over Full Play, that they engaged in conduct in Florida solely to achieve Full Play's purposes, and that they attended the meeting in Florida on Full Play's behalf. Yet Plaintiffs cannot allege anything more in good faith because the document on which they rely to support their allegations against Full Play does not even state that those non-party owners were acting on behalf of Full Play during the purported meeting.

Citing the Superseding Indictment, Plaintiffs allege that "the DOJ alleged that [the non-party owners] met in South Florida with Burzaco and an individual named Jose Hawilla to discuss the payment of bribes to CONMEBOL officials." (Am. Compl. ¶ 44 (citing Superseding Indictment at ¶ 360)). The Superseding Indictment, in turn, alleges, "Following the press conference in South Florida earlier that year, the principals of Datisa . . . and [the non-party owners] – met in South Florida and discussed the bribery scheme." (Am. Compl. Ex. A, ¶ 360).

Conspicuously absent from these allegations is any mention that the non-party owners were attending the meeting on behalf of Full Play, any specification of what was discussed on behalf of Full Play, nor even any mention of Full Play at all. Furthermore, the sections of the Superseding Indictment to which Plaintiffs cite relate to other tournaments (the Copa América and Copa América Centenario) that are not the subject of Plaintiffs' claims or the Amended Complaint, which are exclusively about the Club Tournaments. *See* Am. Compl. Ex. A ¶¶ 341-61.[13]   The same is true about the DPA on which Plaintiffs also rely. *See* Am. Compl. Ex. B ¶¶ 20, 26, 39-42.   Accordingly, to the extent Plaintiffs rely on the Superseding Indictment or the DPA to support their allegations against Full Play here, that reliance is misplaced and cannot be the basis of jurisdiction.

Any attempt to impute the non-party owners' alleged conduct to Full Play would be legally insufficient absent factual allegations to support an agency relationship, lack of corporate formalities, or high and significant control. ***None* of these** exist here, nor do Plaintiffs even attempt to allege that they do. Plaintiffs' only attempt to do more to link Full Play and the non-party owners is the catch-all allegation of paragraph 182(g). This falls significantly short of the burden Plaintiffs carry.

Nor do Plaintiffs allege alter ego status as an alternative basis for personal jurisdiction. Under Florida's alter ego theory, a plaintiff can establish jurisdiction over a foreign defendant as a result of a related person or entity's in-state activities if the related person or entity "was used for an improper purpose" and "was an alter ego or mere instrumentality" of the defendant. *See Verizon Trademark Svcs., LLC v. Producers, Inc.*, No. 8:10-cv-665-T-33EAJ, 2011 WL 3629002, *8-9 (M.D. Fla. Aug. 18, 2011) (granting motion to dismiss due to lack of personal

---

[13]  Full Play has not been indicted in the Superseding Indictment.

jurisdiction where these factors were not satisfied)(citations omitted). In *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130 (S.D. Fla. 2007), this Court granted a motion to dismiss for lack of personal jurisdiction where the allegations of the complaint did not warrant imputation of corporations' forum contacts to nonresident defendants because the facts as alleged did not support the piercing of the corporate veil or the conclusion that the defendants failed to observe the corporate form. *Id.* at 1141; *see also WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 582-83 (Fla. 3d DCA 2010) (describing alter ego theory of personal jurisdiction, finding that plaintiff did not satisfy requirements, and ordering dismissal of complaint); *Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So. 2d 1149, 1156-57 (Fla. 5th DCA 1994) (finding that, absent showing of *Dania Jai-Alai* requirements, personal jurisdiction did not exist over non-resident corporation based on alter ego theory simply because Florida resident was corporate officer and owner). Plaintiffs' conclusory allegation that Full Play is "vicariously liable" for the non-party owners' acts does not come close to satisfying the pleading requirements for alter ego personal jurisdiction. *See* Am. Compl. ¶ 182(g). Absent further allegations, which Plaintiffs cannot make in good faith, they cannot establish personal jurisdiction based on an alter ego theory.

Because the Court cannot impute the alleged in-state activities of its non-party owners to Full Play, the Court must respect corporate formalities and should not consider the non-party owners' alleged attendance at a meeting in Florida in determining whether Full Play is amenable to jurisdiction under § 48.193(1)(a)(2). Without that, the Amended Complaint is devoid of *any* allegation that links Full Play to this state, and Plaintiffs cannot satisfy Florida's long-arm statute. The Court should grant Full Play's motion to dismiss.

       2.  **Plaintiffs Cannot Satisfy the Long-Arm Statute Because Injury Has Not Been Suffered in Florida**

A non-resident defendant can be found to satisfy section 48.193(1)(a) of the Florida

Statutes even if it does not actually commit an act in this state if its out-of-state conduct causes injury within Florida. *See Hard Candy*, 106 F. Supp. 2d at 1239 (citations omitted). If the harm that a plaintiff has alleged occurs outside of Florida, then section 48.193(1)(a) is not met. *See Estate of Scutieri v. Chambers*, 386 Fed. Appx. 951, 956 (11th Cir. 2010) (holding that long-arm statute was not satisfied where Florida plaintiff did not suffer injury); *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1380 (S.D. Fla. 2012) (holding that long-arm statute was not satisfied where plaintiff did not allege any details as to how defendant could have caused him harm in Florida); *Barrocos of Fla., Inc. v. Elmassian*, No. 11-CV-22393, 2012 WL 1622988, at *4 (S.D. Fla. 2012) (same where in-state injury was too attenuated because it rested on theory that infringing product was sold in California which was then sold to consumers in Florida trade show); *Washington v. Fla. Dept. of Children & Families*, 595 F. Supp. 2d 1291, 1294 (S.D. Fla. 2009) (same where all harm occurred in Ohio); *April Indus., Inc. v. Levy*, 411 So. 2d 303, 305-06 (Fla. 3d DCA 1982) (same where the civil wrong of the conspiracy occurred in New York, where fraudulent satisfaction of judgment was perpetrated). Here, Plaintiffs have failed to satisfy this condition because the injury they claim – the failure to acquire the television rights for the Club Tournaments – did not occur in Florida.

Based on the allegations of the Amended Complaint, only Global Sports, which is an English and Uruguayan entity, could have been harmed as a result of the alleged bribes.[14] *See* Am. Compl. ¶ 16.  It was the entity that allegedly was deprived of the television and marketing rights and that, as a result, suffered injury because of Defendants' alleged conduct. GolTV, the Plaintiff that is from Florida, could not have been deprived of the rights that are the subject of the Amended Complaint because it did not and could not acquire those rights. Rather, its role was

---

[14]    Full Play incorporates Section IV, A, of CONMEBOL's argument set forth above.

only to serve as the marketer and producer of the television channel that provided television programming for the matches that Global Sports acquired. *See id.* at ¶¶ 14, 16. Injury to Global Sports as GolTV's agent and affiliate alone does not create an injury to GolTV simply because the entities are related. Plaintiffs are distinct corporate entities. Because Plaintiffs cannot show that Full Play (or, indeed, any of the Defendants) caused an injury in Florida, they cannot satisfy section 48.193(1)(a) of the Florida Statutes.[15]

### 3. **Plaintiffs Cannot Satisfy Florida's Constitutional Standards for Personal Jurisdiction**

Given Plaintiffs' failure to satisfy the long-arm statute, the Court need not reach the second step of the personal jurisdiction inquiry – determining whether the exercise of jurisdiction

---

[15]   In their antitrust claims, Plaintiffs allege that Global Sports is a foreign partnership that would have been the direct purchaser, but for the anticompetitive conduct. GolTV is a domestic company that would have been an indirect purchaser. As a would-be indirect purchaser, GolTV cannot pursue damages under the Sherman Act. *See Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1286 (11th Cir. 2014) (citing *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 729 (1977)). *Illinois Brick* applies in both monopoly and monopsony cases brought under § 2 of the Sherman Act, *see In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1159 (5th Cir. 1979), and where the alleged anticompetitive conduct works to prevent a sale from occurring. *See In re. Tableware Antitrust Litig.*, 484 F. Supp. 2d 1059, 1067-68 (N.D. Cal. 2007) (holding that *Illinois Brick* precludes those transactions that would have been made by indirect purchasers). Accordingly, only Global Sports can bring an antitrust claim because only it would have been a direct purchaser. But, because it is not a Florida company, it did not incur injury in Florida.

In addition, because Global Sports is a foreign company, it cannot sue under the United States antitrust laws. According to the Amended Complaint, it would have bought a product from another foreign company in a transaction consummated outside the United States. Such a transaction fails as a matter of law to satisfy the "direct" effect requirement of the Foreign Trade Antitrust Improvements Act ("FTAIA"). This argument also applies to GolTV. FTAIA limits the application of the Sherman Act to foreign commerce. To survive the FTAIA bar, 15 U.S.C. § 6(a)(1), a plaintiff must establish that the alleged conduct "has a direct, substantial, and reasonably foreseeable effect" on United States trade or commerce. The Amended Complaint is premised on the allegation that Global Sports (a British company) would have won the contract from *CONMEBOL*, a Paraguayan federation. As a matter of law, however, the FTAIA does not apply to foreign transactions between foreign companies, even if the affected product will then be imported into the United States and sold through a domestic corporation. *See Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 817-18 (7th Cir. 2014). The antitrust claims alleged here simply do not support personal jurisdiction over Full Play in Florida.

comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. Nevertheless, Plaintiffs cannot satisfy this step either. In specific jurisdiction cases, when examining Fourteenth Amendment Due Process concerns, the court applies a three-part due process test, which examines: (1) "whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum's state's laws, and (3) whether the exercise of personal jurisdiction comports with 'traditional notion of fair play and substantial justice.'" *Blueskygreenland Envtl Solns., Inc. v. 21st Century Planet Fund, LLC*, No. 12-81234-CIV, 2014 WL 1341277 *5 (S.D. Fla. Apr. 4, 2014) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013)); *see also Volkswagen Aktiengesellschaft v. Jones*, No. 2D15-5716, 2017 WL 2180984, *3 (Fla. 2d DCA May 17, 2017) (employing similar test) (citation omitted). Plaintiffs cannot satisfy any of these requirements.

### a.  Plaintiffs' Claims Do Not Arise Out of Any Contact Between Full Play and Florida

First, because Plaintiffs have not alleged that Full Play itself had any contacts with Florida, Plaintiffs' claims cannot "arise out of or relate to" contacts that do not exist. To the extent that Plaintiffs seek to impute the non-party owners' alleged Florida meeting to Full Play, that single contact cannot be attributed to Full Play for the reasons set forth in section V, A, 1, above. Florida courts have applied that same analysis to the Due Process prong of the personal jurisdiction inquiry. *See Volkswagen*, 2017 WL 2180984, at *7 (holding that plaintiff could not satisfy agency theory of jurisdiction for constitutional prong of long-arm jurisdiction where "high and very significant" degree of control was not established); *Am. Exp. Ins. Svcs. Europe, Ltd. v. Duvall*, 972 So. 2d 1035, 1039 (Fla. 3d DCA 2008) (same for alter ego theory of personal

51

jurisdiction where plaintiff did not allege that parent company, over which Florida had jurisdiction, formed subsidiary for illegal, fraudulent, or unjust purpose); *Banco Cont., S.A. v. Transcom Bank (Barbados), Ltd.*, 922 So. 2d 395, 400 (Fla. 3d DCA 2006) (holding that, while plaintiff established a link between foreign defendant and correspondent bank in Florida, it fell short of an agency relationship and could not satisfy constitutional standards for personal jurisdiction); *Enic, PLC v. F.F. South & Co.*, 870 So. 2d 888, 892 (Fla. 5th DCA 2004) (holding that plaintiff failed to satisfy Due Process prong under agency theory where plaintiff did not establish that parent exercised sufficient control over subsidiary).[16]

Even if the non-party owners' single alleged meeting in Florida could be attributed to Full Play, that single contact does not satisfy the first element of the Due Process analysis. Under the "arise out of or relate to" requirement, the contact with the forum must be a "but for" cause of the tort, and the claim must be a "foreseeable consequence" of the contact. *See Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010); *Waite v. AII Acquis. Corp.*, No. 15-cv-62359-BLOOM, 2016 WL 2346743, *3 (S.D. Fla. May 4, 2016) (quoting *Walden*, 134 S. Ct. at 1125); *Roof & Rack Prods., Inc. v. GYB Invrs., LLC*, No. 13-80575-CV, 2014 WL 3116413, *3 (S.D. Fla. July 8, 2014). Stated differently, "the activities in Florida [must be] essential to the success of the tort." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 787 (11th Cir.

---

[16]   Furthermore, as nothing has been pled that could show an agency relationship, the non-party owners' conduct is irrelevant to whether Full Play had sufficient contacts with Florida because "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1126 (2014); *see also Volkswagen*, 2017 WL 2180984, at *6 (the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to satisfy an assertion of jurisdiction") (citations omitted). It is the defendant's "suit-related conduct" that must create a substantial connection with the forum. *Id.* (citations omitted) (emphasis added); *see also Erie Exch. v. Larose*, 202 So. 3d 148, 154 (Fla. 2d DCA 2016) ("[A] defendant must be haled into court 'based on his own affiliation with the State' rather than by contacts he or she may make 'by interacting with other persons affiliated with the State.'") (quoting *Walden*, 134 S. Ct. at 1123).

2014) (citations omitted). Here, the non-party owners' only alleged contact with Florida is a single meeting during which they purportedly discussed the bribery scheme. *See* Am. Compl. ¶44 (citing AC, Ex. A at ¶ 360). That meeting was not the "but for" cause of Plaintiffs' claims, nor was it essential to the success of the torts because those torts, as alleged, relate to the Club Tournaments, but the meeting (and the Superseding Indictment and DPA on which Plaintiffs rely) relate to the Copa América tournaments, which are not the subject of this case. *See* Am. Compl. Ex. A ¶¶ 341-61, Ex. B ¶¶ 20, 26, 39-42. Furthermore, Plaintiffs' vague allegation about the meeting establishes no link between that alleged discussion, Florida, and the harm that Plaintiffs claim. Full Play is not alleged to have participated directly in that meeting, and, based on the allegations, Plaintiffs' injuries would have occurred whether or not the non-party owners attended that meeting. *See Waite*, 2016 WL 62346743, *4 (holding that but-for cause was not established for jurisdiction where plaintiff's injury would have occurred without defendant's contacts to Florida); *Roof & Rack*, 2014 WL 3116413, at *3 (holding that, while plaintiff suffered injury in Florida and defendant had Florida contacts, those contacts were not the but-for cause of plaintiff's claims, nor did plaintiff's claims require proof of defendant's contacts with Florida); *see also Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1249-50 (S.D. Fla. 2013) (stating that, even if mayor and state attorney had a meeting and discussed the continuing prosecution, which was the subject of plaintiff's claims, this did not state conspiracy claim against mayor without allegation that they agreed to conspire or that mayor did anything to continue prosecution). Accordingly, Plaintiffs cannot satisfy the first step of the due process inquiry.

      **b.** **Full Play Has Not "Purposefully Availed" Itself of the Privilege of Conducting Business in Florida**

The second step, purposeful availment, "ensures that a defendant will not be haled into a

jurisdiction solely as a result of 'random, fortuitous, or attenuated contacts.'" *Gen. Cigar Hldgs., Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1347 (S.D. Fla. 2002) (finding that, where defendant sent one executive to three meetings in Florida, this was not sufficient to satisfy purposeful availment prong for antitrust claim alleging harm to the United States market). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Banco Cont., S.A.*, 922 So. 2d at 399 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Plaintiffs cannot satisfy this step either.

Given the lack of *any* alleged contacts between Full Play and Florida, Full Play could not have reasonably anticipated being haled into court in this state. Even if the non-party owners' meeting were attributed to Full Play, this is still a significantly less meaningful contact than those that have been found to be insufficient to satisfy this prong of the due process analysis. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984) (holding that, where defendant sent C.E.O. to Texas to negotiate a contract, accepted checks drawn on Texas bank, made purchases in Texas, and sent employees to Texas for training, these facts were still insufficient to satisfy the Due Process Clause); *Barbachano v. St. Chartered Bank Int'l (Americas) Ltd.* No. 10-22961, 2014 WL 29595 *5 (S.D. Fla. Jan. 3, 2014) (holding that personal jurisdiction did not exist over Swiss bank, where assets at issue were not maintained in Florida, alleged unauthorized transactions did not occur in Florida, and bank did not purposefully avail itself of privilege of conducting business in Florida); *Camp Illahee Invrs., Inc. v. Blackman*, 870 So. 2d 80, 85 (Fla. 2d DCA 2003) (holding that limited contact between defendant and Florida as a result of yearly reunion and video shows is insufficient to establish that it could reasonably anticipate being haled into court in Florida for tortious conduct that occurred in other state).

Indeed, none of the parties in this case, Florida-based or otherwise, is alleged to have engaged in any business or had any contact with Full Play in Florida.[17] Because Full Play has not purposefully availed itself of the privilege of conducting business in Florida, it could not have anticipated being sued here.

Additionally, in determining whether a defendant has "purposefully availed" itself of the privilege of doing business in the forum, some courts apply the *Calder* "effects test" in intentional tort cases. That test looks at whether the defendant's tortious act was intentional, was aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state, *Blueskygreenland*, 2014 WL 1341277, at *5 (quoting *Louis Vuitton Malletier*), and "requires a determination of whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state, requiring a focus on the nexus between the forum and the injured contractual relationship." *Id.* (citing *Brennan v. Roman Cath. Diocese of Syracuse New York*, 322 Fed. Appx. 852 (11th Cir. 2009)). Full Play has no alleged contacts with Florida whatsoever, so it cannot satisfy the "effects test." *See Don King Prods., Inc. v. Mosley*, No. 15-61717-CV-WILLIAMS, 2016 WL 3950930, *5 (S.D. Fla. Jan. 27, 2016) (holding that defendant did not have sufficient connection with Florida under "effects test" where it had no contact with state). Imputing the Non-party owners' conduct to Full Play (which would be contrary to Florida law) does not change this result. Plaintiffs' allegation is only that the non-party owners allegedly "discussed" the bribery scheme in Florida. There is no allegation that any actions were taken pursuant to that discussion in Florida or elsewhere, nor is there any indication that the location of that discussion in Florida was anything more than fortuitous or convenient. Indeed, the Superseding Indictment and DPA on which Plaintiffs rely allege that that meeting was about

---

[17]   Plaintiffs' allegations regarding Full Play's purported participation in the conspiracy are addressed below.

tournaments that are not even the subject of Plaintiffs' claims. *See* Am. Compl. Ex. A, ¶¶ 341-61, Ex. B, ¶¶ 20, 26, 39-42.

Furthermore, as set forth in section V, B, above, if any harm occurred to Plaintiffs, it was not suffered in Florida. Absent a showing that Full Play's allegedly tortious acts caused harm in this state, Plaintiffs cannot demonstrate that this Court's exercise of jurisdiction over Full Play is fundamentally fair. *See Blueskygreenland*, 2014 WL 1341277, at *6 (holding that plaintiff could not satisfy "effects test" where alleged tortious interference committed outside Florida did not have effects in Florida). Accordingly, Plaintiffs cannot satisfy the second prong of the due process analysis either.

### c. Exercising Jurisdiction Over Full Play Would Offend Traditional Notions of Fair Play and Substantial Justice

Under the third and final step of the due process test, a court examines whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Relevant factors under this inquiry include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *DiMaggio, LLC v. City & County of San Francisco*, 187 F. Supp. 2d 1359, 1371 (S.D. Fla. 2000) (citations omitted) All of these factors support dismissal.

Litigating this case in Florida creates a significant burden for Full Play, which has no alleged relationship with this state. Because Full Play is an Uruguayan company that has no offices or agents in Florida, its witnesses and documents are not located here. The burden of litigating this case in Florida would be significant to Full Play. *See DiMaggio, LLC*, 187 F. Supp. 2d at 1371 (citations omitted) (holding that considerations of fair play and substantial justice

weighed in favor of dismissal, even though plaintiff was located in Florida, where burden on defendant to travel 3,000 miles to litigate case was severe and court was less equipped to handle case than forum of defendant municipality).[18]

### 4. The Conspiracy Allegations Do Not Confer Personal Jurisdiction in Florida

As part of their attempt to satisfy section 48.193(1)(a)(2) of the Florida Statutes, Plaintiffs rely upon their allegations of conspiracy, which they claim support personal jurisdiction "even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact, with Florida." Am. Compl..at ¶ 46. This fails as a matter of pleading. The allegations regarding Full Play's alleged participation in the conspiracy are vague and conclusory, and insufficient contacts between Full Play and Florida to satisfy Due Process concerns are alleged.

A court will decline to find personal jurisdiction over a nonresident if the plaintiff fails to sufficiently plead facts supporting the existence of the conspiracy or provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (finding vague and conclusory allegations insufficient to establish *prima facie* case of personal jurisdiction over defendant for conspiracy); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1282-83 (11th Cir. 2009) (holding that, where there was no allegation directly connecting defendant to agreement to steal blueprints and allegations were otherwise too ambiguous to link defendant to conspiracy, personal

---

[18] Not all Florida decisions employ this three-part test. In order to determine whether the constitutional prong has been satisfied, some cases simply ask whether the "nonresident defendant should reasonably have anticipated being haled into court in Florida." *Rollet v. Bizemont*, 159 So. 3d 351, 356 (Fla. 3d DCA 2015); *see also Am. Exp. Ins. Svcs. Europe, Ltd.*, 972 So. 2d at 1038. As set forth above, Full Play could not have reasonably anticipated being haled into Court in Florida. Indeed, the Amended Complaint contains no allegations to satisfy this prong. *See Rollet*, 159 So. 3d at 356 (holding that specific personal jurisdiction did not exist where complaint contained no allegations to satisfy the minimum contacts prong).

jurisdiction did not exist); *Phelan v. Lawhon*, 3D16-1675, 2017 WL 1177595, at *4–5 (Fla. 3d DCA Mar. 29, 2017) (holding that there was no personal jurisdiction over two non-resident defendants where plaintiff did not specifically allege they were in active concert with other defendants in Florida conspiracy); *see also Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, *7 n. 7 (S.D. Fla. June 6, 2006) (stating that, where plaintiff failed to demonstrate each defendant's role in conspiracy, but merely alleged they were part of RICO enterprise, this did not provide a basis by which the court could ascertain whether defendant had actual role in bringing about tortious conduct in Florida).

Plaintiffs have not met these requirements because, while Plaintiffs generally state that Full Play knew about the bribes and that T&T paid bribes to CONMEBOL officials through Full Play, *see, e.g.,* Am. Compl. at ¶¶ 77, 101, knowledge is not enough.  In *Russo v. Fink*, 87 So. 3d 815 (Fla. 4th DCA 2012), the plaintiff alleged the defendant's knowledge of a co-defendant's theft and that the defendants "conspired in concert with full knowledge of each other's action[s]," but the court held that a conspiracy had not been properly pled because the plaintiff "did not allege an agreement . . . which is the gist of a conspiracy.  *Id.* at 819.  The court stated, "Because [the complaint] never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count."  *Id.*  Plaintiffs likewise do not allege that Full Play actually entered into an agreement to conspire or even what exactly Full Play did to further that conspiracy.  Absent these allegations, Plaintiffs cannot establish that Full Play participated in the conspiracy and, accordingly, that personal jurisdiction exists over Full Play.

Factual allegations supporting the claims against Full Play are vague and conclusory.  *See* Am. Compl. at ¶ 182(g).  The only specific allegations are about the non-party owners, Yorkfields, and Cross Trading. *See, e.g.,* Am. Compl. at ¶¶44, 101-05. Plaintiffs conclusorily

allege that those two separate entities are related to Full Play. As explained throughout, that conduct cannot be attributed to Full Play. *See Snow*, 450 F.3d at 1318 (finding plaintiff presented no factual allegations demonstrating an agency relationship as would be required to subject defendant to jurisdiction in Florida for co-conspirator's actions). Because the allegations that concern Full Play directly are vague and conclusory, they are insufficient to demonstrate Full Play's participation in the alleged conspiracy and are insufficient to establish personal jurisdiction.[19]

Furthermore, even if Plaintiffs' conspiracy allegations satisfied Florida's long-arm statute, they do not meet the Fourteenth Amendment's Due Process requirements, which *also* must be satisfied for personal jurisdiction to exist. *See Rollet v. de Bizemont*, 159 So. 3d 351, 355-56 (Fla. 3d DCA 2015) (citations omitted). For the reasons set forth in sections V, C, above, Plaintiffs cannot establish sufficient minimum contacts with Florida. That Plaintiffs have asserted conspiracy claims does not change that analysis. *See, e.g., Blueskygreenland Envtl. Solns., LLC v. 21st Cent. Planet Fund, LLC*, No. 12-81234-CIV-HURLEY, 2014 WL 12515260, *5-6 (S.D. Fla. Apr. 4, 2014) (holding that, while long-arm statute was satisfied, constitutional requirements were not met for tortious interference and conspiracy claims because, in part, effects test was not satisfied); *Washington v. Fla. Dept. of Children & Families*, 595 F. Supp. 2d 1291, 1302 (M.D. Fla. 2009) (holding that, even if vague allegations of conspiracy satisfied long-arm statute, they did not establish sufficient minimum contacts); *see also In re. W. States*

---

[19]   A court will also decline to apply the co-conspirator theory to extend jurisdiction over non-residents if there is no injury in Florida. *See Washington,* 595 F.Supp.2d at 1294 (all harms alleged by the conspiracy occurred, if at all, on Ohio soil); *accord Arch Aluminum & Glass Co, Inc. v. Haney*, 964 So. 2d 228, 234-35 (Fla. 4th DCA 2007) (finding no personal jurisdiction where neither the conspiracy nor underlying tort occurred in Florida). As set forth in section V, B, above, Plaintiffs cannot show that an injury occurred in Florida.

*Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1140-41 (D. Nev. 2009) (stating that defendant, not co-conspirators, must choose to direct activities at the forum in causing the effect in forum, and holding that co-conspirator's specific acts directed at forum are insufficient to establish minimum contacts by a defendant who otherwise has no contacts with forum).  Because there is no constitutional basis for this Court to exercise its jurisdiction over Full Play, the Court must grant Full Play's motion to dismiss.

### B.  Personal Jurisdiction Over Full Play Does Not Lie in the United States.

Plaintiffs' alternative basis for personal jurisdiction over Full Play under Federal Rule of Civil Procedure 4(k)(2) fares no better. *See* Am. Compl. ¶ 50. This rule permits the exercise of jurisdiction based on the aggregation of a defendant's nationwide contacts only if: (1) the defendant is not subject to jurisdiction in any state's courts; (2) the plaintiff's claims arise under federal law; and (3) the exercise of jurisdiction is consistent with the Constitution and the laws of the United States. *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009). The exercise of jurisdiction will be consistent with the Constitution and the laws of the United States when it comports with Due Process, which, in turn, requires that the nonresident have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield*, 558 F.3d at 1220 (citations omitted). This Court has observed that "it is a rare occurrence when a court invokes jurisdiction under [Rule 4(k)(2)]" and has recognized that other circuits rarely conclude that jurisdiction exists under this rule and, when it does, it arises from "extensive contacts [with] this country." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016) (citations omitted). Because Full Play is not subject to personal jurisdiction in Florida or in any other state, and Plaintiffs have asserted claims against Full Play under federal law, the remaining inquiry under Rule 4(k)(2) is whether the exercise of this Court's jurisdiction would be consistent with

the Constitution and the laws of the United States. We have shown above that it is not.

Full Play has no alleged contacts with the United States that support the exercise of jurisdiction pursuant to Rule 4(k)(2). *See Bluewater Trading, LLC v. Fountaine Pajot, S.A.*, No. 07-61284-CIV, 2008 WL 2705432, *6 (S.D. Fla. July 9, 2008) (finding that Rule 4(k)(2) was not satisfied where defendant did not have any actual contacts with the United States out of which claim arose and therefore did not purposefully avail itself of the United States). Its only alleged contacts with the United States are indirect: the non-party owners' meeting in Florida and Yorkfields' alleged funneling of bribery funds through its New York bank account. *See* AC ¶¶ 44, 102, 103. Neither of these contacts, when considered alone or together, can be imputed to Full Play. Like the non-party owners' alleged meeting in Florida when examined under Florida law, Yorkfields' alleged affiliation with Full Play is insufficient to confer personal jurisdiction. When analyzing this very same issue under Rule 4(k)(2), the Eleventh Circuit has stated: "[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943-45 (11th Cir. 2000) (affirming dismissal of defendant under Rule 4(k)(2) where its only contact with United States was its affiliation with company over which jurisdiction existed); *see also Consol. Devp. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1294 (11th Cir. 2000) (holding that subsidiary's activities could not be imputed to parent under Rule 4(k)(2) absent showing that corporate existence was merely a formality and that subsidiary was mere agent). Indeed, Full Play's alleged relationship with Yorkfields is even more attenuated than the relationship alleged between of the non-party owners and Full Play. Plaintiffs allege:

> Upon information and belief, Yorkfields and Cross Trading served as intermediaries to funnel bribes from T&T to the Conmebol officials. Yorkfields and Cross Trading are companies controlled by Full Play's principals . . . . The Superseding Indictment charges that [the Individuals] facilitated T&T's bribe payments in exchange for continued support of T&T's retention of the Club Tournament television rights. Superseding Indictment ¶¶ 55, 184.

Am. Compl. ¶ 105. Noticeably absent from this allegation is any assertion that Full Play itself had a role in facilitating bribes other than the non-consequential allegation that it has common ownership with Yorkfields. Nor do Plaintiffs allege that corporate formalities were not respected in either Full Play or Yorkfields, or that these entities are effectively one and the same. As a matter of pleading, what Plaintiffs allege is legally insufficient to attribute Yorkfields' purported conduct to Full Play. Plaintiffs' allegations regarding Yorkfields do not confer personal jurisdiction over Full Play pursuant to Rule 4(k)(2).

## VI.   CONCLUSION

Plaintiffs have failed to carry their burden of establishing personal jurisdiction over CONMEBOL and Full Play. The Court should dismiss the Amended Complaint for lack of personal jurisdiction as to those defendants.

# <u>PART TWO</u>

## Motion to Dismiss for Forum *Non Conveniens*
### (by Defendant Alejandro Burzaco)

Defendant Alejandro Burzaco ("Mr. Burzaco"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(a)(1), respectfully moves this Court to dismiss the complaint filed by Plaintiffs GolTV, Inc. and Global Sports Partners LLPS ("Plaintiffs") on *forum non conveniens* grounds, or in the alternative, to transfer venue under 28 U.S.C. 1404.

## INTRODUCTION

Whatever the merits of Plaintiffs' Complaint, it doesn't belong here. As Plaintiffs freely admit, their allegations are the subject of one of the most far-reaching, cross-border prosecutions undertaken by the U.S. Department of Justice in the last decade, and the evidence, people, and locus of judicial decision-making relevant to that prosecution have, for more than two years, been in the U.S. District Court for the Eastern District of New York ("EDNY").

Defendant Alejandro Burzaco is an Argentine and Italian citizen who was indicted and pled guilty in that case. He awaits sentencing under court order restricting his travel to the EDNY and surrounding areas for the foreseeable future. *See U.S. v. Hawit, et al.*, 15-CR-11-252 (S-1) (PKC) ("the EDNY Action"). As the Court is aware, trial of the EDNY Action is scheduled to commence on November 6, 2017[20].

Most of the conduct described by the Plaintiffs in their Amended Complaint occurred and is being prosecuted outside of this jurisdiction. At considerable cost to U.S. taxpayers, the defendants, potential witnesses, and documents relevant to the facts at issue both in the EDNY Action and Plaintiff's allegations have been gathered outside of this jurisdiction, in the EDNY. Indeed, for years before the indictment in the EDNY was unsealed on May 26, 2015, prosecutors

---

[20] *See*, e.g., *EDNY Action,* DE 593 at 20, (order denying several defendants' Motion for Severance and confirming trial in this matter is set to start on November 6, 2017).

in the EDNY had gathered the facts relevant to Plaintiffs' allegations all over the world.[21]   In the press conference announcing the indictment, Attorney General Loretta E. Lynch described the investigation as a "testament to the tireless efforts of federal prosecutors…in the Eastern District of New York, as well as the New York Field Office of the FBI…."[22]   The government has gone to great lengths to prosecute its case.  It has extradited or is in the process of extraditing, to date, over 20 individuals from countries in Europe, Latin America, and the Caribbean, all to face charges in the EDNY.

Mr. Burzaco is one of those people.  As a condition of his initial bond and release order dated July 31, 2015, Mr. Burzaco was ordered to remain within the Eastern and Southern Districts of New York, surrender his passports to the FBI, subject himself to electronic GPS monitoring and home detention, and be subject to 24-hour private security service monitoring at his own expense.  See *EDNY Action DE 57*.  A subsequent order amended these restrictions slightly, allowing Mr. Burzaco to travel to New Jersey and Connecticut and removing his 24-hour security service.  *See EDNY Action, DE 540*.  He has not set foot in the Southern District of Florida since April of 2015, when he visited for only one day[23].

For these reasons, the EDNY is an adequate and available alternative forum.  This case should be dismissed and refiled there.

---

[21]*See*   https://www.justice.gov/opa/pr/nine-fifa-officials-and-five-corporate-executives-indicted-racketeering-conspiracy-and  (Department of Justice Office of Public Affairs Press Release, May 27, 2015).  Last accessed July 9, 2017.

[22]*See*   https://www.justice.gov/opa/speech/attorney-general-loretta-e-lynch-delivers-remarks-press-conference-announcing-charges (remarks delivered by Attorney General Lynch on May 27, 2015).  Last accessed July 9, 2017.

[23] Indeed, Mr. Burzaco's security is another concern that cautions against travel to this district unless it is absolutely necessary. His address is not a matter of public record.

## MEMORANDUM OF LAW

**I.     The Doctrine of *Forum Non Conveniens* Warrants Dismissal of this Case in This Court.**

This case presents all the requirements for dismissal under the doctrine of *forum non conveniens*. "When moving to dismiss on the grounds of *forum non conveniens*, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Dane Constr. & Co., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 207 F. Supp. 3d 1357 (S.D. Fla. 2016) (citing *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001)); *see also McLane v. Marriot Intern'l., Inc.*, 547 Fed. Appx. 950, 953 (S.D. Fla. 2013) (citing to *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005) ("To meet this burden, the defendant 'must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."). All these factors weigh strongly in support of dismissing this action.

### A.     The EDNY Is An Adequate and Available Alternative Forum.

The EDNY provides a more than adequate alternative forum for this matter, which satisfies the preliminary inquiry this Court must make when assessing a *forum non conveniens* motion.  A court "must be able to assert jurisdiction over the litigation sought to be transferred" in order to be transferred. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F. 3d 1283, 1290 (11th Cir. 2009) (referencing *Million Air*, 251 F. 3d at 1311) (internal quotations removed). There's no disputing that, here, as the Plaintiffs stated in their Amended Complaint, all of their claims are either federal law claims or  "arise out of the same case or controversy and common

nucleus of operative facts as the federal law claims," providing for supplemental jurisdiction under 28 U.S.C. § 1367. *See Compl.* 35-37. Under those same federal statutes, Plaintiffs could also easily bring their claims before the EDNY, which is capable of hearing them. Moreover, Plaintiffs have raised various violations of New York's Penal Code. *See, e.g.,* Compl. at, e.g., 205, 218, 221, 225, 227, 233, 237-247, 252, and 272. The EDNY Action has been pending in the EDNY since May 20, 2015, and assigned to Judge Chen since August 25, 2016. There has, in sum, been a significant investment of judicial resources in the EDNY Action, from which Plaintiffs' claims flow.

B.   The Private Interests of the Parties Weigh in Favor of Applying the Doctrine.

The private interests of the parties weigh heavily in favor of dismissal on *forum non conveniens* grounds, as conducting this case in the Southern District of Florida adds tremendously to the expense and logistical issues to be borne by them, especially those who— like Mr. Burzaco—cannot freely travel to this District.

The applicable private interest factors were outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947): "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses. . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 805, 67 S.Ct. 839. "No single factor is dispositive, and courts have differed in the weight afforded to each individual factor." *Dane Constr. & Co., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2016 WL 574280, Case No. 16-61096-Civ-DIMITROULEAS (S.D. Fla. Sept. 19, 2016) (citing *Wi–LAN USA, Inc. v. Apple Inc.*, 2013 WL 1343535, at *2 (S.D. Fla. Apr. 2, 2013)).

Many of the relevant sources of proof in this matter are more easily accessed in the EDNY.  As Plaintiffs have already demonstrated in their efforts to obtain jurisdictional discovery, many significant witnesses are physically located in the New York area.  While those individuals certainly can be made to testify in this matter while it is pending before this Court, certainly obtaining evidence from them involves costs and logistical complications that would be avoided if this matter were brought in the EDNY.  *See McLane v. Marriott Int'l, Inc.*, 960 F. Supp. 2d 1351, 1360 (S.D. Fla.), aff'd, 547 F. App'x 950 (11th Cir. 2013) (stating that access to evidence was "perhaps the most important private interest") (citation omitted); *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1375 (S.D. Fla. 2013) ("Perhaps the most important 'private interest' of the litigants is access to evidence.") (citing *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003)).

Relatedly, several parties to this action cannot as a practical matter attend most proceedings in this case as long as it is pending in this District, rather than in the EDNY.  Mr. Burzaco and several other potential witnesses are restricted from travel outside the EDNY and surrounding areas, requiring express court authorization to travel to this District should they ever choose (or be compelled) to attend proceedings here in person.  Each request for such authorization would require expending legal and judicial resources that would be unnecessary if this matter were pending in the EDNY.

Courts regularly give weight to these factors in considering motions to dismiss on *forum non conveniens* grounds. *See Aldana*, 578 F. 3d at 1294 (finding the district court was correct in dismissing on *forum non conveniens* grounds where, as here, access to proof, availability of witnesses, and other practical issues were more conveniently handled in the movant's forum and, thus, outweighed the plaintiff's choice of forum); *Satz v. McDonnell Douglas Corp.*, 244 F. 3d

1279, 1284 (11th Cir. 2001) (holding the district court did not abuse its discretion where it found that private interest factors relating to access to witnesses and evidence weighed in favor of dismissal); *McLane v. Marriott Int'l, Inc.*, 960 F. Supp. at 1360 (stating that the "private factors are generally considered more important than the public factors").

C.    The Public Interest Factors Weigh in Favor of Dismissal.

The public interest would also be served by a dismissal of this case in this forum, as there is comparatively little nexus between Plaintiffs' allegations and the Southern District of Florida as opposed to the EDNY.  "Public interest factors include each forum's interest in hearing the case, the administrative burdens place on the Court in hearing the case, and the need to apply foreign law." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009).  "The public interests to be considered include court congestion, the local interest in the controversy, avoidance of unnecessary problems in the application of foreign law, and avoidance of imposing jury duty on residents of a jurisdiction having little relationship to the controversy." *Licea v. Curacao Drydock Co., Inc.*, 537 F. Supp. 2d 1270, 1276 (S.D. FL 2008) (referencing *Gulf Oil Corp. v. Gilbert*).

These factors weigh in favor of dismissal in this forum.  Conducting the EDNY Action and this case in dueling forums has already resulted in significant, unnecessary administrative complications.  The EDNY Action has been active for over two years, and there are over 600 docket entries currently on the docket. (A copy of the docket pulled on July 12, 2017 is attached here as Exhibit 6).  The EDNY has ruled on Motions to Sever, Motions to Dismiss, and handled multiple discovery issues.  By contrast, this action is still at a very preliminary stage, with only jurisdictional discovery at its inception.  Allowing these overlapping matters to proceed in separate forums lends itself to scheduling conflicts and substantial duplication of efforts, which

would waste the public resources of the courts.

Simply put, the Southern District of Florida has no greater interest in this controversy than the EDNY. As the Plaintiffs' own Complaint confirms, the licensing rights at issue in this case were being negotiated by Global Sports, Inc., an English corporation, for the rights to televise soccer games involving foreign teams and their governing bodies, which were located in South America. *See* Compl. at 111. Moreover, the air rights at issue were for transmission across the entire United States, and not solely for Florida. Coupled with the administrative burdens that would come with handling this case here, the more acceptable forum for this litigation is the EDNY.

D.    Plaintiffs Will Not Be Unduly Prejudiced or Inconvenienced by Trying Their Case in the EDNY.

Plaintiffs should be able to dismiss their case and file it in the EDNY with little inconvenience or prejudice. As this Court has said before, "the burden to satisfy this requirement is not onerous." *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Global Logistics Inc.*, 159 F. Supp. 3d 1316, 1332 (S.D. Fla. 2016). It is generally satisfied if the party seeking removal agrees to submit to the jurisdiction of the alternate forum. *Id*. Mr. Burzaco has already stipulated to the jurisdiction of EDNY as part of the EDNY Action. Moreover, Plaintiffs have alleged multiple violations of New York law. Therefore, this factor is satisfied and dismissal is warranted.

**II.    Alternatively, This Court Should Transfer Venue of This Matter to the Eastern District of New York[24].**

---

[24] While this Court's order only requires motions to be filed based on jurisdictional or *forum non conveniens* arguments at this time, Mr. Burzaco is also raising this Motion to Transfer Venue as it relates to the issues raised above and would be more efficient is addressed now at this early stage of litigation. If this Court believes that the motion is not ripe, Mr. Burzaco reserves the right to raise these venue issues again once this Court has determined jurisdictional issues as to certain defendants.

Alternatively, all the requirements are met for a transfer of venue to the Eastern District of New York.  It is the law that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." *28 U.S.C.  § 1404(a)*.  "The purpose of Section 1404(a) is to 'avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, 2016 WL 156427 *1, Case No. 24067-CIV-ALTONAGA/O'Sullivan, April 15, 2016 (S.D. Fla.) (citing to *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007)).  In this case, all considerations favor a transfer of venue to the EDNY.  As this Court has regularly held, Section 1404(a) is an appropriate remedy where, as here, the interest of the parties and of the court and judicial economy favor a transfer of venue. *Montgomery v. Risen*, 2016 WL 4119865, 15-20782-CIV-MARTINEZ-GOODMAN (S.D. Fla. Jan. 1, 2016) (finding a venue transfer was warranted for the convenience of the parties and preservation of judicial resources); *Seoul Semiconductor Co., Ltd. v. Curtis Int'l Ltd.*, 2014 WL 12629682, Case. No. 14-22729-CIV-ALTONAGA/O'Sullivan (S.D. Fla. Dec. 10, 2014) (same); *Atlas IP, LLC v. Boston Scientific Corp.*, 2014 WL 11910629, Case No. 14-20596-CIV-ALTONAGA/O'Sullivan (S.D. Fla. July 9, 2014) (same).  Courts have broad discretion in applying the factors relevant under Section 1404(a). *Rothschild*, 2016 WL 156427 *1.

The first factor, which must be addressed before any others are considered, is whether the matter could have been brought in the alternative forum.  *See Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1272 (S.D. Fla. 2014) (ALTONAGA).  Once that is established, courts weigh various public and private interest factors (many of which overlap with the *forum non conveniens* analysis), including:

71

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.*, 994 F. Supp. 2d at 1272 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005). "These factors are not exhaustive, and the district court should be flexible in applying them." *Rothschild*, 2016 WL 156427 at *3 (citing *Wilson v. Island Seas Invs. Ltd.*, 590 F.2d 1264, 1270 (11th Cir. 2009) and *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381-82 (11th Cir. 2009)).

A.    The Plaintiffs' Action Could Have Been Brought in the EDNY

Plaintiffs' claims could have been brought in the EDNY.  The U.S. district court in the EDNY would have subject matter jurisdiction with respect to claims as the causes of action of Claims One through Eight are grounded in federal statutes and the state claims, as Plaintiffs state are those over which a federal court has supplemental jurisdiction under 28 U.S.C. § 1367. *See* Compl. at 37. What is more, Plaintiffs repeatedly and in detail describe alleged violations of the New York Penal Code.  *See*, Compl. at, e.g., 205, 218, 221, 225, 227, 233, 237-247, 252, and 272.[25]

B.    The Private and Public Interest Factors Weigh Heavily in Favor of Transfer This Matter to EDNY.

---

[25] Additionally, Mr. Burzaco has already submitted to the jurisdiction of the EDNY, and several of the other defendants in this matter are already subject to the jurisdiction of the EDNY as a result of the EDNY Action.

For the same reasons described above with respect to the doctrine of *forum non conveniens*, and in the alternative, a transfer of venue of this matter to the U.S. district court in the ENDY would more readily provide access to the relevant sources of proof, avoid duplicative costs for the parties, and conserve judicial resources. Because many of the witnesses, including Mr. Burzaco, cannot approach an airport let alone travel to this forum without prior court authorization, the convenience of the witnesses and parties favors a transfer of venue. It is also clear that many sources of proof are located in the New York area, which stands to reason as the locus of operative facts for many of the allegations in the Complaint was in New York or overseas.   The Plaintiffs' choice of forum should not be a barrier to a transfer where, as here, it would plainly be in the interests of justice and judicial economy.   While a Plaintiff's choice of forum is generally given deference, that deference is minimized "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff." *Carucel Investments, L.P. v. Novatel Wireless Inc.*, 157 F. Supp. 3d 1219, 1226 (S.D. Fla. 2016); *see also, Rothschild*, 2016 WL 1546427 *3 (further stating "a plaintiff's choice deserves less weight when the plaintiff resides outside the forum); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 2016 WL 4433169, *2, Case No. 16-cv-21454 (S.D. Fla.) (Aug. 22, 2106); *Seoul Semiconductor* 2014 WL 12629682 at *4.   That is the case here. The facts alleged in the Complaint had only a minor brush with Florida.   The conduct at issue in the EDNY Action and in this case occurred largely overseas and in the New York area.

## CONCLUSION

Under the doctrine of *forum non conveniens*, the EDNY is an adequate available forum, both the public and private interest factors weigh in favor of dismissal, and Plaintiffs would not be unduly prejudiced by refiling and could easily refile their complaint in the EDNY.

Alternatively, as this action could have been brought in the EDNY and the factors weigh in favor of transfer, this Court should transfer this matter to the Eastern District of New York.

### Certificate of Good Faith Conference Conference

In accordance with Southern District of Florida Local Rule 7.1(a)(3), counsel for Defendants has conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Dated: July 13, 2017

*As to Part One*

**CAREY RODRIGUEZ MILIAN GONYA, LLP**

By: /s/ *Juan J. Rodriguez*
Juan J. Rodriguez, Esq. – 613843
Primary: jrodriguez@careyrodriguez.com
Secondary: cperez@careyrodriguez.com
David M. Levine, Esq. – 84431
dlevine@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: 305-372-7474
Facsimile: 305-372-7475

**AMSTERDAM & PARTNERS LLP**

Andrew J. Durkovic, Esq.
*Pro hac vice*
a.durkovic@amsterdamandpartners.com
601 13th St., NW
Eleventh Floor South
Washington, DC 20005
Phone (202) 534-1804
Fax (202) 202-833-9392

*Attorneys for Defendant CONMEBOL*

*As to Part Two*

**KENNY NACHWALTER, P.A.**

By: /s/ Richard H. Critchlow, Esq.
Richard H. Critchlow, Esq. – 155227
rhc@knpa.com
Jeffrey R. Foreman, Esq. – 612200
jtf@knpa.com
Christina Ceballos-Levy – 4 11965
ccl@knpa.com
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
Telephone: 305-373-1000
Facsimile: 305-372-1861
*Attorneys for Defendant Full Play, Inc.*

**KOBRE & KIM LLP**

/s/ John D. Couriel
John D. Couriel – 831271
Laura María González
Fla. Bar. No. 0074358
2 South Biscayne Boulevard, 35th Floor
Miami, Florida 33131
Tel: (305) 967 6115
Fax: (305) 967 6120
E-mail: john.couriel@kobrekim.com
laura.gonzalez@kobrekim.com

*Counsel for Alejandro Burzaco*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*/s/ Juan J. Rodriguez*</u>
Juan J. Rodriguez, Esq.

<u>Service List</u>

**Marcelo M. Blackburn, Esq.**
**John P. Figura, Esq.**
**Seth M. Kruglak, Esq.**
**Thomas J. McCormack, Esq.**
**Julissa Reynoso, Esq.**
Chadbourne & Parke, LLP
1301 Avenue of the Americas
New York, NY 10019-6022
mblackburn@chadbourne.com
jfigura@chadbourne.com
skruglak@chadbourne.com
tmccormack@chadbourne.com
jreynoso@chadbourne.com

**Stephen Bernard Gillman, Esq.**
**Peter Harlan Levitt, Esq.**
Shutts & Bowen
200 S Biscayne Boulevard
Suite 4100
Miami, FL 33131
sgillman@shutts.com
plevitt@shutts-law.com
*Attorneys for Plaintiffs Global Sports Partners LLP and GolTV, Inc.*

**Ramon A. Abadin, Esq.**
Sedgwick LLP
2 South Biscayne Boulevard
One Biscayne Tower - Suite 1500
Miami, FL 33131
ramon.abadin@sedgwicklaw.com

**James E. Sharp, Esq.**
**Stephen W. Grafman, Esq.**
Sharp & Associates, PLLC
1215 19th Street, N.W.
Washington, DC 20005
jsharp@sharp-assoc.com
sgrafman@sharp-assoc.com
*Attorneys for Defendant Carlos Martinez*

**Jacqueline Becerra, Esq.**
**Francisco Oscar Sanchez, Esq.**
Greenberg Traurig
333 Avenue of the Americas
Suite 4400
Miami, FL 33131
becerraj@gtlaw.com
sanchezfo@gtlaw.com
*Attorneys for Defendant Juan Angel Napout*

**Stephanie Anne Casey, Esq.**
**Roberto Martinez**, **Esq.**
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134
scasey@colson.com
bob@colson.com
*Attorneys for Defendant T&T Sports Marketing Ltd.*

**Benedict P. Kuehne, Esq.**
**Michael T. Davis, Esq.**
Benedict P. Kuehne, P.A.
100 S.E. 2nd Street, Suite 3550
Miami, FL 33131
mdavis@kuehnelaw.com
ben.kuehne@kuehnelaw.com
*Attorneys for Defendant James Ganley*

**Samuel Josephs, Esq.**
**Jennifer E. LaGrange, Esq.**
**Matthew Donald Umhofer, Esq.**
Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
sam@spertuslaw.com
matthew@spertuslaw.com
jennifer@spertuslaw.com

**Ryan K. Stumphauzer, Esq.**
Stumphauzer & Sloman, PLLC
One SE Third Ave.
Suite 1820
Miami, FL 33131
rks@oquinnstumphauzer.com
*Attorneys for Defendant Hernan Lopez*

**Curtis Joseph Mahoney, Esq.**
**Tobin Joe Romero, Esq.**
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
CMahoney@wc.com
TRomero@wc.com

**Morgan Amanda McDonough, Esq.**
**Jay Brian Shapiro, Esq.**
Stearns Weaver
150 West Flagler
Ste 2200
Miami, FL 33130
jshapiro@stearnsweaver.com
*Attorneys for Defendants Fox International Channels (U.S.) Inc.,*
*Fox Networks Group, Inc., Fox Sports Latin America, Ltd. and*
*Pan American Sports Enterprises Company*

**Samuel Nitze**
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
Samuel.Nitze@usdoj.gov
*Attorney for United States of America (Intervenor)*