**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| GOLTV, INC. and GLOBAL SPORTS PARTNERS LLP,<br><br>          Plaintiffs,<br><br>v.<br><br>CONFEDERACION SUDAMERICANA DE FUTBOL d/b/a CONMEBOL, *et al.*,<br><br>          Defendants. | Case No. 1:16-CV-24431-Altonaga/Turnoff |

## AFFIDAVIT OF FÁTIMA LORENA GONZÁLEZ TOPPI

I, FÁTIMA LORENA GONZÁLEZ TOPPI, under penalty of perjury and the laws of the United States of America, hereby affirm the following to be true:

1.       I am a Paraguayan attorney employed as Contracts Manager in the Legal Department of the Confederación Sudamericana de Fútbol ("CONMEBOL"), one of the defendants in the above-entitled case.  I make this Affidavit in support of CONMEBOL's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss").

2.       As Contracts Manager for CONMEBOL, my primary responsibilities involve supervising all aspects of CONMEBOL's contracts, including numerous contracts relating to commercial rights owned by CONMEBOL, as discussed further below.

3.       Additionally, I was designated by CONMEBOL as its corporate representative to testify in a Rule 30(b)(6) deposition noticed by the Plaintiffs herein, which was conducted on June 28-29, 2017.  In preparation for my testimony in that deposition, I performed a thorough review of all documents produced by CONMEBOL in response to discovery requests issued by the Plaintiffs.  I also gathered extensive information known to CONMEBOL in the various categories of information set out in the Plaintiffs' Rule 30(b)(6) deposition notice.

4.       The matters set out in this Affidavit are based upon CONMEBOL's knowledge, my preparations to testify as CONMEBOL's Rule 30(b)(6) designee, as well as upon my own knowledge and experience acquired during my tenure in the Legal Department at CONMEBOL.

5.       All exhibits attached to this Affidavit are true and correct copies of records maintained by CONMEBOL in the ordinary course of its business.

*Affidavit of Fátima Lorena González Toppi*

### Structure of CONMEBOL

6.      CONMEBOL is the governing body for professional soccer in South America. CONMEBOL is a non-profit association organized under the laws of Paraguay, and is governed by Title I, Book I of the Paraguayan Civil Code and the Sports Act of Paraguay.

7.      CONMEBOL is comprised of the ten national soccer associations in South America: (a) the Argentine Soccer Association; (b) the Bolivian Soccer Federation; (c) the Brazilian Soccer Confederation; (d) the Soccer Federation of Chile; (d) the Colombian Soccer Federation; (f) the Ecuadorian Soccer Federation; (g) the Paraguayan Soccer Association; (h) the Peruvian Soccer Federation; (i) the Uruguayan Soccer Association; and (j) the Venezuelan Soccer Federation (the "Member Associations").  Each of the Member Associations is a member of the Fédération Internationale de Football Association ("FIFA").

8.      FIFA recognizes CONMEBOL as the only Confederation constituted by the Member Associations in South America, and as such CONMEBOL is authorized by FIFA exclusively to direct and control soccer in South America.  CONMEBOL is bound by its interpretation of the bylaws of FIFA – including those relating to ethics – and exercises its rights as a Confederation under the aegis of those bylaws.

9.      CONMEBOL's functions include (among others): (a) promoting soccer in South America; (b) directing, organizing and resolving all issues relating to soccer in South America; (c) organizing and conducting matches, competitions and international tournaments in South America; (d) promoting integrity, ethical behavior and sportsmanship; and (e) protecting the general interests of the Member Associations.

10.      CONMEBOL is governed by a Congress, its highest authority.  The Congress comprises all Member Associations, and holds a general meeting on an annual basis.  It may also convene extraordinary meetings to address any matter under CONMEBOL's authority that is deemed relevant.  The Congress establishes and interprets the Bylaws and Rules governing CONMBEOL.

11.      It is my understanding that the time period between January 1, 2009 and December 31, 2015 (the "Relevant Period") is the only timeframe relevant to the Motion to Dismiss and the issues relating to whether personal jurisdiction over CONMEBOL exists. Therefore, unless specified otherwise, the information set out below relates to the Relevant Period.

12.      During the Relevant Period, the Executive Committee was CONMEBOL's permanent authority when the Congress was not in session.  The Executive Committee was comprised of: (a) a President (elected by a majority of the Member Associations); (b) three Vice-Presidents (elected by the Congress from amongst the Presidents of the Member Associations); (c) seven Directors (corresponding to the remaining seven Presidents of the Member Associations); (d) a Secretary General (appointed by the President); and (e) a Treasurer (also appointed by the President).  The President, the three Vice-Presidents and the seven Directors

were the only members of the Executive Committee entitled to a vote.

13.     During the Relevant Period, all of CONMEBOL's Member Associations and their respective soccer clubs were located in South America, as were all of the members of the Executive Committee.

14.     The Executive Committee was charged with managing CONMEBOL collectively, in accordance with the CONMEBOL Bylaws and Rules established by the Congress.  It had broad authority to manage CONMEBOL's affairs, and any resolution adopted by a majority of its Directors was binding.  Among the Executive Committee's functions was to organize all CONMEBOL matches and tournaments, and to decide all matters submitted to it by the Member Associations or the Directors, and any other matter within the competence of the Congress that required treatment before a meeting of the Congress could be convened.  The Executive Committee was required to meet at least twice each year, and attendance by its Directors was mandatory.  The Executive Committee was permitted to delegate the exercise of its functions, in whole or in part, to the President of CONMEBOL.

15.     Pursuant to CONMEBOL's 2016 Bylaws, the Executive Committee was renamed the Council.  The position of Treasurer was eliminated, and two new positions were added, Deputy Secretary General and Chief Financial Officer, neither of which has voting power.

*CONMEBOL Tournaments*

16.     CONMEBOL organizes a broad range of soccer tournaments in South America under its auspices, both at the club level and at the national team level.  In additional to traditional men's soccer, CONMEBOL's tournaments included categories for women's soccer, players under 17 and under 21 years of age, beach soccer and indoor soccer.

17.     In the traditional men's soccer category, CONMEBOL's most prestigious tournament has historically been the Copa Libertadores de América (the "Copa Libertadores"), a club-level tournament played annually.  Although the format of the Copa Libertadores has evolved over the years, its current structure includes the top four soccer clubs from each of the Member Associations (with six clubs from Argentina and Brazil) and is played over eight elimination stages, beginning in February.

18.     Two other significant club-level competitions played under CONMEBOL's auspices in the traditional men's category are the Copa Sudamericana and the Recopa Sudamericana.  The Copa Sudamericana involves the highest ranking soccer clubs that did not qualify for the Copa Libertadores.  Like the Copa Libertadores, the Copa Sudamericana is a tournament played in multiple stages.  The winner of the Copa Sudamericana is eligible to play in the following year's Copa Libertadores, and to compete in the Recopa Sudamericana, which pits the winner of the previous year's Copa Libertadores against the winner of the previous year's Copa Sudamericana, currently decided in a home and away soccer match series.

19.     It is my understanding that the Copa Libertadores, the Copa Sudamericana and the Recopa Sudamericana are the only tournaments relevant to the Plaintiffs' claims in the

*Affidavit of Fátima Lorena González Toppi*

above-entitled action, and they are referred to collectively in this Affidavit as the "Club Tournaments."

20.    COMEBOL's most significant tournament at the national team level is the Copa América.  The Copa América – which, as I mentioned, is not relevant to the above entitled action – is played once every four years, between the national teams of each of the ten Member Association countries, with other countries invited in some cases.

21.    In 2016, CONMEBOL celebrated the 100th Anniversary of the Copa América. CONMEBOL USA, a separately incorporated subsidiary in Dallas, Texas, was created specifically and exclusively for this occasion.  In conjunction with the Confederation of North, Central America and Caribbean Association Football ("CONCACAF"), the FIFA-recognized governing body for soccer in the North American hemisphere, CONMEBOL USA organized a single off-cycle edition of the tournament, the Copa América Centenario (the "Copa Centenario").  The Copa Centenario was played in the United States, and CONMEBOL USA held all commercial rights and received all payments in consideration of those rights.

22.    It is my understanding that the claims alleged by the Plaintiffs in the above-entitled matter relate only to the worldwide broadcast rights for the Club Tournaments, and are unrelated to the Copa Centenario or the Copa América generally.



25.    During the Relevant Period, the Executive Committee was vested with the authority to determine whether and to whom to assign some or all of its broadcast rights, including the worldwide broadcast rights relating to the Club Tournaments.  Pursuant to the CONMEBOL Bylaws in effect during the Relevant Period, assignment of the worldwide broadcast rights to the Club Tournaments required the signature of the President of CONMEBOL (and, since 2013, the signature of the Secretary General), and approval by a majority of the 11 voting members of the Executive Committee.

*Affidavit of Fátima Lorena González Toppi*



31.     In   May   2015,   CONMEBOL   learned   that   various   individuals   and   entities,

including some former CONMEBOL officials, had been indicted in the Eastern District of New York ("EDNY"), based on allegations of corruption in the acquisition of commercial rights owned by CONMEBOL, including the Broadcast Rights.

*Affidavit of Fátima Lorena González Toppi*

███████████████████████████████ ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

███████ ██ ████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████

### *Location of CONMEBOL's Activities Relating to the Club Tournaments*

38.     From its formation in 1916 through the present, CONMEBOL has been located in South America.  Since 1998, its permanent headquarters have been in Luque (Greater Asunción), Paraguay.  All of CONMEBOL's employees and staff (aside from independent professionals contracted to provide services) are located in South America, as are all of CONMEBOL's Member Associations.

39.     During the Relevant Period, CONMEBOL owned no real estate in the United States and had no offices or other facilities in the United States.

40.     During the Relevant Period, CONMEBOL had no offices, employees or business activities in Florida or the United States, or any employees or staff in the United States who were assigned to work on matters relating to any of the Club Tournaments (other than attorneys and accountants retained to provide professional services).

41.     During the Relevant Period, neither CONMEBOL's Executive Committee nor its Congress held any meetings in the United States.

42.     During the Relevant Period, all of CONMEBOL's organizational activities and other functions relating to the Club Tournaments were carried out in South America.

43.     During the Relevant Period, all of the Club Tournaments were played in their entirety in South America.



*Affidavit of Fátima Lorena González Toppi*



50.     During the Relevant Period, CONMEBOL has only once availed itself of any judicial assistance in the United States, in a 2016 lawsuit filed in state court in New York to

*Affidavit of Fátima Lorena González Toppi*

remedy fraud in connection with a tournament sponsorship (not broadcast rights) agreement, specifically *Confederación Sudamericana de Fútbol v. Zorana Danis*, No. 655619/2016 (Sup. Ct. N.Y. County 2016).  That case involves parties and matters unrelated to the above-entitled action or the Broadcast Rights for the Club Tournaments.

51.     During the Relevant Period, CONMEBOL was sued once in the United States, to wit: *Traffic Sports International, Inc. v. Full Play International*, *et al.*, No. 11-38881 (11th Jud. Cir. Fla., Miami-Dade County 2011). In July 2012, CONMEBOL filed a motion to dismiss for lack of personal jurisdiction; however, in June 2013 the case was dismissed with prejudice, by stipulation of the parties, before the court was called upon to rule on the motion.



*Affidavit of Fátima Lorena González Toppi*

56.     In 2015, numerous officials under the auspices of FIFA were indicted by the U.S. Attorney for the EDNY in connection with an alleged scheme of bribes and kickbacks relating to the sale of commercial rights to soccer tournaments around the world.   Several former CONMEBOL officials – including three former Presidents of CONMEBOL, Nicolas Leoz, Eugenio Figueredo and Juan Angel Napout – were included in those indictments.   The alleged fraudulent scheme was said to involve, among other things, the Broadcast Rights.   At the time of those indictments, Juan Angel Napout was the President of CONMEBOL.



58.     For purposes of the Motion to Dismiss, CONMEBOL assumes that the EDNY's indictments are meritorious, and that those former members of its Executive Committee that have been indicted in the EDNY engaged in the alleged illegal activity adverse to CONMEBOL.



60.     To the extent any member of CONMEBOL's Executive Committee(s) took or agreed to take illicit payments in connection with the assignment of any of CONMEBOL's commercial rights, including without limitation the Broadcast Rights, such actions were done without CONMEBOL's knowledge or approval and were adverse to CONMEBOL itself and to its Member Associations, in that said actions caused serious injury to CONMEBOL and its Member Associations by depriving them of substantial revenues from the true value of the rights. In so doing, said wrongdoers were acting outside the course and/or scope of their authority as members of the CONMEBOL Executive Committee. Indeed, to the extent any member of CONMEBOL's Executive Committee(s) took illicit payments in connection with the assignment of any of CONMEBOL's commercial rights, including without limitation the Broadcast Rights, CONMEBOL did not receive any benefit from those actions.

61.     Further, to the extent former CONMEBOL officials conducted meetings in the United States in furtherance of any illegal scheme involving bribery or illicit payments in connection with the Broadcast Rights to the Club Tournaments, those trips were at the personal choice and expense of the wrongdoers.   CONMEBOL has no record of directing, approving or reimbursing expenses for such trips.   If such activities occurred, they were outside the scope of the officials' authority, and without CONMEBOL's knowledge or approval.

62.     All members of CONMEBOL's Executive Committee are bound by FIFA's

*Affidavit of Fátima Lorena González Toppi*

Ethics Code and its Disciplinary Code, which prohibit conflicts of interest, bribery and other corrupt activity, and were in force during the Relevant Period.  A true and correct copy of FIFA's Ethics Code and its Disciplinary Code are attached to this Affidavit as Exhibits O and P, respectively.

63.    Further, in 2013 and 2014, respectively, CONMEBOL adopted its own Code of Ethics and Disciplinary Regulations, which apply to all members of the Executive Committee. Those governing rules prohibit accepting bribes and other unlawful gifts, conflicts of interest and self-dealing.  True and correct copies of CONMEBOL's Code of Ethics and its Disciplinary Regulations are attached to this Affidavit as Exhibits Q and R, respectively.

64.    Thus, to the extent any member of CONMEBOL's Executive Committee(s) took illicit payments in connection with the assignment of any of the Broadcast Rights during the Relevant Period, such actions violated the ethical and disciplinary rules and regulations applicable to them, and were done without CONMEBOL's knowledge or approval.

65.    Finally, I have reviewed the Plaintiffs' allegations in the Amended Complaint, and at no time did CONMEBOL engage in any wrongdoing.  Similarly, at no time was CONMEBOL part of the conspiracy alleged in the Amended Complaint.


FURTHER AFFIANT SAYETH NAUGHT.

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:          July 12, 2017

_____          _____
FÁTIMA LORENA GONZÁLEZ TOPPI
Contracts Manager, Legal Department,,CONMEBOL


TRANSPERFECT

City of New York, State of New York, County of New York

I, Angela Lo, hereby certify that the document "**AFFIDAVIT OF FÁTIMA LORENA GONZÁLEZ TOPPI**" is, to the best of my knowledge and belief, a true and accurate translation from English into Spanish (International).

Angela Lo

Sworn to before me this
July 12, 2017

Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

**CORTE DEL DISTRITO DE LOS ESTADOS UNIDOS**
**DISTRITO SUR DE LA FLORIDA**

GOLTV, INC. y GLOBAL SPORTS
PARTNERS LLP,

        Demandantes,

v.

CONFEDERACIÓN SUDAMERICANA DE
FÚTBOL d/b/a CONMEBOL, *et al.*,

        Demandados.

**Caso No. 1:16-CV-24431-**
**Altonaga/Turnoff**

## DECLARACIÓN JURADA DE FÁTIMA LORENA GONZÁLEZ TOPPI

Yo, FÁTIMA LORENA GONZÁLEZ TOPPI, bajo la pena de perjurio y las leyes de los Estados Unidos de América, por medio del presente afirmo lo siguiente como verdadero:

1. Yo soy una abogada de Paraguay que trabajo como Coordinadora de Contratos en el Departamento Jurídico de la Confederación Sudamericana de Fútbol ("CONMEBOL"), uno de los demandados en el caso arriba referenciado. Esta Declaración Jurada la realizo para apoyar la Moción para Desestimar de la CONMEBOL por Falta de Competencia en Razón a la Persona (la "Moción para Desestimar").

2. Como Coordinadora de Contratos de la CONMEBOL, mis principales responsabilidades son la supervisión de todos los aspectos de los contratos de la CONMEBOL, incluyendo varios contratos relacionados con los derechos comerciales de propiedad de la CONMEBOL, como se discute más adelante.

3. Además, fui designada por la CONMEBOL como su representante corporativa para testificar en una declaración de testigos de conformidad con la Norma 30(b)(6) según lo señalado por los Demandantes en la presente. Dicha declaración de testigos se realizó entre el 28 y 29 de junio de 2017. Para la preparación de mi testimonio en dicha declaración, realicé una revisión detallada de todos los documentos producidos por la CONMEBOL en respuesta a las solicitudes de pruebas emitidas por los Demandantes. También obtuve amplia información de conocimiento de la CONMEBOL en las diferentes categorías de información indicadas en la notificación de la declaración de testigo según la Norma 30(b)(6) de los Demandantes.

4. Los asuntos de que trata esta Declaración Jurada están basados en el conocimiento de la CONMEBOL, en mis preparaciones para testificar como designada de la CONMEBOL según la Norma 30(b)(6), así como en mi propio conocimiento y experiencia obtenida durante el desempeño de mi cargo en el Departamento Jurídico de la CONMEBOL.

*Declaración Jurada de Fátima Lorena González Toppi*

5.      Todos los anexos que se adjuntan a esta Declaración Jurada son copias fieles y exactas de los registros que mantiene la CONMEBOL en el curso ordinario de sus negocios.

*Estructura de la CONMEBOL*

6.      La CONMEBOL es el órgano rector del fútbol profesional en Sudamérica. La CONMEBOL es una organización sin fines de lucro constituida bajo las leyes de Paraguay y está regida por el Título I, Libro I del Código Civil de Paraguay y la Ley de Deportes de Paraguay.

7.      La CONMEBOL está conformada por diez asociaciones nacionales de fútbol en Sudamérica: (a) la Asociación del Fútbol Argentino; (b) la Federación Boliviana de Fútbol; (c) la Confederación Brasileña de Fútbol; (d) la Federación de Fútbol de Chile; (d) la Federación Colombiana de Fútbol; (f) la Federación Ecuatoriana de Fútbol; (g) la Asociación Paraguaya de Fútbol; (h) la Federación Deportiva Nacional Peruana de Fútbol; (i) la Asociación Uruguaya de Fútbol; y (j) la Federación Venezolana de Fútbol (las "Asociaciones Miembros"). Cada una de las Asociaciones Miembros es un miembro de la Fédération Internationale de Football Association ("FIFA").

8.      La FIFA reconoce a la CONMEBOL como la única Confederación constituida por las Asociaciones Miembros en Sudamérica y como tal, la CONMEBOL está autorizada por la FIFA exclusivamente para dirigir y controlar el fútbol en Sudamérica. La CONMEBOL está obligada por su interpretación de los estatutos de la FIFA - incluyendo lo relacionado con la ética - y ejerce sus derechos como una Confederación bajo la tutela de dichos estatutos.

9.      Las funciones de la CONMEBOL incluyen (entre otros): (a) promover el fútbol en Sudamérica; (b) dirigir, organizar y resolver todos los asuntos relacionados con el fútbol en Sudamérica; (c) organizar y realizar partidos, competencias y torneos internacionales en Sudamérica; (d) promover la integridad, comportamiento ético y espíritu deportivo en Sudamérica; y (e) proteger los intereses generales de las Asociaciones Miembros.

10.     La CONMEBOL está gobernado por un Congreso, su máxima autoridad. El Congreso está conformado por todas las Asociaciones Miembros y se reúne ordinariamente una vez al año. También puede convocar reuniones extraordinarias cuando la autoridad de la CONMEBOL lo considere relevante. El Congreso establece e interpreta los Estatutos y las Normas que rigen a la CONMEBOL.

11.     Tengo entendido que el periodo entre el 1 de enero de 2009 y el 31 de diciembre de 2015 (los "Periodos Relevantes") es el único periodo de tiempo relevante para la Moción para Desestimar y los asuntos relacionados sobre si existe competencia en razón a la persona sobre la CONMEBOL. Por lo tanto, salvo que se especifique lo contrario, la información que se incluye a continuación se refiere al Periodo Relevante.

12.     Durante el Periodo Relevante, el Comité Ejecutivo era la autoridad permanente de la CONMEBOL cuando el Congreso no estaba reunido. El Comité Ejecutivo estaba conformado por: (a) un Presidente (elegido por la mayoría de las Asociaciones Miembros); (b) tres

*Declaración Jurada de Fátima Lorena González Toppi*

Vicepresidentes (elegidos por el Congreso de entre los Presidentes de las Asociaciones Miembros); (c) siete Directores (correspondientes a los siete Presidentes restantes de las Asociaciones Miembros); (d) un Secretario General (designado por el Presidente); y (e) un Tesorero (también designado por el Presidente). El Presidente, los tres Vicepresidentes y los siete Directores eran los únicos miembros del Comité Ejecutivo con derecho a voto.

13.     Durante el Periodo Relevante, todas las Asociaciones Miembros de la CONMEBOL y sus correspondientes clubes de fútbol estaban ubicados en Sudamérica, al igual de que todos los miembros del Comité Ejecutivo.

14.     La función principal del Comité Ejecutivo era dirigir de manera colectiva a la CONMEBOL, de conformidad con los Estatutos y Normas de la CONMEBOL establecidos por el Congreso. Tenía amplia autoridad para dirigir los asuntos de la CONMEBOL y cualquier resolución adoptada por la mayoría de sus Directores era obligatoria. Entre las funciones del Comité Ejecutivo estaban organizar todos los partidos y torneos de la CONMEBOL y decidir todos los asuntos que le eran remitidos por las Asociaciones Miembros o los Directores y cualquier otro asunto dentro de la competencia del Congreso que debiera ser tratado antes de que se pudiera convocar a una reunión del Congreso. El Comité Ejecutivo debía reunirse por lo menos dos veces al año y la asistencia de sus Directores era obligatoria. El Comité Ejecutivo podía delegar el ejercicio de sus funciones, en su totalidad o en parte, al Presidente de la CONMEBOL.

15.     De conformidad con los Estatutos de la CONMEBOL del 2016, el Comité Ejecutivo fue renombrado como el Consejo. El rol del Tesorero fue eliminado y dos nuevos roles fueron adicionados, el de Secretario General Adjunto y un Director Financiero, ninguno de los cuales tiene poder de voto.

*Torneos de la CONMEBOL*

16.     La CONMEBOL organiza una gran variedad de torneos de fútbol en Sudamérica bajo su auspicio, tanto a nivel de clubes como a nivel de equipos nacionales. Además del fútbol tradicional masculino, los torneos de la CONMEBOL incluían categorías de fútbol femenino, jugadores menores de 17 años y menores de 21 años, fútbol de playa y futsal.

17.     En la categoría tradicional de fútbol masculino, el torneo más prestigioso de la CONMEBOL históricamente ha sido la Copa Libertadores de América (la "Copa Libertadores"), un torneo a nivel de clubes que se juega todos los años. Aunque el formato de la Copa Libertadores ha evolucionado a lo largo de los años, su estructura actual incluye los primeros cuatro clubes de fútbol de cada una de las Asociaciones Miembros (con seis clubes de Argentina y Brasil) y se juega en ocho etapas de eliminatorias, comenzando en febrero.

18.     Otras competencias importantes a nivel de clubes que se juegan bajo la tutela de la CONMEBOL en la categoría tradicional masculina son la Copa Sudamericana y la Recopa Sudamericana. La Copa Sudamericana se juega con los clubes de fútbol de más alto nivel que no clasificaron a la Copa Libertadores. Al igual que la Copa Libertadores, la Copa Sudamericana es un torneo que se juega en varias etapas. El ganador de la Copa Sudamericana clasifica para jugar

*Declaración Jurada de Fátima Lorena González Toppi*

en la Copa Libertadores del siguiente año y para competir en la Recopa Sudamericana, en la que figura el ganador de un solo partido de fútbol que se juega entre el ganador de la Copa Libertadores del año anterior y el ganador de la Copa Sudamericana del año anterior, que actualmente se decide en una serie de partidos de fútbol locales y de visitantes.

19.     Tengo entendido que la Copa Libertadores, la Copa Sudamericana y la Recopa Sudamericana son los únicos torneos que son relevantes para las reclamaciones de los Demandantes en la demanda arriba referenciada y que en esta Declaración Jurada se refieren en conjunto como los "Torneos de Clubes".

20.     El torneo más importante de la CONMEBOL a nivel de equipos nacionales es la Copa América. La Copa América - la cual, como lo mencioné antes, no es relevante para la demanda arriba referenciada - se juega cada cuatro años, entre los equipos nacionales de cada uno de las diez países de las Asociaciones Miembros, con otros países invitados en algunos casos.

21.     En el 2016, la CONMEBOL celebró los 100 años de la Copa América. CONMEBOL USA, una filial independiente constituida en Dallas, Texas, fue creada específica y exclusivamente para este evento. En conjunto con la Confederación de Norteamérica, Centroamérica y el Caribe de Fútbol ("CONCACAF"), el ente rector reconocido por la FIFA para el hemisferio Norteamericano, la CONMEBOL USA organizó una edición de único ciclo del torneo, la Copa América Centenario (la "Copa Centenario"). La Copa Centenario se jugó en los Estados Unidos y la CONMEBOL USA tuvo los derechos comerciales y recibió todos los pagos como contraprestación por dichos derechos.

22.     Tengo entendido que las reclamaciones alegadas por los Demandantes en el asunto arriba referenciado están relacionadas únicamente con los derechos de transmisión a nivel mundial para los Torneos de Clubes y no están relacionados con la Copa Centenario o la Copa América en general.



25.     Durante el Periodo Relevante, el Comité Ejecutivo tenía la facultad para

*Declaración Jurada de Fátima Lorena González Toppi*

determinar si y a quién se le cedían algunos o todos sus derechos de transmisión, incluyendo los derechos de transmisión a nivel mundial relacionados con los Torneos de Clubes. De conformidad con los Estatutos de la CONMEBOL vigentes durante el Periodo Relevante, la cesión de los derechos de transmisión a nivel mundial de los Torneos de Clubes requería la firma del Presidente de la CONMEBOL (y, a partir del 2013, la firma del Secretario General), y la aprobación de la mayoría de los 11 miembros con derecho a voto del Comité Ejecutivo.



*Declaración Jurada de Fátima Lorena González Toppi*



31.     En mayo de 2015, la CONMEBOL tuvo conocimiento de que varios individuos y entidades, incluyendo algunos funcionarios antiguos de la CONMEBOL, habían sido acusados en el Distrito Este de Nueva York ("EDNY"), con base en denuncias de corrupción en la adquisición de derechos comerciales de propiedad de la CONMEBOL, incluyendo los Derechos de Transmisión.

*Declaración Jurada de Fátima Lorena González Toppi*



*Ubicación de las Actividades de la CONMEBOL Relacionadas con los Torneos de Clubes*

38.     Desde su creación en 1916 hasta el presente, la CONMEBOL ha estado ubicada en Sudamérica. Desde 1998, su sede principal permanente es Luque (Gran Asunción), Paraguay. Todos los empleados y el personal de la CONMEBOL (a parte de los profesionales independientes contratados para prestar servicios) están ubicados en Sudamérica, así como lo están todas las Asociaciones Miembros de la CONMEBOL.

39.     Durante el Periodo Relevante, la CONMEBOL no era propietaria de ningún inmueble en los Estados Unidos y no tenía ni oficinas ni otras instalaciones en los Estados Unidos.

40.     Durante el Periodo Relevante, la CONMEBOL no tenía oficinas, ni empleados ni actividades comerciales en la Florida ni en los Estados Unidos, ni ningún empleado o personal en los Estados Unidos que tuvieran a su cargo realizar trabajos sobre asuntos relacionados con

*Declaración Jurada de Fátima Lorena González Toppi*

cualquiera de los Torneos de Clubes (diferente de los abogados y contadores contratados para prestar servicios profesionales).

41.     Durante el Periodo Relevante, ni el Comité Ejecutivo de la CONMEBOL ni su Congreso realizaron ninguna reunión en Estados Unidos.

42.     Durante el Periodo Relevante, todas las actividades organizacionales y otras funciones de la CONMEBOL relacionadas con los Torneos de Clubes fueron realizadas en Sudamérica.

43.     Durante el Periodo Relevante, todos los Torneos de Clubes fueron jugados en su totalidad en Sudamérica.



*Declaración Jurada de Fátima Lorena González Toppi*



50.     Durante el Periodo Relevante, la CONMEBOL ha requerido únicamente una vez asistencia legal en Estados Unidos, en relación con una demanda entablada en el 2016 en una corte estatal de Nueva York respecto de la reparación de un fraude en relación con un contrato de patrocinio de un torneo (no derechos de transmisión), específicamente *Confederación Sudamericana de Fútbol v. Zorana Danis*, No. 655619/2016 (Sup. Ct. Condado N.Y. 2016). Ese caso involucra partes y asuntos no relacionadas con la acción arriba referenciada ni con los Derechos de Transmisión para los Torneos de Clubes.

51.     Durante el Periodo Relevante, la CONMEBOL fue demandada una vez en los Estados Unidos, es decir: *Traffic Sports International, Inc. v. Full Play International*, *et al.*, No. 11-38881 (11th Jud. Cir. Fla., Condado de Miami-Dade 2011). En julio de 2012, la CONMEBOL presentó una moción para desestimar por falta de competencia en razón de la persona; sin embargo, en junio de 2013 el caso fue desestimado con perjuicio, por estipulación de las partes, antes de que la corte fuera a resolver la moción.

*Declaración Jurada de Fátima Lorena González Toppi*



56.     En el 2015, varios funcionarios bajo los auspicios de la FIFA fueron acusados por el Fiscal General de EE.UU. para la EDNY en relación con un presunto esquema de sobornos y coimas relacionados con la venta de los derechos comerciales de torneos de fútbol al rededor del mundo. Varios antiguos funcionarios de la CONMEBOL – incluyendo tres Presidentes antiguos de la CONMEBOL, Nicolas Leoz, Eugenio Figueredo y Juan Angel Napout – fueron incluidos

*Declaración Jurada de Fátima Lorena González Toppi*

en esas acusaciones. El presunto esquema fraudulento se decía que involucraba, entre otras cosas, los Derechos de Transmisión. Para la época de dichas acusaciones, Juan Angel Napout era el Presidente de la CONMEBOL.



58.    Para los efectos de la Moción para Desestimar, la CONMEBOL asume que las acusaciones de la EDNY tienen fundamento, y que dichos miembros antiguos de su Comité Ejecutivo que han sido acusados en la EDNY participaron en las presuntas actividades ilícitas que son adversas a la CONMEBOL.



60.    En la medida en que cualquier miembro del Comité Ejecutivo de la CONMEBOL tomó o acordó tomar pagos ilegales en relación con la cesión de cualquiera de los derechos comerciales de la CONMEBOL, incluyendo sin limitación los Derechos de Transmisión, dichos actos fueron realizados sin el consentimiento o aprobación de la CONMEBOL y fueron adversos a la CONMEBOL en sí misma y a sus Asociaciones Miembros, ya que dichos actos causaron graves perjuicios a la CONMEBOL y a sus Asociaciones Miembros impidiéndoles obtener ingresos sustanciales del valor verdadero de los derechos. Al hacer esto, las personas que realizaron actos indebidos actuaron por fuera del curso y/o alcance de su autoridad como miembros del Comité Ejecutivo de la CONMEBOL. De hecho, en la medida en que cualquier miembro del Comité Ejecutivo de la CONMEBOL hubiera tomado pagos ilegales en relación con la cesión de cualquiera de los derechos comerciales de la CONMEBOL, incluyendo sin limitación de los Derechos de Transmisión, la CONMEBOL no recibió ningún beneficio de dichos actos.

61.    Además, en la medida en que los antiguos funcionarios de la CONMEBOL realizaron reuniones en los Estados Unidos en relación con cualquier esquema ilegal que involucrara pagos ilegales o de sobornos en relación con los Derechos de Transmisión a los Torneos de Clubes, dichos viajes fueron por cuenta personal y a cuenta propia de las personas que realizaron los actos indebidos. La CONMEBOL no tiene ningún registro dando instrucciones, aprobando o reembolsando cualquier gasto por dichos viajes. Si dichas actividades ocurrieron, fueron por fuera del alcance de la autoridad de dichos funcionarios y sin el consentimiento o aprobación de la CONMEBOL.

62.    Todos los miembros del Comité Ejecutivo de la CONMEBOL están obligados a

*Declaración Jurada de Fátima Lorena González Toppi*

observar el Código de Ética y el Código Disciplinario de la CONMEBOL, que prohíben los conflictos de intereses, sobornos y otras actividades de corrupción y dichos códigos estaban vigentes en el Periodo Relevante. Una copia fiel y correcta del Código de Ética y el Código Disciplinario de la FIFA se adjunta a esta Declaración Jurada como Anexos O y P, respectivamente.

63.     Además, en el 2013 y el 2014, respectivamente, la CONMEBOL adoptó su propio Código de Ética y Regulaciones Disciplinarias, el cual aplica a todos los miembros del Comité Ejecutivo. Dichas normas regulatorias prohíben aceptar sobornos y otros regalos, conflictos de intereses o actos de interés propio ilegales. Se adjuntan copias fieles y correctas del Código de Ética y Regulaciones Disciplinarias de la CONMEBOL a esta Declaración Jurada como Anexos Q y R, respectivamente.

64.     Por lo tanto, en la medida en que cualquier miembro del Comité Ejecutivo de la CONMEBOL tomó pagos ilegales en relación con la cesión de cualquiera de los Derechos de Transmisión durante el Periodo Relevante, dichos actos violaron las normas y regulaciones éticas y disciplinarias que les aplicaban y fueron realizados sin el conocimiento o aprobación de la CONMEBOL.

65.     Finalmente, yo revisé los alegatos de los Demandantes en la Demanda Enmendada y en ningún momento la CONMEBOL participó en cualquier acto indebido. De manera similar, en ningún momento la CONMEBOL participó en la supuesta conspiración en la Demanda Enmendada.


DECLARANTE ADICIONAL SAYETH NAUGHT.

De conformidad con la Sección 1746 del Título 28 del Código de Estados Unidos, yo declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Firmado:            12 de julio de 2017

_____
FÁTIMA LORENA GONZÁLEZ TOPPI
Coordinadora de Contratos, Departamento Jurídico, CONMEBOL