# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-24431-CIV-ALTONAGA/Turnoff

**GOLTV, INC.** and
**GLOBAL SPORTS PARTNERS, LLP**,

      Plaintiffs,

v.

**FOX SPORTS
LATIN AMERICA LTD.**, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Confederación Sudamericana de Fútbol ("Conmebol"), Full Play Group, S.A., and Alejandro Burzaco's Consolidated Jurisdictional Motion to Dismiss [ECF No. 203] Plaintiffs, GolTV, Inc. and Global Sports Partners LLP's Amended Complaint [ECF No. 78]. The Court has carefully considered the Amended Complaint, Motion, Plaintiffs' Memorandum of Law in Opposition ("Response") [ECF No. 218], Defendants' Consolidated Reply [ECF No. 228], the affidavits and exhibits filed contemporaneously with the briefing,[1] and applicable law.

## I.  BACKGROUND

On October 20, 2016, Plaintiffs, GolTV, Inc. and Global Sports Partners, filed an initial Complaint [ECF No. 1], alleging 16 named Defendants were involved at various levels of bribery schemes to award and obtain exclusive television rights to Conmebol's international

---

[1] These documents include: the Affidavit of Fátima Lorena González Toppi [ECF No. 204] and accompanying exhibits (*see* [ECF Nos. 204-1 to 204-10]), filed the same date as the Motion; as well as the Declaration of Thomas J. McCormack [ECF No. 216], its accompanying exhibits (*see* [ECF Nos. 216-1 to 216-76]), and the Declaration of Nelson Daniel Gutierrez [ECF No. 227], all filed with the Response.

soccer club tournaments. The allegations relied extensively on a 92-count Superseding Indictment [ECF No. 1-3][2] from a parallel criminal case in the Eastern District of New York, which charged 27 individual defendants with crimes including racketeering, conspiracy, wire fraud, and money laundering offenses in connection with securing exclusive worldwide rights for international soccer tournaments. (*See generally* Compl.).

Plaintiffs allege they are victims of bribery schemes spanning from roughly 2009 to 2015,[3] during which all Defendants plotted to enable Defendant, T&T Sports Marketing Ltd., to secure exclusive television rights to Conmebol's international soccer tournaments. (*See generally* Am. Compl.). While the Amended Complaint peoples the field with multiple players and details several aspects of this scheme, only the parties and factual allegations relevant to the Motion are discussed below.

Conmebol is "one of the oldest and most prestigious soccer confederations in the world," and is exclusively authorized to direct and control soccer within the South American region by soccer's international governing body, the Fédération Internationale de Football Association. (*Id.* 32 (citation omitted)). It is organized as a confederation of national soccer associations from ten countries in South America. (*See id.*). Its Executive Committee is its permanent authoritative body and as of 2013 consists of one president, three vice presidents, a secretary general, a treasurer, and six directors. (*See id.*).

---

[2] The Superseding Indictment is re-attached to the Amended Complaint in two parts at ECF Nos. 78-1 and 78-2.

[3] Defendants indicate the parties do not agree on the relevant period for the purposes of this action, despite having limited jurisdictional discovery to the years between 2009 and 2015. (*See* Reply 8 n.1). The Court's analysis remains unchanged whether the relevant period is 2009 to 2015, as understood by Defendants, or 2005 to 2015, as understood by Plaintiffs.

GolTV is a Florida-based television channel that provides Spanish- and English-language soccer programming in the United States. (*See id.* ¶ 14[4]). Global Sports Partners is an English partnership formed by GolTV's owners to acquire television rights to international soccer tournaments for GolTV. (*See id.* ¶ 16).

T&T Sports Marketing is a Cayman Islands company owned for much of 2005 through 2015 by Defendants, Fox Pan American[5] and Torneos y Competencias. (*See id.* ¶ 17). Torneos has historically held exclusive agreements to produce and distribute television programming related to South American league soccer matches. (*See id.* ¶ 24). Alejandro Burzaco, an Argentine citizen, had an ownership share in Torneos and variously served as the company's general manager, legal representative, and president of its board of directors between 2005 and 2015. (*See id.* ¶ 29). GolTV and Fox are competitors within the market for professional soccer programming, although they also do business together. (*See id.* ¶ 14). Full Play Group is a Uruguayan corporation and sports media and marketing business with its principal offices in Argentina and Uruguay, and Hugo and Mario Jinkis serve as its controlling officers. (*See id.* ¶ 31).

Among the greatest prizes these companies vie for are the broadcasting rights to the South American tournaments run by Conmebol. (*See id.* ¶¶ 56–58). The tournaments relevant to the Amended Complaint include the Copa Libertadores, the Copa Sudamericana, and the Recopa Sudamericana. (*See id.* ¶¶ 55–56). Only Conmebol, by decision of its Executive Committee, can award television rights for the tournaments. (*See id.* ¶ 59).

---

[4] Except where paragraph numbers are provided, the Court uses the page numbers in the headers generated by the CM/ECF system.

[5] Unless necessary to specify one of the entities by name, for the purposes of this Order, the Court hereinafter refers to all Fox parties collectively as "Fox" or the "Fox Defendants."

Between 2005 and 2015, Burzaco, Full Play, and the remaining Defendants allegedly engaged in several acts to further the schemes to bribe Conmebol officials in order to secure broadcasting rights to the club tournaments. (*See generally* Am. Compl.).

Specifically, Burzaco, as majority owner of Torneos, which owned 25 percent of T&T Sports Marketing, caused T&T Sports Marketing to wire bribe and kickback payments to Conmebol officials. (*See id.* ¶¶ 5, 42, 64, 66). In 2005, he took over day-to-day management of Torneos and learned of the annual bribe payments to Conmebol officials which had begun in 2000 under one of the Torneos founders, Luis Nofal. (*See id.* ¶¶ 62, 67). Burzaco helped to continue the payment of bribes to Conmebol officials until 2014. (*See id.* ¶ 67). Beginning in 2009, he also acceded to demands for bribes from officials at Conmebol's member associations, paying annual six-figure sums to secure these officials' support for T&T Sports Marketing's exclusive rights to the soccer tournaments. (*See id.* ¶ 69). He oversaw increases in the bribe payments starting in 2010 and laundered money through intermediary entities, including Full Play. (*See id.* ¶¶ 69, 95–96).

Torneos and Fox also relied on Full Play to launder money through its own intermediary entities to pay additional bribes and kickbacks to Conmebol officials. (*See id.* ¶¶ 72, 101–07). To avoid detection, some bribes were wired to Full Play bank accounts and held for periodic disbursement to the officials. (*See id.* ¶ 76 (citation omitted)).

Plaintiffs filed the Amended Complaint on March 6, 2017, after perfecting service of process and narrowing the list of Defendants. The Court entered an Order [ECF No. 156] providing for a period of jurisdictional discovery for Plaintiffs to defend any motion to dismiss on grounds of lack of jurisdiction or improper venue.

Plaintiffs assert Conmebol's, Full Play's, and Burzaco's activities in the state of Florida are sufficient to subject them to the jurisdiction of this Court. (*See id.* ¶¶ 38–50). Plaintiffs contend venue is proper in the Southern District of Florida because "a substantial part of the events, omissions, communications, and transactions giving rise to Plaintiffs' claims occurred in this judicial district, including wire transfers of bribes . . . and other criminal wrongdoing." (*Id.* ¶ 51 (alteration added)). Plaintiffs' specific allegations, and Defendants' respective rebuttals, are more fully developed in the discussion as to each part of the Motion.

## II. PERSONAL JURISDICTION

Conmebol and Full Play move to dismiss for lack of personal jurisdiction. (*See generally* Mot.). The Court reviews the legal standard before analyzing the jurisdictional allegations, first as to Conmebol and then as to Full Play.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. In the case of a non-resident defendant, a federal court may properly exercise personal jurisdiction only if the requirements of (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Id.* (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's

affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).

If the defendant satisfies its burden, the burden then shifts back to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.* (citation omitted). "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir.2010)) (other citation omitted).

### B. Specific Jurisdiction, Generally

As stated, the Court may exercise personal jurisdiction over Conmebol and Full Play if the requirements of (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. *See Posner*, 178 F.3d at 1214 (citing *Sculptchair, Inc.*, 94 F.3d at 626). Florida's long-arm statute recognizes two kinds of personal jurisdiction over defendants: specific jurisdiction and general jurisdiction. *See* FLA. STAT. §§ 48.193(1)–(2). The Amended Complaint asserts only specific personal jurisdiction over Conmebol and Full Play. (*See* Am. Compl. ¶¶ 41, 44–46, 48–49).

A non-resident defendant may be subject to specific personal jurisdiction under Florida's long-arm statute if the claim asserted against the defendant arises from its forum-related contacts

and if those contacts fall in one of the nine enumerated categories listed under section 48.193(1)(a), Florida Statutes. *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. Mar. 28, 2017) (per curiam) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015)); *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015).

Plaintiffs broadly assert the Court has specific jurisdiction over all Defendants because they each committed tortious acts within Florida and/or committed tortious acts directed at Florida and caused injury to GolTV in Florida[6] (*see* Am. Compl. ¶ 41) — "[c]ommitting a tortious act" being one of the nine enumerated acts under section 48.193(1)(a),[7] FLA. STAT. § 48.193(1)(a)(2) (alteration added). Additionally, Plaintiffs allege the Court has specific jurisdiction over Conmebol and Full Play because section 48.193(1)(a)(2) supports personal jurisdiction over a defendant where co-conspirators commit acts in Florida in furtherance of a

---

[6] Conmebol and Full Play argue the long-arm statute is inapplicable because Global Sports Partners — a completely foreign entity with no presence in the forum — was the entity negotiating offers to obtain the tournament rights on behalf of GolTV and, as such, the only injury was to a foreign entity outside Florida. (*See* Mot. 37–39, 55–56). The Court notes Defendants' objections to the Gutierrez Declaration (*see* Reply 25–26), but finds the Declaration and Plaintiffs' Response demonstrate there was an injury in Florida (*see* Resp. 40–41; *see generally* Gutierrez Decl.).

[7] The Amended Complaint states there is also specific jurisdiction over Conmebol under Florida Statute section 48.193(1)(a)(1) because Conmebol "operates, conducts, engages in, or carries on a business or business venture in Florida," in relation to its promotion and commercialization of the club tournaments. (Am. Compl. ¶ 48). Plaintiffs do not mention section 48.193(1)(a)(1) or address Conmebol's arguments on that provision anywhere in their Response. When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned. *See, e.g.*, *Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, No. 16-CV-22236, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016) (determining the plaintiff "implicitly condede[d]" a point by failing to address the defendant's abstention argument in response to a motion to dismiss (alteration added)); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)); *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1329 (M.D. Ala. 2013) (granting in part motion to dismiss for lack of subject matter jurisdiction after the plaintiff effectively conceded an argument by failing to respond to it in the responsive brief). Because Plaintiffs appear to abandon this ground for jurisdiction in their Response to the Motion, the Court concludes they have conceded the point or else failed to carry their burden of substantiating the initial jurisdictional allegations.

conspiracy even when the defendant did not commit any acts in or have any relevant contacts with Florida. (*See* Am. Compl. ¶ 46).

A nonresident defendant can commit a tortious act within Florida even if he commits tortious acts outside the state, if those acts cause injury *within* Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (citation omitted). "[T]he appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." *Hard Candy*, 106 F. Supp. 3d at 1239 (alteration added; citations and internal quotation marks omitted). Further, the long-arm statute provides a defendant's contacts may be based not only on the defendant's personal activities, but also on the actions of the defendant's agents. *See* FLA. STAT. § 48.193(1)(a) (stating a person submits him or herself to personal jurisdiction under the statute when he/she "personally or through an agent does any of the acts enumerated in this subsection").

### C. Imputing Jurisdictional Contacts

Plaintiffs assert Conmebol and Full Play have contacts imputed to them under the tortious activity provision by virtue of their agents' and co-conspirators' actions in Florida.

Agency-based personal jurisdiction is expressly contemplated by the long-arm statute. *See Hard Candy*, 106 F. Supp. 3d at 1239 (citation omitted). Jurisdiction can apply to parent-subsidiary relationships as well as relationships between members of a limited liability company and the company itself. *See id.* at 1241 (citations omitted). "[G]eneral agency principles apply when determining personal jurisdiction." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV-MARRA/Matthewman, 2017 WL 1832436, at *6 (S.D. Fla. May 8, 2017) (alteration added) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (per curiam)).

"In simple terms, agency may be defined as the relation which results where one person [or entity], called the principal, authorizes another, called the agent, to act for [it] with more or less discretionary power, in business dealings with third persons." *Econ. Research Analysts, Inc. v. Brennan*, 232 So. 2d 219, 221 (Fla. 4th DCA 1970) (alterations added; citation omitted). In the antitrust context, the test for finding an agency relationship is apparent authority. *See Am. Soc'y Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556, 565–66 (1982).

Apparent authority "arises where a principal allows or causes others to believe the agent possesses . . . authority [to act for the principal], as where the principal knowingly permits the agent to assume such authority or where the principal by his actions or words holds the agent out as possessing it." *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 31 (Fla. 2d DCA 2011) (alterations added; citation omitted). "However, that principle of law is qualified by the added principle that under some circumstances a party seeking to rely upon the representations of an agent may have a duty to inquire further." *Palafrugell Holdings, Inc. v. Cassel*, 940 So. 2d 492, 494 (Fla. 3d DCA 2006) (citation omitted). That duty can arise where an agent acts "facially contrary" to the interests of his principal. *Id.*

Plaintiffs also seek to extend jurisdiction to Conmebol based on its alleged co-conspirators acting and causing injury in Florida. The elements of civil conspiracy in Florida are: (1) an agreement between two or more parties (2) to do an unlawful act; (3) doing an overt act to further the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy. *See Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352–53 (S.D. Fla. 2016) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Florida's long-arm statute supports personal jurisdiction over an "alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over

whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009) (citations omitted) (citing cases); *see also Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582, 586 (Fla. 2000).

### D. Jurisdiction over Conmebol Under Florida Statute Section 48.193(1)(a)(2)

#### 1. Jurisdictional Allegations

As Plaintiffs bear the initial burden of pleading allegations sufficient to establish a prima facie case of specific jurisdiction over Conmebol, the Court turns to the Amended Complaint. The Amended Complaint raises five claims against Conmebol: conspiracy in restraint of trade in the Americas television rights market in violation of section 1 of the Sherman Act (Count III); conspiracy in restraint of trade in the U.S. television programming market in violation of section 1 of the Sherman Act (Count IV); conspiracy in restraint of trade in the U.S. television advertising airtime market in violation of section 1 of the Sherman Act (Count V); conspiracy to monopsonize the Americas television rights market in violation of section 2 of the Sherman Act (Count VIII); and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes section 501.201 *et seq.* (Count IX). (*See generally* Am. Compl.). Each count involves "tortious acts" under the Florida long-arm statute. (*See* Resp. 42 & n.17 (citing cases identifying antitrust, FDUTPA, and RICO claims as torts for the purposes of the Florida long-arm statute)).

Plaintiffs allege Conmebol actively participated in the scheme to trade money payments to Conmebol officials for exclusive television rights to broadcast the soccer tournaments. (*See generally* Am. Compl.). For instance, Conmebol, through its agents,[8] Eugenio Figueredo and

---

[8] Although Plaintiffs do not state they rely on an agency theory of personal jurisdiction over Conmebol, their Response makes clear they consider Conmebol is subject to jurisdiction in part based on the actions of its officials. (*See* Resp. 54–57).

Juan Angel Napout, communicated and traveled to and from Florida in furtherance of the tournament bribes. (*See id.* ¶ 45). Plaintiffs also allege Conmebol knew of and participated in a larger agreement among the Defendants to continue to provide kickbacks to Conmebol officials in exchange for Conmebol's awarding of broadcast rights for the tournaments to T&T Sports Marketing (*see id.* ¶ 46); and at least some of the Defendants acted in furtherance of this conspiracy in Florida (*see id.* ¶¶ 42–44).

These allegations set forth a prima facie case of specific jurisdiction under the "committing a tortious act" provisions of Florida's long-arm statute. The burden shifts to Conmebol to contradict Plaintiffs' jurisdictional allegations.

### 2. Conmebol's Evidence

In response to Plaintiffs' allegations, Conmebol offers evidence in support of its argument the long-arm statute's tortious activity provision does not apply to it because: Conmebol's contacts with the forum were insufficient to establish personal jurisdiction for itself; the acts of Conmebol officials cannot be imputed to Conmebol; and the alleged tortious acts of other Defendants in Florida cannot be ascribed to Conmebol.

Conmebol stresses it is a Paraguayan entity with no notable presence or activity, tortious or otherwise, in the United States[9] (*see* Mot. 21), and in any event, Plaintiffs' more general allegations of wrongdoing do not identify a wrong that occurred in Florida or the United States (*see id.* 28). Far from being a participant in the alleged wrongdoing, Conmebol states it was yet another victim of the bribery scheme perpetrated by its corrupt officials. (*See id.* 27). Its officials' involvement in the scheme "was secret and hidden from" Conmebol (*id.* 28), and their

---

[9] In defending against the allegation Conmebol operates, conducts, engages in, or carries on a business or business venture in Florida under section 48.193(1)(a)(1), Florida Statutes, Conmebol admits a "single informal lunch meeting [took place] in Miami, Florida in September 2014" (Mot. 22 (alteration added; citation omitted)), but it otherwise does not have any offices, employees or business activities in Florida, or a presence in the United States generally (*see id.* 20, 22).

actions pursuant to the scheme were done without Conmebol's authority (*see id.* 44–47). Relatedly, Conmebol denies the conspiracy allegations add anything to the jurisdictional analysis since Plaintiffs cannot allege Conmebol entered into any illicit agreement to defraud itself. (*See id.* 47–49). Because Conmebol cannot be held responsible for the tortious acts of its officials, it maintains it also cannot be held responsible for the tortious acts of parties who allegedly conspired with these officials. (*See id.* 48–49).

Plaintiffs' Response elaborates the alleged tortious activity in Florida that purportedly brings Conmebol within bounds of the long-arm statute, including: (1) telephone and email communications to Florida; (2) meetings in and travel to Florida, including a September 2014 meeting attended by Conmebol president Napout; (3) use of the banking system in Florida to pay bribes; (4) licensing broadcast rights to T&T Sports Marketing; (5) licensing broadcast rights to Fox; and (6) rejecting superior offers from Plaintiffs. (*See* Resp. 44–45 (citations omitted)).

Conmebol notes the first three tortious acts alleged by Plaintiffs — telephone and email communications to Florida, meetings and travel to Florida, and use of the banking system in Florida to pay bribes — are acts by Conmebol's agents which cannot be attributed to Conmebol itself. (*See* Reply 16–19). Conmebol disputes it can "be held responsible for the plainly unauthorized and adverse behavior of its faithless officials" through an agency-based theory of jurisdiction. (Mot. 45).

Conmebol's liability for the tortious actions of its agents, and therefore its ability to be subjected to specific personal jurisdiction for their acts, depends on whether the agents acted with apparent authority. Apparent authority would arise if Conmebol "allow[ed] or cause[d] others to believe the agent possesses . . . authority" to act for Conmebol in accepting bribes. *Jackson Hewitt, Inc.*, 100 So. 3d at 31–32 (alterations added; citation omitted).

Certainly, the Executive Committee's high-ranking members were imbued with authority to conduct certain business for Conmebol, but they were not authorized, and could not have been held out by Conmebol as authorized, to self-deal. *See Palafrugell Holdings*, 940 So. 2d at 494 (citation omitted).

In *Palafrugell Holdings*, a corporation sued its law firm for negligent disbursement of trust funds held for the corporation's benefit after the corporation purchased interest in a mortgage. *See* 940 So. 2d at 493. The trial court found the shareholder entrusted to consummate the transaction as the corporate agent acted with apparent authority when he instructed the law firm to prepare the assignment of mortgage in his own name and disburse the funds to him. *See id.* at 494. However, Florida's Third District Court of Appeal found the circumstances could have created a doubt in the mind of counsel and caused him to inquire further about the extent of the agent's authority. *See id.* (citation omitted). The court noted while the corporation had approved of the shareholder's role in the transaction, "it did not authorize [him] to self-deal." *Id.* (alteration added).

As in *Palafrugell Holdings*, the circumstances here — agents with apparent authority acting contrary to the interests of their principal — were "such as to put a reasonable person on inquiry." *Denton v. Good Way Oil 902 Corp.*, 48 So. 3d 103, 107 (Fla. 4th DCA 2010) (emphasis removed) (quoting *Stiles v. Gordon Land Co.*, 44 So. 2d 417, 421 (Fla. 1950)); *see also Palafrugell Holdings*, 940 So. 2d at 494 (citation omitted). There, as here, there is not a reasonable belief the agent possessed apparent authority where he/she, in self-dealing, was acting, not just for his/her own interest, but directly contrary to the interests of the principal. *See Palafrugell Holdings*, 940 So. 2d at 494 (citation omitted). Accordingly, the alleged tortious acts of Conmebol's agents cannot serve as a jurisdictional hook for Conmebol.

For related reasons, as Conmebol contends, Plaintiffs also cannot succeed in imputing Florida contacts to Conmebol through the acts of co-conspirators. Despite the fact Plaintiffs may have plead the elements of a conspiracy — an agreement to do an unlawful act; commission of an overt act to further the conspiracy; and damage to the plaintiff, *see Laterza*, 221 F. Supp. 3d at 1352–53 (citation omitted) — they have not alleged how Conmebol itself, separate from the acts of its officials, participated in the alleged conspiracy trading bribes for tournament broadcast rights. Additionally, and because Plaintiffs cannot attribute to Conmebol the acts of its agents, they also cannot extend jurisdiction to Conmebol by arguing it is responsible for the acts of co-conspirators who engaged in a conspiracy that only involved Conmebol's agents and not Conmebol itself.

Conmebol correctly notes none of the final three acts — licensing broadcast rights to T&T Sports Marketing, licensing rights to Fox, and rejecting superior offers from Plaintiffs — occurred in or were directed at Florida such as to bring Conmebol within the purview of the tortious activity provision of the long-arm statute. The licensing of worldwide broadcasting rights entailed a relinquishment of Conmebol's control over where broadcasts would be made, and therefore cannot support a finding Conmebol directed any conduct at Florida residents. (*See* Reply 19 (citation omitted)). Further, with respect to the rejection of Plaintiffs' offers, Conmebol correctly points out Plaintiffs have not alleged a tortious act supporting specific personal jurisdiction, as they provide no authority for the proposition mere rejection of an offer is a tort. (*See id.* 22–23).

Despite being afforded the opportunity to conduct jurisdictional discovery, Plaintiffs do not present additional arguments or evidence to bolster their original allegations related to Conmebol, and so the Court concludes Plaintiffs have not borne their ultimate burden of showing

personal jurisdiction can be based on these activities. Because Plaintiffs have not met the requirements of the long-arm statute, the Court does not determine whether exercising personal jurisdiction over Conmebol would comport with due process.

### E. Jurisdiction over Full Play Under Florida Statute Section 48.193(1)(a)(2)

#### 1. Jurisdictional Allegations

The Amended Complaint raises seven claims against Full Play: civil RICO under 18 U.S.C. section 1962(c) (Count I); civil RICO conspiracy under 18 U.S.C. section 1962(d) (Count II); conspiracy in restraint of trade in the Americas television rights market in violation of section 1 of the Sherman Act (Count III); conspiracy in restraint of trade in the U.S. television programming market in violation of section 1 of the Sherman Act (Count IV); conspiracy in restraint of trade in the U.S. television advertising airtime market in violation of section 1 of the Sherman Act (Count V); conspiracy to monopsonize the Americas television rights market in violation of Section 2 of the Sherman Act (Count VIII); and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes section 501.201 *et seq.* (Count IX). (*See generally* Am. Compl.).

Plaintiffs state specific jurisdiction exists over Full Play because its owners, the Jinkises, engaged in communications and traveled to and from Florida to further bribe schemes to pay off Conmebol officials in exchange for T&T Sports Marketing's securing of tournament broadcast rights. (*See id.* ¶ 44). For instance, citing the Superseding Indictment, Plaintiffs identify a South Florida meeting in which the Jinkises met with Burzaco and another individual to discuss the payment of bribes. (*See id.* (citing Superseding Indictment ¶ 360)). Plaintiffs' allegations as to Full Play seek to impute to the corporation the acts and jurisdictional contacts of the Jinkises.

Additionally, as with Conmebol, Plaintiffs also allege Full Play has contacts imputed to it by co-conspirators' actions in Florida.  (*See id.* ¶ 46).

### 2.  Full Play's Evidence and Plaintiffs' Reply

The burden shifts to Full Play upon Plaintiffs' prima facie showing jurisdiction exists under the tortious activity provision of the long-arm statute.  In this regard, Full Play correctly observes Plaintiffs have not alleged Full Play itself committed any tort in Florida, apparently relying on the conduct of the Full Play owners, the Jinkises.  (*See* Mot. 50).  Full Play faults the Plaintiffs for "ignor[ing] the corporate form" (*id.* (alteration added)), by alleging in conclusory fashion the Jinkises were agents or principals of Full Play, without alleging their "high and very significant amount of control" over the corporation (*id.* 51 (internal quotation marks and citation omitted)).  Full Play misstates the law.

As discussed, and contrary to Full Play's characterizations (*see id.* 50–54), the test for determining whether the Jinkises were agents capable of binding their corporation is apparent authority, not control.[10]  *See Am. Soc'y Mech. Eng'rs*, 456 U.S. at 565–66; *Jackson Hewitt, Inc.*, 100 So. 3d at 31 (alterations added; citation omitted).  As such, Plaintiffs' failure to allege the Jinkises exercised "high and significant control" over Full Play is immaterial.

That the Jinkises were committing intentional torts or illegal acts is also not an impediment to finding they were acting as Full Play's agents: "a corporation may be held criminally responsible for illegal acts of its employees if the acts are (a) related to and committed within the course of employment, (b) committed in furtherance of the business of the

---

[10] Although the parties to not discuss direct liability, a corporation may be found directly liable for the acts of managing officers.  *See Schropp v. Crown Eurocars, Inc.*, 654 So.2d 1158, 1160–61 (Fla. 1995) (recognizing corporation may be held directly liable for punitive damages based on intentional acts of a managing agent or person holding a policy-making position).  Direct liability–based jurisdiction cannot exist over Full Play for the Jinkises' actions for the torts alleged in the Amended Complaint for the same reason agency-based liability fails: Plaintiffs' allegations do not link the Jinkises' actions to the torts alleged in the Amended Complaint, to Full Play's involvement in those torts, and/or to a Florida contact.

corporation, [or] (c) authorized or acquiesced in by the corporation." *State v. Mun. Auto Sales, Inc.*, 222 So. 2d 278, 279 (Fla. 3d DCA 1969) (alteration added; citations omitted); *see also Canto v. J.B. Ivey & Co.*, 595 So. 2d 1025, 1028 (Fla. 1st DCA 1992) ("[A]n employer is liable for intentional acts of an employee when the employee is acting within the scope of the employer's apparent authority, even if the employer did not permit or otherwise authorize the act, or it was not necessary or appropriate to serve the interest of the employer." (alteration added) (citing *Dieas v. Assocs. Loan Co.*, 99 So. 2d 279, 280–81 (Fla. 1957) (other citations omitted)).

Plaintiffs allege the Jinkises are Full Play's "controlling principals" and "agents" (Am. Compl. ¶¶ 31, 44), but otherwise do not provide specifics regarding Full Play's corporate structure or who possesses decision-making authority within the company. In certain circumstances, a purported agent's status as a company's owner, manager, or president is insufficient to automatically conclude he or she possessed apparent authority. *See Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000) (determining president of corporation did not act with apparent authority where record did not support president's authority to sell assets and bylaws indicated only board of directors had such authority).

Nevertheless, "[a]s to acts in the ordinary course of business, courts have consistently recognized that a presumption of authority exists in the case of acts made or done by presidents." *Cambridge Credit Counseling Corp. v. 7100 Fairway, LLC*, 993 So. 2d 86, 90 (Fla. 4th DCA 2008) (alteration added, citation omitted); *see also Pan-American Constr. Co. v. Searcy*, 84 So. 2d 540, 544 (Fla. 1955) ("We have held that in a proper case the signature of the president of a corporation may bind the corporation, under the doctrine of inherent powers." (citations

omitted)); *Prezioso v. Cameron*, 559 So. 2d 423, 424 (Fla. 4th DCA 1990) (determining, in the context of a mortgage transaction and interpreting relevant section of the Florida Statutes, "the officers of a corporation are vested with apparent authority to conduct the corporation's business"). Assuming this presumption extends to officials of similar status, the Jinkises' actions as owners to secure broadcast rights for Full Play would have been done with apparent authority.

Full Play states even if the Jinksises can be considered Full Play's agents acting with apparent authority, Plaintiffs have not alleged the Jinkises committed any torts in Florida and on behalf of Full Play. (*See* Reply 32–34). Full Play notes the Amended Complaint and Superseding Indictment cited in it only support the contention the Jinkises attended a Miami meeting as representatives of two other non-party entities. (*See* Mot. 52 (first citing Am. Compl. ¶¶ 102, 104; then citing Superseding Indictment ¶ 360)). Further, Full Play cites evidence indicating the only tournaments discussed at that meeting were the Copa América and Copa Centerario, not any of the three tournaments that are the subject of the Amended Complaint. (*See id.* 53 (first citing Superseding Indictment ¶¶ 341–61; then citing Deferred Prosecution Agreement [ECF No. 78-4] ¶¶ 20, 26, 39–42; *see also* Am. Compl. ¶¶ 3, 56 (discussing only the Copa Sudamerica, Copa Libertadores, and Recopa Sudamerica)).

While the Superseding Indictment does identify fraudulent activity conducted by the Jinkises on behalf of Full Play (*see* Superseding Indictment ¶¶ 115, 125, 306, 345), this activity is either unrelated to the tortious activity Plaintiffs complain of — for instance, it relates to tournaments not mentioned in the Amended Complaint — or the activity lacks contacts with Florida — in other words, the tortious activity occurred outside the forum.

Plaintiffs have not presented affidavits or legal authority to rebut Full Play's evidence and substantiate their original jurisdictional allegations. Full Play has presented competent

arguments for why the long-arm statute is inapplicable, and so the Court cannot conclude it possesses personal jurisdiction over Full Play. As with Conmebol, the Court does not conduct the due process analysis since Plaintiffs cannot satisfy the first step of the personal jurisdiction inquiry.

### F. Jurisdiction over Conmebol and Full Play Under Rule 4(k)(2)

The final, alternative basis[11] Plaintiffs assert for exercising jurisdiction over Conmebol and Full Play — Federal Rule of Civil Procedure 4(k)(2) (*see* Am. Compl. ¶ 50) — is similarly unavailing. Rule 4(k)(2) provides serving a summons for a claim arising under federal law establishes jurisdiction over a defendant if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2).

The exercise of personal jurisdiction is consistent with the Constitution if it comports with due process, that is, if the non-resident defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (internal quotation marks omitted) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In cases where Rule 4(k) is invoked, the relevant forum for the minimum contacts analysis is the United States as a whole. *See id.*

"To permit the exercise of specific jurisdiction, there must first exist some act by which the defendant purposefully avails itself of the privilege of conducting activities within the

---

[11] Plaintiffs also allege personal jurisdiction over Conmebol is proper for antitrust claims under 15 U.S.C. section 22. (*See* Am. Compl. ¶ 49). Conmebol contested this ground for jurisdiction in the Motion (*see* Mot. 35–36), but Plaintiffs did not address Conmebol's argument in their Response (*see* Reply 7). The Court deems Plaintiffs have abandoned this basis for jurisdiction and does not discuss jurisdiction under section 22.

forum . . . .  Secondly, the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Id.* (alteration added; citations, internal quotation marks, and footnote call number omitted).  In conducting this analysis, the Court's "inquiry must focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'" *Id.* at 1222 (citation omitted).  "Necessarily, the contact must be a 'but-for' cause of the tort[.]" *Id.* at 1222–23 (alteration added; citations omitted).

Nearly all of Plaintiffs' claims as to Conmebol and Full Play arise under federal law,[12] and so the Court turns to whether exercising jurisdiction over the federal claims under Rule 4(k)(2) is consistent with due process.

With regard to Conmebol, Plaintiffs identify the following nationwide contacts: telephone and email communications in furtherance of the bribery scheme to Fox CEO Hernan Lopez in California; instructions to co-conspirators to transfer funds to New York bank accounts; and delivery of broadcast rights to Fox for exploitation throughout the United States.  (*See* Resp. 65–66).  The Court has already determined Conmebol's officials' actions associated with the bribery scheme cannot be attributed to Conmebol, and so the identified contacts cannot support exercising jurisdiction.  Conmebol's general contacts with the United States not associated with the bribery — Conmebol's business relationship and communications with Fox in the United States — also cannot support jurisdiction because they cannot be said to be the but-for cause of the torts and injuries alleged in the Amended Complaint.

With regard to Full Play's nationwide contacts, Plaintiffs point to Full Play's exploitation of the New York banking system and its communications and meetings in Florida to assert jurisdiction under Rule 4(k).  (*See* Resp. 74).  The communications with and meetings in Florida

---

[12] Given its determination it does not have Rule 4(k) jurisdiction over the related federal claims, the Court does not decide whether the state law FDUTPA claim is one arising under federal law or involving substantial questions of federal law for purposes of Rule 4(k).

are insufficient to confer jurisdiction under Rule 4(k) for the same reasons they were insufficient under the Florida long-arm statute: the Superseding Indictment only supports the proposition the Full Play principals, the Jinkises, attended meetings and communicated with Florida *on behalf of two non-party entities* regarding tournaments *other than those named in the Amended Complaint*. (*See* Superseding Indictment ¶¶ 115, 125, 306, 340–61). Because these Florida contacts do not relate to or give rise to the specific torts discussed in the Amended Complaint, they cannot support the exercise of personal jurisdiction over Full Play. *See Oldfield*, 558 F.3d at 1220 (alteration added; citations omitted).

Similarly, Full Play's purported use of New York or American bank accounts alone is insufficient to confer jurisdiction. The Amended Complaint indicates bribe payments were wired to "Full Play-affiliated bank accounts" controlled by the Jinkises (Am. Comp. ¶ 76), but Plaintiffs otherwise do not set forth evidence showing Full Play — as opposed to an "affiliate" — controlled the bank accounts. Full Play's ill-defined affiliation to entities utilizing the U.S. banking system does not provide a sufficient causal nexus between the alleged torts and Full Play's contact such that Full Play itself (instead of, say, the Jinkises) had "fair warning that a particular activity will subject [it] to the jurisdiction of [the United States.]" *Oldfield*, 558 F.3d at 1223 (first alteration in original; citations and internal quotation marks omitted).

### III.  VENUE

Burzaco seeks to dismiss the Amended Complaint for improper venue or, in the alternative, to transfer the suit to the Eastern District of New York under 28 U.S.C. section 1404(a). The Court considers Burzaco's two arguments in turn.

### A. *Forum Non Conveniens*

#### 1. Legal Authority

A motion seeking dismissal of an action based upon the doctrine of *forum non conveniens* is to be evaluated by the Court as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Meier*, 288 F.3d at 1276. To obtain a dismissal under the doctrine, a defendant must demonstrate: (1) an adequate alternative forum is available; (2) public and private factors weigh in favor of dismissal; and (3) Plaintiff can reinstate his suit in the alternative forum without undue inconvenience and prejudice. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001).

The Court may consider matters outside the pleadings, such as affidavit testimony, "particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (citing *Thomas v. Rehab. Serv. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1376 (M.D. Ga. 1999)), but "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citations omitted). Because a plaintiff's choice of forum is entitled to deference, the defendant "invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

#### 2. Analysis

Burzaco contends venue is improper in the Southern District of Florida given: "[m]ost of the conduct described by the Plaintiffs . . . occurred and is being prosecuted outside of this jurisdiction[,]" in the Eastern District of New York (Mot. 70 (alterations added)); other

Defendants and potential witnesses and evidence are primarily located in the E.D.N.Y. (*see id.*); and Burzaco's travel is restricted to the E.D.N.Y and surrounding areas (*see id.* 71 (citations omitted)). For these reasons, Burzaco asserts venue is proper in the E.D.N.Y. and the case in this District should be dismissed. The Court addresses the three *forum non conveniens* factors: adequacy and availability of an alternative; public and private factors weighing in favor of dismissal; and Plaintiffs' ability to reinstate the suit in the alternative forum without undue inconvenience and prejudice.

### a. Adequacy and Availability of the Eastern District of New York

An "adequate and available" forum is one in which the court "can assert jurisdiction over the litigation (availability), cognizant that only in rare circumstances will the remedy offered by the other forum be clearly unsatisfactory (adequacy)." *Karl v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 13-24051-CIV, 2014 WL 11906608, at *2 (S.D. Fla. Feb. 21, 2014) (citing *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009)). The other forum must "possess[] jurisdiction over the whole case, including all of the parties." *Wilson*, 590 F.3d at 1269 (alteration added; citation omitted). This prong is satisfied if the defendant is amenable to process in the other forum. *See Aldana*, 578 F.3d at 1290 (citation omitted).

Burzaco indicates he has already stipulated to the jurisdiction of the E.D.N.Y. as part of the parallel criminal proceeding. (*See* Mot. 76). Yet, Plaintiffs point out – and Burzaco does not account for – the fact 13 other Defendants are potentially not subject to service of process or to the jurisdiction of the E.D.N.Y. (*See* Resp. 75). Courts frequently deny motions to dismiss where the party seeking the change in venue does not make any showing the alternative forum would have jurisdiction over all parties. *See, e.g., Rodriguez v. Ocean Motion Watersports, Ltd.*,

No. 13-21606-CIV, 2014 WL 11880982, at *3 (S.D. Fla. Mar. 11, 2014) (denying motion to dismiss for *forum non conveniens* where solitary moving defendant did not show three other co-defendants were subject to jurisdiction in foreign forum beyond asserting the defendants are all domiciled in the foreign forum and the foreign forum will have jurisdiction). Burzaco has not shown the E.D.N.Y. would have jurisdiction over all parties. While he mentions his stipulation to jurisdiction in the criminal case, he does not and cannot do the same for several of the Defendants here, who are not named in the Superseding Indictment.[13]

Regarding adequacy, the Court assumes another U.S. district court is an adequate forum and would provide a satisfactory remedy.

### b. Private and Public Interest Factors

In considering all relevant factors of private interest, the Court "weigh[s] in the balance a strong presumption against disturbing the plaintiffs' initial forum choice." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (alteration added) (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 78–85 (D.C. Cir. 1980)). Private interest factors include relative ease of access to sources of proof, availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, other practical problems that make trial easy and expeditious, and the enforceability of any judgment obtained. *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381 (11th Cir. 2009) (per curiam) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

In attempting to demonstrate private interest factors weigh in his favor, Burzaco notes: many witnesses are located in the New York area and many parties to the action, including

---

[13] Burzaco states the Court could compel the parties to accept service in an order transferring venue to the E.D.N.Y., as it compelled Burzaco to accept service here. (*See* Reply 43 n.20). The Court declines to pursue this strategy given its analysis of the remaining *forum non conveniens* factors.

Burzaco, are restricted from travel outside New York and the surrounding area. (*See* Mot. 74). Burzaco acknowledges some of these witnesses can be made to testify, but states "obtaining evidence from them involves costs and logistical complications that would be avoided if this matter were brought in the E.D.N.Y." (*Id.*). Burzaco also implicitly concedes the parties under travel restrictions could seek E.D.N.Y authorization to travel to this District, albeit while "expending legal and judicial resources that would be unnecessary if this matter were pending in the E.D.N.Y." (*Id.*). While "perhaps the most important 'private interest' of the litigants is access to evidence," *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1375 (S.D. Fla. 2013) (citation omitted), the fact it might be slightly more convenient to access evidence in the E.D.N.Y. does not suggest a lack of access to evidence in this District. Nevertheless, given many parties' and witnesses' locations, the Court proceeds to consider the public interest factors.

If the Court finds the balance of private interests to be even or near even, it must then determine whether factors of public interest tip the balance in favor of a trial in an alternative forum. *See La Seguridad*, 707 F.2d at 1307 (citation omitted). Public interest factors include: administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin, the burdens of jury duty on people of a community having little relation to the litigation, the local interest in having localized controversies decided at home, and the appropriateness of having trial in a forum at home with the law to be applied rather than having the court "untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp.*, 330 U.S. at 509; *see also Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1061 (11th Cir. 2009) (citation omitted). The factors are not exhaustive, and courts are free to be flexible in responding to cases as they are presented. *See King*, 562 F.3d at 1381–82 (citation omitted).

Burzaco states "there is comparatively little nexus between Plaintiffs' allegations and the Southern District as opposed to the E.D.N.Y.," and maintaining the criminal and civil actions in separate federal districts "lends itself to scheduling conflicts and substantial duplication of efforts," which would needlessly expend judicial resources. (Mot. 75). He points to the already progressed status of the criminal case as compared to the current one, which is still in its preliminary stages. (*See id.*).

Burzaco correctly states the deference usually afforded to the plaintiff's choice of forum is diminished where the locus of operative facts lies elsewhere and other factors tip in favor of another venue. (*See* Reply 45). Burzaco points out "the operative facts happened, in just about every sense, somewhere other than here" (*id.*), but, as even he recognizes, Plaintiffs' allegations "are the subject of one of the most far-reaching, cross-border prosecutions undertaken by the U.S. Department of Justice in the last decade" (Mot. 70) — such that there is no one locus of operative facts. While the "locus *of judicial decision-making* relevant to that prosecution" has been the E.D.N.Y. (*id.* (emphasis added)), and E.D.N.Y. prosecutors have "gathered the facts relevant to Plaintiffs' allegations all over the world" (*id.* 71 (footnote call number omitted)), the Court does not find the public interest factors weigh on the side of dismissing in favor of the E.D.N.Y.

Considering the remaining factors, the Court observes neither the E.D.N.Y. nor the Southern District must contend with obvious conflict-of-law or foreign law issues. The Court does not have reason to believe the E.D.N.Y. is any more congested than this District. Burzaco has not shown South Florida jurors will be more burdened than an E.D.N.Y. jury with an unwieldy litigation featuring multiple parties and allegations of wrongdoing spanning multiple continents. The local interest in deciding this conflict is not obviously greater in the E.D.N.Y.,

apart from the fact the prosecution is taking place there. In short, the private and public interest factors are not so strongly in favor of litigation in the E.D.N.Y. that the Court is persuaded it should disturb Plaintiffs' original choice of forum. Dismissing here so Plaintiffs can reinstate the case in New York merely shifts the inconveniences from Burzaco to Plaintiffs.

### c. Plaintiffs' Ability to Reinstate Suit Without Inconvenience

The final consideration in the *forum non conveniens* analysis is whether Plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice. Conditions ensuring a suit can be reinstated in a different forum without undue inconvenience or prejudice "should include [the] [d]efendant's waiver of any defenses related to the statutes of limitation, venue,[] or jurisdiction" in the alternate forum. *Barilotti v. Island Hotel Co.*, No. 13-23672-CIV-MORENO, 2014 WL 1803374, at *10 (S.D. Fla. May 6, 2014) (alterations added; citation omitted); (*see also* Mot. 76).

Burzaco states he has already stipulated to the jurisdiction of the E.D.N.Y. in the criminal action and because Plaintiffs have alleged multiple violations of New York law, "this factor is satisfied and dismissal is warranted." (Mot. 76). The Court cannot agree.

As Plaintiffs note, absent indications the other Defendants consent to accept service or waive jurisdictional defenses, Plaintiffs are again faced with the possibility of "completing service outside of the United States, and, potentially, with a second round of jurisdictional motions and discovery." (Resp. 77 (footnote call number omitted)). Many cases dismissing suits for improper venue within this District frequently do so when the defendant or defendants assent to the jurisdiction in the forum where transfer is sought. *See, e.g.*, *Barilotti*, 2014 WL 1803374, at *10; *Montgomery*, 945 F. Supp. 2d at 1378. Absent that condition, the Court declines to find dismissal or transfer to the E.D.N.Y. would not result in inconvenience or

prejudice for Plaintiffs. Accordingly, this factor – like the availability and adequacy factor and the weighing of private and public interest concerns – does not compel dismissal.

### B. Transfer Under 28 U.S.C. Section 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Courts have broad discretion 'to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness.'" *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-CIV, 2016 WL 1546427, at *1 (S.D. Fla. Apr. 15, 2016) (internal quotation marks omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (other citation omitted).

Courts should consider at least the following private and public interest factors in weighting whether transfer to an alternative forum is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *2 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)) (other citation omitted).

This analysis implicates essentially the same considerations and weighing of factors as the Court has just completed on the request for dismissal on the basis of improper venue. The Court rejected Burzaco's arguments on that attack. Given its analysis, and again mindful of the high burden in disturbing a plaintiff's choice of forum, the Court declines to transfer the suit to the E.D.N.Y.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 203]** is **GRANTED in part** and **DENIED in part** as follows:

1.   Defendant, Conmebol's Motion to Dismiss is **GRANTED**.

2.   Defendant, Full Play's Motion to Dismiss is **GRANTED**.

3.   Defendant, Burzaco's Motion to Dismiss is **DENIED**.

Any remaining Defendants wishing to challenge the Amended Complaint regarding the sufficiency of its allegations shall file a single, consolidated motion to dismiss the Amended Complaint [ECF No. 78] no later than **October 10, 2017**.

**DONE AND ORDERED** in Miami, Florida this 19th day of September, 2017.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record