## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 1:16-cv-24431-Altonaga/McAliley

GOLTV, INC., and GLOBAL SPORTS
PARTNERS LLP,

       Plaintiffs,

    -v.-

FOX SPORTS LATIN AMERICA, LTD., PAN
AMERICAN SPORTS ENTERPRISES
COMPANY, d/b/a FOX SPORTS LATIN
AMERICA (individually and as successor to FOX
PAN AMERICAN SPORTS LLC), FOX
INTERNATIONAL CHANNELS (US), INC.,
FOX NETWORKS GROUP, INC. (as successor to
FOX INTERNATIONAL CHANNELS (US),
INC.), CARLOS MARTINEZ, HERNAN LOPEZ,
JAMES GANLEY, T&T SPORTS MARKETING
LTD., TORNEOS Y COMPETENCIAS, S.A.,
ALEJANDRO BURZACO, FULL PLAY GROUP
S.A., CONFEDERACION SUDAMERICANA
DE FUTBOL, d/b/a CONMEBOL, EUGENIO
FIGUEREDO, and JUAN ANGEL NAPOUT,

       Defendants.

## CERTAIN DEFENDANTS' MOTION FOR ISSUANCE OF LETTERS ROGATORY AND SUPPORTING MEMORANDUM OF LAW

Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company,

Fox International Channels (US) Inc., Fox Networks Group, Inc. (collectively, "Fox") and

Torneos y Competencias S.A. ("Torneos"), by counsel, respectfully move this Court, pursuant to

28 U.S.C. § 1781 and this Court's inherent authority, for an order issuing the accompanying

Letters Rogatory to the Appropriate Authority of the Oriental Republic of Uruguay to compel the

production of documents from the following Uruguay-based individual and entities: (1) Eugenio

Figueredo, (2) Asociación Uruguaya de Fútbol, (3) Tenfield S.A., and (4) Full Play Group S.A. These entities and individual are likely to possess discoverable, relevant, non-privileged information that Fox and Torneos may use to support their defenses.  Fox and Torneos therefore respectfully request that the Court grant this motion and issue the attached Letters Rogatory.

## BACKGROUND

Plaintiffs GolTV, Inc. and Global Sports Partners LLP filed this action in October 2016, alleging that Defendants engaged in a bribery scheme to ensure that Defendant T&T Sports Marketing Limited ("T&T") would secure television rights to three soccer tournaments organized by the Confederación Sudamericana de Fútbol ("Conmebol"), a Paraguay-based association of South American soccer federations: the Copa Libertadores, Copa Sudamericana, and Recopa Sudamericana (collectively, the "Club Tournaments").  What follows are brief descriptions of the individual and entities from whom Fox and Torneos seek documents, as well as the Letters Rogatory Fox and Torneos are seeking, and Plaintiffs' position as to those letters.

### A.     Eugenio Figueredo

Plaintiffs allege that Defendant Eugenio Figueredo, a former president of Conmebol, was a recipient of the alleged bribes.  2d Am. Compl. ¶¶ 33, 62, 69.  Figueredo has not made an appearance in this case, and a Clerk's Entry of Default was entered on November 7, 2017.  [ECF No. 275].  Plaintiffs cite to Figueredo's alleged testimony in a Uruguay proceeding to support their claims.  2d Am. Compl. ¶¶ 10, 79 (hereinafter, the "Uruguayan Criminal Complaint").

### B.     Asociación Uruguaya de Fútbol

Plaintiffs allege that Conmebol member associations and affiliated soccer clubs were injured by the alleged bribery scheme.  2d Am. Compl. ¶ 143.  Among those member associations is the national soccer association of Uruguay, *id.* ¶ 32, formally known as the Asociación Uruguaya de Fútbol ("AUF").  Figueredo is a former president of the AUF.

2

### C.     Tenfield

Plaintiffs claim the alleged scheme thwarted offers by Plaintiff Global Sports, a Uruguay-based partnership, to acquire the worldwide broadcasting rights for the Club Tournaments, and that Plaintiff GolTV, in turn, allegedly was unable to purchase the U.S. portion of those rights from Global Sports.  2d Am. Compl. ¶¶ 12, 16.  Plaintiffs' owners also own Tenfield S.A. ("Tenfield").  *Id.* ¶ 15.  The Second Amended Complaint also notes that GolTV, "[t]ogether with Tenfield . . . [,] is part of one of the major soccer telecasting groups in the Americas and can draw on its combined resources." *Id.* ¶ 109.

### D.     Full Play Group S.A.

Plaintiffs allege that former defendant Full Play Group S.A. ("Full Play"), a Uruguayan company, was used "to facilitate the payment of bribes and kickbacks to Conmebol officials." 2d Am. Compl. ¶ 72.[1]  Specifically, bribes allegedly were paid through intermediaries "associated with" Full Play, who "funnel[led] the payments to Conmebol officials."  *Id.* ¶ 101; *see also id.* ¶¶ 102–105.

### E.     Letters Rogatory Sought, and Plaintiffs' Position

Attached to the Letters Rogatory are the specific document requests that Fox and Torneos wish to serve upon Figueredo (Schedule A), the AUF (Schedule B), Tenfield (Schedule C), and Full Play (Schedule D).  As to each of these third parties, Fox and Torneos seek documents that fall into the following general categories: (1) documents and communications about bribes paid by Plaintiffs or Tenfield to AUF or Conmebol officials; (2) contracts between or among any of

---

[1] In its September 19, 2017 Order, the Court dismissed all claims against Full Play for lack of personal jurisdiction.  *See* ECF No. 238.  If Full Play had not been dismissed for jurisdictional reasons, it would still be a party to this action and subject to the jurisdiction of the Court. Plaintiffs, by naming Full Play as a defendant, concede that Full Play's documents are central to the litigation.

Figueredo, the AUF, Full Play, and Plaintiffs; and contracts between Tenfield and the AUF; (3) documents or communications with Plaintiffs related to this action; and (4) documents or communications related to the Uruguay Criminal Complaint.  In addition, Fox and Torneos seek from Figueredo documents and communications related to a reported payment from Figueredo's family to a Swiss bank account in or around February 2014.

Fox and Torneos met and conferred with Plaintiffs to obtain their position on this motion. Plaintiffs oppose the requests concerning the payment of bribes as not relevant to the extent they relate to bribery of AUF officials (though Plaintiffs do not oppose these requests to the extent they relate to Conmebol officials).  And Plaintiffs oppose the requests for contracts as not relevant.  Plaintiffs do not oppose the requests concerning this action or the Uruguayan Criminal Complaint.

**ARGUMENT**

Letters Rogatory are formal requests from a U.S. court in which an action is pending to a court of another country to perform a judicial act, such as ordering the provision of evidence located in the foreign country.  *See* 22 C.F.R. § 92.54; 28 U.S.C. 1781(b)(2); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015).  Federal courts have authority to issue Letters Rogatory in civil and criminal cases, and the decision whether to issue such letters lies within the discretion of the court.  *See* 28 U.S.C. § 1781(b); *Yellow Pages*, 795 F.3d at 1273; *Barboza v. Drummond Co., Inc.*, No. 06-61527-CIV, 2007 WL 8025825, at *4 (S.D. Fla. July 17, 2007).  In considering the issuance of Letters Rogatory, U.S. District Courts apply the discovery principles provided by Federal Rule of Civil Procedure 26.  *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012).

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discover outweighs the likely benefit." Fed. R. Civ. Proc. 26(b)(1). "Relevancy is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Kennedy v. McKnight*, Case No. 17-14041-CIV-MARTINEZ/MAYNARD, 2017 WL 4654446, at *1 (S.D. Fla. Oct. 17, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 451 (1978)). "Courts are required to accord discovery a broad and liberal scope." *Id.* If "there is doubt over relevancy" then "discovery should still be permitted." *Id.*

As the proposed requests to Figueredo (Schedule A), the AUF (Schedule B), Tenfield (Schedule C), and Full Play (Schedule D) demonstrate, the discovery requested from these parties is relevant to the defenses in this litigation, and the requests are tailored to avoid undue burden.

### A.    The Document Requests Seek Relevant Information.

### 1.    Plaintiffs' bribes of AUF officials

Bribery of South American soccer officials is the central allegation in Plaintiffs' lawsuit against Defendants. But in claiming it was Defendants who engaged in such bribery, Plaintiffs ignore the wealth of public reporting that they themselves engaged in that precise conduct, aimed at those precise officials. At least two full-length books describe the questionable influence Plaintiffs' principal owner, Francisco "Paco" Casal, has exercised over Uruguayan soccer clubs and officials—and in particular, over Defendant Eugenio Figueredo. *See* Bardanca, Maro, *Yo,*

*Paco: Un antes y un después en el fútbol uruguayo* (Uruguay, Penguin Random House, 3d ed. 2016); Muñoz, Diego and Emiliano Zecca, *Figueredo, a la sombra del poder* (Montevideo, Penguin Random House, 2016).  There are specific allegations that Casal bribed Figueredo while Figueredo was president of the AUF, a Conmebol member association, in order to obtain the broadcast rights to AUF matches in 1998 and, later, to retain and expand those rights.  *See, e.g.*, Vigen Aff. Ex. 1.  Specifically, a former Uruguayan soccer official stated that Figueredo was given a bribe of 10% of the total contract amount.  *Id.* at 2. More recently, Casal has been embroiled in controversy over the rights to sponsor the AUF national team jersey, which he apparently controlled.  The AUF initially chose a bid from Puma despite a bid from Nike that was four times higher, amid allegations that some clubs did so "because they owe[d] favors to Tenfield."  *See id.* Ex. 2.  This dispute caused the Uruguayan national soccer team to threaten to boycott a World Cup qualifying match unless Nike's bid was considered.  *See id.*

Plaintiffs' own alleged bribery of AUF officials, including but not limited to Figueredo, is relevant for a number of reasons, as discussed below.

### a.     *In Pari Delicto* **and Unclean Hands**

First, as Magistrate Judge McAliley found, *see* ECF No. 361, Plaintiffs' own alleged bribery of the AUF is relevant to the affirmative defenses of *in pari delicto* and unclean hands, asserted by both Fox [ECF No. 336 at 55] and Torneos [ECF No. 340 at 55].[2]  Magistrate Judge McAliley overruled Plaintiffs' relevancy objection to Fox's requests for production of documents concerning payments to, among others, AUF officials, finding that "the documents requested are relevant to the Fox Defendants' affirmative defenses of *in pari delicto* and unclean

---

[2] On April 24, 2018, this Court denied without prejudice Plaintiffs' attempt to strike these affirmative defenses (among others), finding "the defenses do not unreasonably expand the ongoing discovery and case preparation."  [ECF No. 356.]

hands." [Dkt. 361 at ¶ 2]. The discovery Fox and Torneos now seek from the AUF and Figueredo in the proposed Letters Rogatory is the same type of discovery Magistrate Judge McAliley already ruled is relevant to Fox and Torneos's affirmative defenses, and ordered produced by Plaintiffs.

### b.       404(b) and Causation

Second, Plaintiffs' alleged bribery of AUF officials is admissible to show, among other things, that Plaintiffs intended to bribe Conmebol officials when they made their alleged offers to Conmebol for the rights. Bribery of AUF officials is "[e]vidence of a . . . wrong[] or other act" that is "admissible . . . [to] prov[e] . . . opportunity, intent, preparation, plan, [or] knowledge." Fed. R. Evid. 404(b). Fox and Torneos should be permitted to develop evidence to support their argument that Plaintiffs intended to bribe Conmebol for the rights at issue in this lawsuit. Not only would such evidence support Fox's and Torneos's affirmative defenses of *in pari delicto* and unclean hands for the reasons described above, it would also undermine Plaintiffs' claim of causation. As the Court has recognized, Plaintiffs' claims rely on their having "allege[d] the relative certainty of their winning the bids for the Club Tournament television rights in the absence of Defendants' wrongdoing." Order at 21 [ECF No. 293]. Defendants should be permitted to demonstrate that Plaintiffs also offered bribes to Conmebol, yet still had their alleged offers rejected, demonstrating that alleged bribery on the part of Defendants is not the reason Conmebol opted not to award the rights at issue to Plaintiffs. Plaintiffs cannot claim that alleged bribery by Defendants was the *sine qua non* of their failure to win the rights, while preventing Defendants from adducing the evidence that directly contradicts that theory.

### c.       Business Reputation and Causation

Third, evidence of Plaintiffs' bribery of AUF officials is also relevant to Plaintiffs' business reputation, and therefore is relevant to Plaintiffs' claim of causation in another respect.

Plaintiffs' bribery of AUF officials bears upon whether Conmebol would have consented to do business with Plaintiffs in a "but-for" world in which Defendants' alleged bribery did not occur. If Conmebol in a "but-for" world was aware of Plaintiffs' bribery of soccer officials, then Conmebol would not have awarded Plaintiffs the Club Tournament rights. Plaintiffs do not appear to quibble with the relevance of this line of inquiry (they have agreed to produce discovery regarding any and all bribes to Conmebol officials), but instead assert that evidence showing that Plaintiffs bribed AUF officials would not prove that Conmebol was aware of such bribes. That argument confuses the standard for discoverability with the standard for sufficiency of evidence: Defendants certainly are entitled to prove Conmebol was aware of Plaintiffs' bribery of AUF officials by first proving that such bribery occurred. *See Kennedy*, 2017 WL 4654446, at *1 ("Relevancy is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" (quoting *Oppenheimer*, 437 U.S. at 451)). At a minimum, evidence of Plaintiffs' bribery of AUF officials "reasonably could lead to" evidence regarding Conmebol's awareness of such bribery. *Id.* In any event, evidence that Plaintiffs bribed Figueredo as an AUF official *is* evidence of Conmebol's awareness, since Figueredo, as President of the AUF, also was the AUF's voting representative at Conmebol.

To illustrate this point, the Conmebol officials' potential awareness that Plaintiffs bribed AUF officials, among others, could be why Plaintiffs were unsuccessful in bidding for the Club Tournament broadcast rights in 2015, even after Defendants' alleged bribery scheme ended. After the U.S. Department of Justice unsealed its original indictment in May 2015, Conmebol wanted "a clean break and a fresh start" and sought to assign the Club Tournament rights pursuant to a contract free from any "alleged[] taint[]." *See* Conmebol Mot. Dismiss (ECF No.

203) at 6.  Plaintiffs' business reputation as bribers could explain their unsuccessful bid for the

Club Tournament rights during a transparent, bribe-free process disclosed to the U.S.

Department of Justice.  *See* Gonzalez Aff. (ECF No. 204) ¶¶ 33–35.  Indeed, the President of

Conmebol has noted the need for the organization to move away from contracting with

businessmen who pay bribes, such as Casal (Plaintiffs' principal owner), stating:

> It's over.  There's no more room for traps here, there's no room for Burzacos,
> Jinkins [sic] **or the Casales**[.] . . . Here, we're going to do things in an open and
> transparent manner, with competitive processes based on hard work and designed
> by professionals in order to optimize the income of South American soccer and
> make sure that the money goes to the development of soccer instead of going to
> the hands of unscrupulous intermediaries as it has happened in the past[.][4]

In sum, Plaintiffs' bribery of AUF officials is directly relevant to Plaintiffs'

business reputation, which is directly relevant to whether Defendants caused Plaintiffs'

alleged injury.

## 2.    Contracts

Contracts among Figueredo, the AUF, and Full Play, on the one hand, and Plaintiffs and

Tenfield, on the other, are relevant.

First, contracts with Plaintiffs or Tenfield (or the lack of any such contracts) could show

that bribe payments to Figueredo or AUF officials were not made pursuant to *bona fide*

contracts.

Second, to the extent Plaintiffs argue that Fox should have known that contracts with, or

payments to, Full Play were inherently suspicious, Fox should be permitted to use Plaintiffs' own

contracts with, or payments to, Full Play to show otherwise.

---

[4] Vigen Aff. Ex. 3 (emphasis added).

### 3.   Documents Related to this Lawsuit

Plaintiffs do not challenge the relevancy of requests for documents or communications related to this lawsuit, and they are relevant on their face.

### 4.   Documents Related to the Uruguayan Criminal Complaint

Plaintiffs do not challenge the relevancy of requests for documents or communications related to the Uruguayan Criminal Complaint.  The requests are relevant, as Plaintiffs cite to Figueredo's alleged testimony in the related Uruguayan Criminal Complaint to support their claims.  *See* 2d Am. Compl. ¶¶ 10, 79.

### B.   The Requests Are Not Burdensome.

The requests proposed by Fox and Torneos are limited to no more than five categories of requests per party.  The requests are discrete and call for the production of contracts, communications, and other documents about this lawsuit, the Uruguayan Criminal Complaint, and related bribery.  The narrow scope of these requests prevents any undue burden associated with producing the requested documents.

As all parties from whom Fox and Torneos seek documents are Uruguayan citizens residing in Uruguay, they are beyond the jurisdiction of this or any U.S. court, and therefore are not subject to subpoena power in the United States.  The information Fox and Torneos seek is thus not obtainable by any means other than the issuance of Letters Rogatory.[3]

### CONCLUSION

Fox and Torneos respectfully request that the Court approve, date, sign, and seal the proposed Letters Rogatory accompanying this motion.  The specific documents requested by Fox

---

[3] To the extent Tenfield's documents are in the possession, custody or control of Plaintiffs, Defendants would accept production of such documents by Plaintiffs in lieu of the issuance of Letters Rogatory.

and Torneos are set forth in the Proposed Letters Rogatory.[4]  After the Court signs the Letters Rogatory, Fox and Torneos further request that the clerk authenticate the Court's signature by affixing the Court's seal thereto, and that the Letters Rogatory then be returned by the clerk to counsel for Fox and Torneos so that they may be promptly transmitted to the Appropriate Judicial Authority of Uruguay for execution.[5]

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), undersigned counsel have conferred with counsel of record for co-Defendants and Plaintiffs before filing this motion and were advised that (1) all co-Defendants consent to this motion; and (2) Plaintiffs' (a) oppose the requests for documents and communications concerning bribes of AUF officials; (b) oppose the requests for contracts; (c) do not oppose the requests for documents or communications related the Uruguayan Criminal Complaint; and (d) do not oppose the requests for documents or communications related to this matter.

---

[4] Document requests to Eugenio Figueredo are attached to the Proposed Letters Rogatory as Schedule A; document requests to the Asociación Uruguaya de Fútbol are attached as Schedule B; document requests to Tenfield S.A. are attached as Schedule C; and document requests to Full Play Group, S.A. are attached as Schedule D.

[5] Undersigned counsel have consulted with their respective Uruguayan counsel to ensure that the attached Letters Rogatory are compliant with and should be accepted by the Appropriate Authority of the Oriental Republic of Uruguay.

Respectfully submitted,

Dated:  April 30, 2018

*/s/ Jay Shapiro*

Jay B. Shapiro
Florida Bar No. 776361
jshapiro@stearnsweaver.com
Morgan McDonough
Florida Bar No. 106104
mmcdonough@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130-1545
(305) 789-3200 (*telephone*)
(305) 789-3395 (*fax*)

*/s/ Tobin J. Romero*
Tobin J. Romero (*pro hac vice*)
tromero@wc.com
Jonathan B. Pitt (*pro hac vice*)
jpitt@wc.com
Craig D. Singer (*pro hac vice*)
csinger@wc.com
William J. Vigen (*pro hac vice*)
wvigen@wc.com
Carol Joan Pruski (*pro hac vice*)
CPruski@wc.com
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000 (*telephone*)

*Attorneys for Fox Sports Latin America,
Ltd., Pan American Sports Enterprises
Company, Fox International Channels
(US) Inc., and Fox Networks Group, Inc.*

*/s/ H. Rowan Gaither*
H. Rowan Gaither IV
David Massey
Maria Lapetina
T. Jakob Sebrow
Richards Kibbe & Orbe LLP

12

200 Liberty Street
New York, NY 10281
rgaither@rkollp.com
dmassey@rkollp.com
mlapetina@rkollp.com
jsebrow@rkollp.com

*/s/ Adam Michael Schachter*
Adam Michael Schachter
Freddy Funes
Gerald Edward Greenberg
1221 Brickell Avenue, Suite 2010
Miami, FL 33131
aschachter@gsgpa.com
ffunes@gsgpa.com
ggreenberg@gsgpa.com

*Attorneys for Defendant Torneos y
Competencias S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 30, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

documents are being served this day on all counsel of record via transmission of Notices of

Electronic Filing generated by CM/ECF.

*/s/ Jay B. Shapiro*
Jay B. Shapiro
