# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE No. 1:16-cv-24431-Altonaga/McAliley

GOLTV, INC., and GLOBAL SPORTS PARTNERS LLP,

      Plaintiffs,

    -v.-

  FOX SPORTS LATIN AMERICA, LTD., PAN AMERICAN SPORTS ENTERPRISES COMPANY, d/b/a FOX SPORTS LATIN AMERICA (individually and as successor to FOX PAN AMERICAN SPORTS LLC), FOX INTERNATIONAL CHANNELS (US), INC., FOX NETWORKS GROUP, INC. (as successor to FOX INTERNATIONAL CHANNELS (US), INC.), CARLOS MARTINEZ, HERNAN LOPEZ, JAMES GANLEY, T&T SPORTS MARKETING LTD., TORNEOS Y COMPETENCIAS, S.A., ALEJANDRO BURZACO, FULL PLAY GROUP S.A., CONFEDERACION SUDAMERICANA DE FUTBOL, d/b/a CONMEBOL, EUGENIO FIGUEREDO, and JUAN ANGEL NAPOUT,

      Defendants.

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## <u>(LETTERS ROGATORY)</u>

## TO THE APPROPRIATE JUDICIAL AUTHORITY
## IN THE ORIENTAL REPUBLIC OF URUGUAY

The United States District Court for the Southern District of Florida, in the United States of America, presents its compliments to the appropriate judicial authority of the Oriental Republic of Uruguay and respectfully requests international judicial assistance in obtaining evidence to be used in the above-captioned civil action proceeding before this Court.  This Court requests the assistance described herein as necessary in the interest of justice.  The assistance requested is that the appropriate judicial authority of the Oriental Republic of Uruguay, by the proper and usual process of your Court, make the necessary Order or Orders to compel the production, inspection, and copying of all documents that are in possession, custody, or control of Eugenio Figueredo, the Asociación Uruguaya de Fútbol, Tenfield S.A., and Full Play Group, S.A., as identified in Schedule A, Schedule B, Schedule C, and Schedule D, respectively.

The applicants for this Letter Rogatory are Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US), Inc., and Fox Networks Group, Inc. (collectively, "Fox") and Torneos y Competencias S.A. ("Torneos"). Respective Uruguayan counsel for Fox and Torneos are available to answer any questions the appropriate judicial authority of the Oriental Republic of Uruguay may have.

This request is made pursuant to 28 U.S.C. § 1781(b)(2) (allowing United States courts to issue Letters Rogatory directly to a foreign tribunal or agency) and this Court's Order granting the Defendants' Motion for Issuance of Letters Rogatory.  The United States District Court for the Southern District of Florida is a competent court of law and equity which properly has jurisdiction over this proceeding, and has the power to compel the production of documents both within and outside its jurisdiction.

The production of documents is intended for use at trial or directly in the preparation of trial, and in the view of this Court, will be relevant to claims and defenses in the case. The requesting Court is satisfied that the evidence sought to be obtained through this request is relevant and necessary and cannot reasonably be obtained by other methods. Because this Court lacks jurisdiction to compel participation of these persons and entities and, such participation being necessary in order that justice be served in the above-captioned proceedings, this Court respectfully requests assistance from the appropriate judicial authority in the Oriental Republic of Uruguay.

## 1.    NAMES AND ADDRESSES OF THE PARTIES OF THE CASE AND THEIR REPRESENTATIVES

The documents requested relate to civil action No. 1:16-cv-24431, bearing the caption *GOLTV, Inc. et al. v. Fox Sports Latin America, Ltd. et al.*, which is currently pending in the United States District Court for the Southern District of Florida. The parties and their representatives are listed herein as follows:

**Plaintiffs**

**GOLTV, Inc.**
1580 John F. Kennedy Causeway
North Bay Village, FL 33141
United States

**Global Sports Partners, LLP**
11 Church Road
Great Bookham
Surrey
KT23 3 PB

*Represented By:*

Seth Farber
sfarber@winston.com
Julissa Reynoso
jreynoso@winston.com

George Mastoris
gmastoris@winston.com
Marcelo Blackburn
mblackburn@winston.com
Cristina Calvar
ccalvar@winston.com
Michael Alexander Fernandez
MAFernandez@winston.com
Lauren E. Duxstad
lduxstad@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
212-294-6700

Peter H. Levitt
plevitt@shutts.com
Stephen Bernanrd Fillman
sgillman@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard, Suite 4100
Miami, FL 33131
(305) 358-6300

**<u>Defendants</u>**

**Fox Sports Latin America, Ltd.**
2121 Ponce De Leon Boulevard
Coral Gables, FL 33134
United States

**Pan American Sports Enterprises Company**
2121 Ponce De Leon Boulevard
Coral Gables, FL 33134
United States

**Fox International Channels (US), Inc.**
10201 West Pico Boulevard
Los Angeles, CA 90035
United States

**Fox Networks Group, Inc.**
10201 West Pico Boulevard
Los Angeles, CA 90035
United States

*Represented By:*

Jay B. Shapiro
jshapiro@stearnsweaver.com
Morgan McDonough
mmcdonough@stearnsweaver.com
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130-1545
(305) 789-3200

Tobin J. Romero
tromero@wc.com
Jonathan B. Pitt
jpitt@wc.com
Craig D. Singer
csinger@wc.com
William J. Vigen
wvigen@wc.com
Carol Joan Pruski
CPruski@wc.com
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000

**Alejandro Burzaco**
c/o Adam Louis Schwartz
Homer Bonner Jacobs
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
United States

*Represented by:*

John Daniel Couriel
john.couriel@kobrekim.com
Laura Maria Gonzalez-Marques
laura.gonzalez@kobrekim.com
Kobre & Kim, LLP
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 967-6115

Adam Louis Schwartz
aschwartz@homerbonner.com
Rayda Aleman
raleman@homerbonner.com
Homer Bonner Jacobs
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
(305) 350-5116

**James Ganley**
c/o Benedict P. Kuehne
Kuehne Davis Law, P.A.
100 S.E. 2nd Street, Suite 3550
Miami, FL 33131
United States

*Represented by:*

Michael T. Davis
mdavis@kuehnelaw.com
Benedict P. Kuehne
ben.kuehne@kuehnelaw.com
Kuehne Davis Law, P.A.
100 S.E. 2nd Street, Suite 3550
Miami, FL 33131
(305) 789-5989

**Hernan Lopez**
c/o Ryan K. Stumphauzer
Stumphauzer & Sloman PL
1 SE 3rd Avenue
Suite 1820
Miami, FL 33131
United States

*Represented by:*

Christopher Ellis Gottfried
cgottfried@sslawyers.com
Ryan K. Stumphauzer
rstumphauzer@sslawyers.com
Jorge A Perez Santiago
jperezsantiago@sslawyers.com
Stumphauzer & Sloman PL

1 SE 3rd Avenue
Suite 1820
Miami, FL 33131
(305) 371-9686

Jennifer E. LaGrange
jennifer@spertuslaw.com
Samuel Josephs
sam@spertuslaw.com
Matthew Donald Umhofer
matthew@spertuslaw.com
Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
(310) 826-4700

**Carlos Martinez**
c/o Steven J. McCool
Mallon & McCool, LLC
1776 K Street, N.W., Suite 200
Washington, DC  20006

*Represented by:*

Steven J. McCool
smccool@mallonandmccool.com
Julia M. Coleman
jcoleman@mallonandmccool.com
Mallon & McCool, LLC
1776 K Street, N.W., Suite 200
Washington, DC  20006

James E. Sharp
jsharp@sharp-assoc.com
Sharp & Associates, PLLC
1215 19th Street, N.W.
Washington, DC 20005
(202) 467-4114

Ramon A. Abadin
ramon.abadin@sedgwicklaw.com
Sedgwick LLP
2 South Biscayne Boulevard
One Biscayne Tower - Suite 1500
Miami, FL 33131
(305) 671-2124

**Juan Angel Napout**
c/o Francisco Oscar Sanchez
Greenberg Traurig, P.A.
333 Avenue of the Americas
Miami, FL 33131

*Represented by:*

Francisco Oscar Sanchez
sanchezfo@gtlaw.com
Jacqueline Becerra
becerraj@gtlaw.com
Greenberg Traurig, P.A.
333 Avenue of the Americas
Miami, FL 33131
(305) 579-0610

**T&T Sports Marketing Ltd.**
c/o PAGET BROWN Trust Company Limited
Boundary Hall Cricket SQUARE P O Box 1111
Grand Cayman
KYI-1102 Cayman Island

*Represented by:*

Roberto Martinez
bob@colson.com
Stephanie Anne Casey
scasey@colson.com
Lindsey Lazopoulos Friedman
lindsey@colson.com
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 476-7400

**Torneos y Competencias S.A.**
Balcarce 510
C1064AAL
Buenos Aires
Argentina

*Represented by:*

David Massey

dmassey@rkollp.com
H. Rowan Gaither, IV
rgaither@rkollp.com
Maria Lapetina
mlapetina@rkollp.com
T. Jakob Sebrow
jsebrow@rkollp.com
Whitney O'Byrne
wobyrne@rkollp.com
RICHARDS KIBBE & ORBE, LLP
200 Liberty Street
New York, NY 10281
(212) 530-1800

Adam Michael Schachter
aschachter@gsgpa.com
Freddy Funes
ffunes@gsgpa.com
Gerald Edward Greenberg
ggreenberg@gsgpa.com
Gelber Schachter & Greenberg, P.A.
1221 Brickell Ave.
Suite 2010
Miami, FL 33131
(305) 728-0950

**Eugenio Figueredo**
Appearance not entered

**<u>Intervenor</u>**

**United States of America**
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201

2.      **NAME AND ADDRESS OF COUNSEL IN URUGUAY**

Uruguayan counsel responsible for presenting this Letter Rogatory to the appropriate

judicial authority of the Oriental Republic of Uruguay is listed herein as follows:

Hector B. Viana
hbviana@jimenez.com.uy
Mariela Ruanova
mruanova@jimenez.com.uy
Jimenez de Arechaga, Viana, + Brause

9

Zabala 1504 es. Cerrito
11000 Montevideo, Uruguay
(598) 2916-1460

*Counsel for Fox Sports Latin America,
Ltd., Pan American Sports Enterprises
Company, Fox International Channels (US)
Inc., and Fox Networks Group, Inc.*

Haroldo Espalter
Hughes & Hughes
hespalter@hughes.com.uy
25 de Mayo 455
11000 Montevideo, Uruguay
(598) 2916-0988

*Counsel for Torneos y Competencias S.A.*

3.  **NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS**

Plaintiffs GolTV, Inc. and Global Sports Partners LLP filed this action in October 2016,

alleging that the defendants, along with former defendants Full Play Group S.A. and Conmebol,

engaged in a bribery scheme in violation of the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. §§ 1962(c) and 1962(d); the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; the

Florida Deceptive and Unfair Practices Act, Fla. Stat. §§ 501.201, *et seq.*, and state-law Tortious

Interference with Prospective Economic Advantage and Conspiracy to Commit Tortious

Interference.  An authentic copy of Plaintiff's Second Amended Complaint and its exhibits is

attached as Attachment 1.  Plaintiffs allege that former defendant Full Play Group S.A. and

Defendant Eugenio Figueredo participated in the alleged bribery scheme.  Plaintiffs also allege

that member associations of Confederación Sudamerican de Fútbol (Conmebol), such as the

Asociación Uruguaya de Fútbol (AUF), were harmed by the alleged scheme.

On September 19, 2017, the Court dismissed Full Play Group S.A. and Conmebol for

lack of jurisdiction.  On November 7, 2017, a Clerk's Entry of Default was entered against

Eugenio Figueredo for failure to appear.  On January 26, 2018, pursuant to a motion to dismiss filed by the defendants, the Court dismissed Plaintiffs' Sherman Antitrust claims and Florida Deceptive and Unfair Practices Act claims.  The claims under the Racketeer Influenced and Corrupt Organizations Act and state-law Tortious Interference with Prospective Economic Advantage and Conspiracy to Commit Tortious Interference remain.

**4.      EVIDENCE TO BE OBTAINED AND PURPOSE**

The evidence to be obtained consists of documents for use at trial or in preparation for trial in this matter.  The requested documents in Schedules A, B, C, and D seek documents and information that is uniquely in the possession, custody, or control of only Eugenio Figueredo, the AUF, Tenfield S.A., and Full Play Group, S.A.

Eugenio Figueredo, the AUF, Tenfield S.A., and Full Play Group S.A. all reside in Uruguay and, upon information and belief, are not domiciled in the United States.  Thus, this Court cannot directly compel them to provide the requested documents.  It is therefore respectfully requested that the appropriate judicial authority of the Oriental Republic of Uruguay compel Eugenio Figueredo, the Asociación Uruguaya de Fútbol, Tenfield S.A. and Full Play Group S.A. to produce documents responsive to the requests for production in Schedules A, B, C, and D to this Letter of Request, to the extent that they are in their possession, custody, or control, and are not privileged under the applicable laws of Uruguay.

The requested documents are needed in connection with the parties' claims and defenses. While this Court expresses no view at this time as to the merits in the above-captioned case, it believes the evidence sought here will be relevant to and either probative or disprobative of material facts relevant to the parties' claims and defenses.

5.    **IDENTITY AND ADDRESSES OF THE ENTITIES AND PERSONS FROM WHOM DOCUMENTS ARE REQUESTED**

The identity and addresses of the entities and persons to be compelled to produce documents is set forth below.  The addresses provided are based on currently available information and may be supplemented.

**Eugenio Figueredo**
Nationality: Uruguay
Home Address: Rambla República del Perú 1503, apto. 1001, Montevideo, 11300, Uruguay
Work Address: Viña del Mar 7090, oficina 202, Montevideo, 11500, Uruguay
Represented by: Karen Pintos, Misiones 1445, Escritorio 5, Montevideo, 11000, Uruguay

**Asociación Uruguaya de Fútbol**
Nationality: Uruguay
Address: Guayabo 1531, Montevideo, 11200, Uruguay

**Tenfield S.A.**
Nationality: Uruguay
Address: Divina Comedia 1521, Montevideo, 11500, Uruguay

**Full Play Group S.A.**
Nationality: Uruguay
Address: Parra del Riego 987/9, Montevideo, 11300, Uruguay

6.    **DOCUMENTS REQUESTED**

It would further the interests of justice if you would summon Eugenio Figueredo, Asociación Uruguaya de Fútbol, Tenfield S.A., and Full Play Group S.A. to produce the documents set forth in Schedules A, B, C, and D to this Letter of Request.  A list of documents requested from Euguenio Figueredo is attached as Schedule A.  A list of documents requested from the Asociación Uruguaya de Fútbol is attached as Schedule B.  A list of documents requested from Tenfield S.A. is attached as Schedule C.  A list of documents requested from Full Play Group S.A. is attached as Schedule D.

**7.     SPECIFICATION OF DATE BY WHICH THE REQUESTING AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTERS ROGATORY**

It is requested that, if possible, this action be carried out within a certain reasonable timeframe, not to exceed sixty (60) days from receipt, given the resources and faculties of the requested Court, applying principles of economy and expediency.  Given the timeline of the action and the current discovery deadlines, should the persons and entities from whom documents are requested fail to timely comply with a judicial order from the appropriate judicial authority of the Oriental Republic of Uruguay, the applicants of this Letter Rogatory will be unable to use documents relevant to their defenses in the case at trial or in preparation for trial.

**8.     PERSON TO WHOM REQUESTED DOCUMENTS ARE TO BE PRODUCED**

Hector B. Viana
hbviana@jimenez.com.uy
Mariela Ruanova
mruanova@jimenez.com.uy
Jimenez de Arechaga, Viana, + Brause
Zabala 1504 es. Cerrito
11000 Montevideo, Uruguay
(598) 2916-1460

*Counsel for Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US) Inc., and Fox Networks Group, Inc.*

Haroldo Espalter
Hughes & Hughes
hespalter@hughes.com.uy
25 de Mayo 455
11000 Montevideo, Uruguay
(598) 2916-0988

*Counsel for Torneos y Competencias S.A.*

9.      **RECIPROCITY**

In the furtherance of justice and by the proper and usual process of this Court, the United States District Court for the Southern District of Florida assures the judicial authorities of the Oriental Republic of Uruguay that it is willing to provide similar cooperation and assistance to judicial authorities in Uruguay in the event that similar assistance is requested.


Dated:


_____
THE HONORABLE CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

## SCHEDULE A

## DOCUMENTS TO BE PRODUCED BY EUGENIO FIGUEREDO

The Definitions and the Instructions that appear below form an integral part of the specific requests for the production of documents that follow, and must be read in conjunction with them.  It is expected that the Definitions and the Instructions set forth will be followed in searching for and producing documents responsive to the specific requests for production.

## <u>DEFINITIONS</u>

As used in these Requests, the following terms shall be defined as follows:

1.      The terms "You" or "Your" mean Eugenio Figueredo, any of his agents or counsel, or any business he owns or controls.

2.      The term "Second Amended Complaint" means the Second Amended Complaint in this action, No. 1:16-cv-24431 (S.D. Fla. March 6, 2017), ECF No. 78.

3.      The term "GolTV" means GolTV, Inc., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

4.      The term "Global Sports" means Global Sports Partners LLP, its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but

1

not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

5.      The term "GolTV Latin America" means Gol TV LatinAmerica S.A.C., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

6.      The term "Tenfield" means Tenfield S.A., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

7.      The term "Uruguayan Criminal Complaint" means the criminal complaint filed in Uruguay in the first instance by certain Uruguayan soccer clubs, which proceedings are referenced in the Amended Complaint at Paragraphs 10 and 79.

8.      "United States" means any and all agencies, subdivisions, or offices of the United States of America, including its employees, agents, officers, and counsel.  This definition specifically encompasses but is not limited to the United States Department of Justice and the United States Attorney's Office for the Eastern District of New York.

2

9.      The terms "document" or "documents" include writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

10.     The term "including," or any derivative thereof, means including, but not limited to, the requested item(s).

11.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.     The terms "relevant to" or "concerning" mean relating to, referring to, describing, evidencing or constituting.

14.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.     The term "Date" means the exact date, month, and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

16.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## **INSTRUCTIONS**

1.      Restate each request for production in Your written response followed immediately by Your response to each request.

3

2.      You should respond to each document request separately.

3.      You should produce any responsive documents as they are kept in the ordinary course of Your business.

4.      Documents shall be produced and numbered in such a manner that ensures that the source of each document may be determined.

5.      Each requested document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto, whether by paper clip or any other manner.  If Documents responsive to a Request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and identify the company, division, department, and/or individual from whose files the document is being produced.

6.      Whenever necessary to bring within the scope of any document request that might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

7.       Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

8.      If, in responding to these requests for production, You encounter an ambiguity in construing either the request or a definition or instruction pertaining to the request, set forth the matter deemed ambiguous and the construction that You used in responding.

9.      If You object to any request for production or subpart thereof on any ground, specify Your objection, furnish a response to all portions of such request to which You have no objection, and state whether any responsive materials are being withheld on the basis of any

4

objection. No part of any request for production shall be left unanswered merely because an objection has been interposed to another part of the request.

10.     If any Document is currently not available and is in the possession of another party, identify the person or persons from whom the Document may be obtained. If any responsive Document has been destroyed or lost, describe the nature of the Document, identify the person(s) who created, sent and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document. Identify when it was destroyed or lost, the person who destroyed or lost the Document, the person who directed that it be destroyed, and the reason for destruction.

11.     If You object to producing any responsive document on the basis of a claim of attorney-client privilege, or on the basis of the work-product doctrine, or any other evidentiary privilege or protection, the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (a) For documents or electronically stored information, to the extent the information is readily obtainable from the witness being deposed or otherwise: (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel); (2) general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; and (4) such other information as is sufficient to identify the document or electronically stored information for a subpoena duces

tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.  (b) For oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and (3) the general subject matter of the communication.

12.     Electronically stored information ("ESI") is to be produced in a single-page TIFF format, with load files demarcating document breaks, providing parent-child information, OCR, and relevant metadata (defined in the following Instruction), except that Excel or other spreadsheets, and PowerPoint or other slideshow presentations, are to be produced in native format.  Responsive non-ESI documents are to be produced: (i) in a single-page TIFF format, with load files demarcating document breaks, and containing searchable document text (that is, OCR data), (ii) in a manner that reflects physical boundaries such as boxes, folders, tabs, etc., and (iii) in a manner which reflects the document custodian.

13.     You must provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Duplicate Custodian, InReplytoID, IntMsgID, Source, Comments, Time Received, Subject, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or equivalent thereof).

14.     Unless otherwise specified, the relevant time period for these Requests shall be from January 1, 1998 to the date of production.

15.     Nothing in these requests is to be construed as an admission or waiver on the part of Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US), Inc., Fox Networks Group, Inc., Carlos Martinez, Hernan Lopez, James Ganley, T&T Sports Marketing Ltd., Torneos y Competencias S.A., Alejandro Burzaco, and Juan Angel Napout.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Documents sufficient to show all payments (monetary, in-kind, or otherwise) made, offered, or attempted to be made to You or Your family members by GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, Enzo Francescoli, their agents, or any business entity they own (in whole or in part), whether authorized or unauthorized, including, but not limited to, bribes, kickbacks, and payments related to the Uruguayan Criminal Complaint, payments related to Your legal defense against criminal charges or civil actions filed against You in Uruguay or the United States, and payments related to providing You or Your family financial support during the pendency of any criminal or civil charges.

2.     All contracts between You or Your family members and GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, Enzo Francescoli, their agents, or any business entity they own (in whole or in part).

3.     All documents or communications between You and GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, Enzo Francescoli, or any of their agents, related to bribes, offers to bribe, or attempts to bribe any party, or to the above-captioned action, *GolTV, et al. v. Fox Sports Latin America, et al.*, No. 1:16-cv-24431 (S.D. Fla. 2016), including, but not limited to, any PowerPoint presentation or other handouts,

7

notes, or other document from any presentation or videoconference discussing this case or with any attorney in the above-captioned case.

4.      All testimony or documents You have provided to a Uruguayan Court, prosecutor, or other entity related to the criminal charges filed against You or to the Uruguayan Criminal Complaint, including, but not limited to, all documents that form the basis for Your testimony in the Uruguayan Criminal Complaint proceedings that "the Fox company was behind all the illicit negotiations" and that "an executive surnamed Martinez" was "responsible for the contracts with Jinkis and Burzako [*sic*]," as referenced in the Amended Complaint at Paragraphs 10 and 79.

5.      All documents and communications related to the transfer of approximately $300,000 from Your family member's financial account to a Bolivian attorney in or around February 2014, as You were asked in the proceedings related to the Uruguayan Criminal Complaint in June 2016 and as reported in the news article, "Figueredo violó el acuerdo de reducción de pena," published by El Pais on June 24, 2016, attached as Exhibit A-1.

# EXHIBIT 1
# TO SCHEDULE A

3/26/2018 — Figueredo violó acuerdo de reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas - Diario EL PAIS Uruguay

Case 1:16-cv-24431-CMA   Document 968-1   Entered on FLSD Docket 04/30/2018   Page 24 of 55



EL PAIS  ›  **Información**

Montevideo, T 20° H 45%     INGRESAR     REGISTRARSE

# Información

LA CORRUPCIÓN EN EL FÚTBOL

# Figueredo violó acuerdo de reducción de pena

Su esposa vendió el mobiliario de dos apartamentos.

Viernes, 24 Junio 2016          Compartir esta noticia



Fallo: a fines de 2015, la justicia procesó al expresidente de la AUF. Foto: Reuters

El exvicepresidente de la FIFA, Eugenio Figueredo, reconoció en el Juzgado especializado en Crimen Organizado que violó el acuerdo firmado con el entonces fiscal Juan Gómez para reducir su condena.

La abogada defensora de Figueredo, Karen Pintos, informó a la jueza especializada en Crimen Organizado, Adriana de los Santos, y a la fiscal María Camiño que la esposa de Figueredo vendió el alhajamiento (muebles y electrodomésticos) de los dos apartamentos en Punta del Este que entregó al Estado como parte del acuerdo para bajar su pena.

El acuerdo que Figueredo alcanzó con la jueza De los Santos y con Gómez, está amparado en la figura del colaborador, vigente en la ley contra el lavado de activos (artículo 6° de la ley 18,494). También dentro del acuerdo estaban la entrega de 13 propiedades del exjerarca de la FIFA, valoradas en un monto superior a los US$ 10 millones. El acuerdo permitió que el Estado se hiciera de esos bienes sin tener que esperar la sentencia de la magistrada.

El miércoles 15, Figueredo declaró en la sede judicial sobre todas las inversiones inmobiliarias que realizó en el país y en el extranjero con dinero generado por supuestas coimas de empresarios durante la venta de

Are you a blockbuster guru?

Find your TV-style with the help of Watson and Fios.

Analyze Your TV Personality



3/26/2018 — Figueredo violó acuerdo de reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas - Diario EL PAIS Uruguay

Case 1:18-cv-24431-CMA   Document 368-1   Entered on FLSD Docket 04/30/2018   Page 25 of 55

los derechos de televisación de los campeonatos de fútbol en América del Sur.

Consultada la defensa si quería agregar algo más, la abogada de Figueredo dijo: "Lamentablemente por un error involuntario, la señora de Figueredo dispuso de los muebles de los dos apartamentos de Punta del Este. El tema de los alhajamientos (de los apartamentos) nunca fue tratado en forma verbal con el señor Juan Gómez y sus adjuntas que siempre estuvieron presentes".

El acuerdo entre Gómez y Figueredo, que se rubricó el 5 de febrero de este año, tenía un capítulo que incluía el alhajamiento de los apartamentos. La abogada de Figueredo dijo que "ese era el último día de trabajo del doctor Gómez (en la fiscalía especializada en Crimen Organizado). Y fue una larga tarde en la que el doctor Gómez nos presentó el documento elaborado por él".

Enseguida agregó: "En mitad de la redacción se detectó un bien que había que cambiarlo, dentro de los términos del acuerdo. El doctor Gómez dijo que tenía que ir a su despacho a modificar el documento y mi cliente (Figueredo) y yo aguardamos en el Juzgado por espacio de tres horas. Cuando regresó Gómez con el documento corregido nos aclaró a Figueredo y a mí que ya estaban hechas todas las modificaciones".

La abogada asumió ante la jueza De Los Santos y la fiscal Camiño su responsabilidad de no leer detalladamente el documento del acuerdo. "Nunca me quedó claro a mí que los apartamentos eran amueblados. Como era un acuerdo con la Fiscalía, la defensa no se llevó copia. Estamos dispuestos a reembolsar este error involuntario de esta defensa", dijo Pintos.

Una de las operadoras judiciales señaló que hubo roturas y daños en dos de los apartamentos que Figueredo entregó al Estado en el acuerdo y preguntó si el acusado estaba dispuesto a repararlos. Pintos respondió: "Eso habría que hablarlo con la esposa de Figueredo".

Al final de la audiencia, la jueza De Los Santos intimó a Figueredo a acreditar ante la sede, con documentación auténtica, los montos por los cuales fueron vendidos los bienes muebles que tenían los apartamentos de Punta del Este.

## Más bienes.

De los Santos y Camiño insistieron en la instancia judicial sobre los bienes declarados por Figueredo en las audiencias realizadas a fines del año pasado.

"Yo no tengo bienes en Estados Unidos. La casa que tenía mi esposa la cedió a su hermana y fue con lo que compró la vivienda de General French y Rivera (Carrasco) como ya declaré", dijo.

El exvicepresidente de la FIFA negó ser dueño de inmuebles en Los Ángeles, California.


**Tragedia: jugador de 25 años falleció en pleno partido**


**Espectadores de un show macabro**


**Mica Ríos, cada día más sensual**


**Madre y niño en situación de calle necesitan ayuda**


**Sarah García, la esposa de Nahitan Nández, a pura diversión con amigas en Punta**


**Gerente cesado de ASSE asumirá cargo en el MSP**


**Actriz porno denuncia amenaza para callar relación con Trump**


**García Pintos: "Yo no me chupo el dedo, le quieren pegar a Lacalle para pegarle al hijo"**



3/26/2018    Figueredo violó acuerdo de reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas – Diario EL PAIS Uruguay

Case 1:16-cv-24431-CMA   Document 368-1   Entered on FLSD Docket 04/30/2018   Page 26 of 55

De los Santos y Camiño también le preguntaron a Figueredo sobre su relación con Celia Patricia Mendizábal a cuya cuenta en Zúrich, Suiza, se realizó el 3 de febrero de 2014 una transferencia de US$ 300.000 desde la cuenta de su hija N.F. desde un banco uruguayo.

Figueredo respondió: "Si eran de mi hija sería de ahorros que ella tenía. No puedo responder en este momento cómo generaba los ingresos mi hija. En esa época ella tenía 16 años". La jueza intimó a Figueredo a justificar el origen de los fondos girados a Zúrich desde una cuenta de su hija.

### Prisión domiciliaria tras cirugía de próstata

Un informe de un médico forense enviado al Juzgado Especializado en Crimen Organizado de 1er Turno consideró que el vicepresidente de la FIFA y expresidente de la AUF, Eugenio Figueredo, debía recuperarse en su casa de una intervención quirúrgica en la próstata y no regresar a Cárcel Central para evitar una posible infección. La fiscal especializada en Crimen Organizado, María Camiño, en atención al informe del médico forense, solicitó la prisión domiciliaria de Figueredo mientras se recupera de la cirugía.

### Apuntan a derechos de TV de la Copa América.

En 2013, la Mutual Uruguaya Futbolistas Profesionales denunció ante la Justicia Penal supuestos pagos de sobornos para la adjudicación de los derechos televisivos por los torneos organizados por la Conmebol. Esta denuncia fue uno de los argumentos usados por la Justicia para el procesamiento de Eugenio Figueredo por estafa y lavado de activos.

Pablo Barreiro, abogado de la Mutual, dijo a El País que, según trascendidos en el expediente de personas que declararon como indagados, la Conmebol habría vendido los derechos televisivos de la Copa América Centenario a una cadena norteamericana y se habría reservado porcentaje de publicidad a favor de Datisa (Full Play y otras). "La Mutual ha presentado un escrito sobre ese tema. Esperamos que se investigue", dijo Barreiro.

Full Play es la actual propietaria de los derechos de televisión de la Selección Uruguaya de Fútbol. La AUF enfrenta dificultades financieras por incumplimientos de Full Play. Y analizará la caída del contrato con Full Play por considerar que esta empresa no cumplió lo acordado al haberle sido congelada por la Justicia tanto una garantía de US$ 1.700.000 como dos cuotas de US$ 500.000 establecidas en el contrato.

x

REPORTAR ERROR ✎



3/26/2018 — Figueredo violó acuerdo de reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas - Diario EL PAIS Uruguay

Case 1:16-cv-24431-CMA Document 368-1 Entered on FLSD Docket 04/30/2018 Page 27 of 55



CONTENIDO PATROCINADO

**Las líneas simples, pero dinámicas, del Mazda6 del 2017 expresan energía y movimiento. Explora por ti mismo** ↗

Por Mazda Latino

**Temas relacionados**

| fútbol | + | corrupción | + | fifa | + | Eugenio Figueredo | + |

Publicidad



x



3/26/2018   Figueredo violó acuerdo de reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas - Diario EL PAIS Uruguay

Case 1:16-cv-24431-CMA   Document 368-1   Entered on FLSD Docket 04/30/2018   Page 28 of 55

## Te puede interesar



**Corrupción, dólares y favores sexuales ponen en peligro la continuidad de Miss Venezuela**

Mundo



**Petrobras: pérdidas por efecto corrupción**

Mundo



**Que "todo cambie" para que siga la corrupción**

Ecos



**Nuevo revés judicial para Lula: cada vez más cerca de la cárcel**

Mundo



**Netanyahu descarta adelantar elecciones**

Mundo



**Fortalezas y obstáculos para hacer negocios en Uruguay**

Noticias

## Te recomendamos



MONTEVIDEO

**Di Candia: "La Intendencia no pagó ninguno de mis viajes"**

Política



INSEGURIDAD

**El niño baleado en Casavalle fue dado de alta del hospital**

Policiales





INVESTIGAN



**"Que lleguen a estos números nos produce cierto orgullo"**

Fútbol





x




3/26/2018       Figueredo violo acuerdo reducción de pena - Información - Últimas noticias de Uruguay y el Mundo actualizadas - Diario EL PAIS Uruguay

Case 1:18-cv-24431-CMA   Document 368-1   Entered on FLSD Docket 04/30/2018   Page 29 of 55



## Corrupción, dólares y favores sexuales ponen en peligro la

**Después del reggaetón, llegó la salsa: Will Smith sigue a puro baile**

---

## Comentarios ( 0 )

---

**INICIAR SESIÓN PARA COMENTAR**
**¿OLVIDÓ SU CONTRASEÑA?**

**Para comentar las noticias** debes iniciar sesión con el usuario y contraseña elegidos al momento de registrarte.

**Si no estas registrado todavía,** puedes hacerlo ingresando a **Registro de Usuarios**

**No recuerdas tu contraseña?** puedes acceder a **Resetear Contraseña**

---

ANUNCIAR   AYUDA   POLÍTICAS DE PRIVACIDAD   

Zelmar Michelini 1287, CP.11100, Montevideo, Uruguay. Copyright ® EL PAIS S.A. 1918 - 2018





# TRANSLATION CERTIFICATION

**County of Monroe**
**State of New York**

Date: April 17, 2018

To Whom It May Concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:
- Figueredo violó acuerdo de reducción de pena - Información - Últimas not...

Kiel Henry, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Kiel J. Henry

3/26/2018 Figueredo Violated Sentence Reduction Agreement - Information - Latest News from Uruguay and the World updated - EL PAIS newspaper - Uruguay
https://www.elpais.com.uy/informacion/figueredo-violo-acuerdo-reduccion-pena.html# 1/6



CORRUPTION IN SOCCER

## Figueredo Violated his Sentence Reduction Agreement

His wife sold the furniture of two apartments.

Friday, June 24, 2016

Judgment: at the end of 2015, the Law prosecuted the former President of the Uruguayan Soccer Association (AUF). Photograph: Reuters

FIFA's former Vice-President, Eugenio Figueredo, acknowledged before the Specialized Court on Organized Crime that he violated the agreement signed with the then Prosecutor Juan Gómez to reduce his sentence.

Figueredo's Defense Attorney, Karen Pintos, informed the Judge specialized in Organized Crime, Adriana de los Santos, and the Prosecutor María Camiño that Figueredo's wife sold the furnishings (furniture and appliances) of the two apartments in Punta del Este that had been handed over to the Nation as part of the agreement to lower his sentence.

The agreement that Figueredo reached with Judge De los Santos and Gómez, is covered by the figure of the contributing member appearing under the current money laundering law (Article 6 of Law 18,494). Also included in the agreement was the surrendering of 13 properties of the former FIFA leader, valued at an amount exceeding USD 10 million. The agreement allowed the Nation to seize those assets without having to wait for the magistrate's final sentence.

On Wednesday 15, Figueredo declared in Court about all the real estate investments he made in the country and abroad with money generated by alleged bribes of businessmen during the sale of the television rights for soccer championships in South America.

When the defense was asked if they wanted to add something else, Figueredo's Attorney said: "Unfortunately by an involuntary mistake, Figueredo's wife disposed of the furniture of the two apartments of Punta del Este. The issue of the furnishings (of both apartments) had never been never verbally treated with Mr. Juan Gómez and his assistants who were always present."

The agreement between Gómez and Figueredo, which was signed on February 5 of that year, had a chapter including the furnishings of the apartments. Figueredo's Attorney said that "that was the last working day for doctor Gómez (at the Specialized Prosecutor's Office in Organized Crime); and it was a long afternoon when Dr. Gómez presented us with the document he had prepared."

He immediately added: "In the middle of what was written in the document, an asset was detected that had to be changed under the terms of the agreement. Doctor Gómez said he had to go to his office in order to amend the document, and my client (Figueredo) and I stayed in Court for three hours. When Mr. Gómez returned with the corrected document, he clarified to Figueredo and to me that all the amendments were already made."

The Attorney assumed before the Judge De los Santos and the Prosecutor Camiño her responsibility not to read the document of the agreement in detail. "It was never clear to me that the apartments had to be furnished. Since it was an agreement with the Office of the

Prosecutor, the defense did not take a copy with them. We are willing to reimburse this involuntary mistake of this defense," said Pintos.

One of the judicial operators indicated that there was breakage and damage in two of the apartments that Figueredo delivered to the Nation under the agreement and asked if the defendant was willing to repair them. Pintos answered: "That should be discussed with Figueredo's wife."

At the end of the hearing, Judge De los Santos asked Figueredo to provide evidence to the Office, with genuine documentation, the amounts for which the movable property of the Punta del Este apartments had been sold.

## More Assets.

De los Santos and Camiño insisted on the Court about the property declared by Figueredo in the hearings carried out at the end of last year.

"I do not have property in the United States. The house my wife had was transferred to her sister and it was with that money that she bought the dwellings of General French and Rivera (Carrasco) as I have already declared," he said.

The former Vice-President of FIFA denied owning property in Los Angeles, California.

De los Santos and Camiño have also asked Figueredo about his relationship with Celia Patricia Mendizábal, to whose account in Zurich, Switzerland, on February 3, 2014, a USD 300,000 transfer was made from the account of his daughter N.F. from a Uruguayan bank.

Figueredo answered: "If they were my daughter's, it would be savings that she had. I cannot answer at this time how my daughter was generating revenue. At that time, she was 16 years old." The Judge told Figueredo to justify the origin of the funds drawn to Zurich from an account of his daughter.

## Home Prison After Prostate Surgery

A report from a forensic doctor sent to the Specialized Court on Organized Crime of First Instance considered that the former Vice-President of FIFA and former President of the AUF, Eugenio Figueredo, had to recover at home from his prostate surgery and was not to return to the Central Prison in order to avoid a possible infection. In response to the report of the forensic doctor, the specialized prosecutor in Organized Crime, María Camiño, requested the house arrest of Figueredo while he recovered from surgery.

## The TV Rights for the Copa América are Targeted.

In 2013, the Uruguayan Professional Footballer's Association reported to the Criminal Justice Court alleged bribery payments for the granting of television rights for the tournaments organized by Conmebol. This formal complaint was one of the arguments used by the Judiciary for the prosecution of Eugenio Figueredo for fraud and money laundering.

Pablo Barreiro, counselor of the Footballer's Association, said to *El País* that, according to leaked transcripts of the files of people who declared as investigated parties, Conmebol might have sold the television rights of the Copa América Centenario to an American network broadcaster and would have reserved an advertising percentage in favor of Datisa (Full Play

and others). "The Footballer's Association has submitted an official letter on the subject. We hope that this fact is investigated," said Barreiro.

Full Play is the current owner of the television rights for the Uruguayan Soccer Team. The AUF is facing financial difficulties due to non-compliance by Full Play. And it will analyze the termination of the contract with Full Play because it considers that the company has incurred in breach of contract, having had frozen by the Justice both a guarantee of USD 1,700,000 and two installments of USD 500,000 provided by the contract.

**SCHEDULE B**

**DOCUMENTS TO BE PRODUCED BY ASOCIACIÓN URUGUAYA DE FÚTBOL**

The Definitions and the Instructions that appear below form an integral part of the specific requests for the production of documents that follow, and must be read in conjunction with them. It is expected that the Definitions and the Instructions set forth will be followed in searching for and producing documents responsive to the specific requests for production.

**<u>DEFINITIONS</u>**

As used in these Requests, the following terms shall be defined as follows:

1.      The terms "You," "Your," or "AUF" mean the Asociación Uruguaya de Fútbol, its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it.

2.      The term "Second Amended Complaint" means the Second Amended Complaint in this action, No. 1:16-cv-24431 (S.D. Fla. March 6, 2017), ECF No. 78.

3.      The term "GolTV" means GolTV, Inc., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

1

4.      The term "Global Sports" means Global Sports Partners LLP, its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

5.      The term "GolTV Latin America" means Gol TV LatinAmerica S.A.C., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

6.      The term "Tenfield" means Tenfield S.A., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

7.      The term "Uruguayan Criminal Complaint" means the criminal complaint filed in Uruguay in the first instance by certain Uruguayan soccer clubs, which proceedings are referenced in the Second Amended Complaint at Paragraphs 10 and 79.

8.      The term "Conmebol" means the Confederación Sudamericana de Fútbol, and any of its owners, subsidiaries, officers, directors, employees, agents, or counsel (including outside counsel).

9.      The terms "document" or "documents" include writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

10.     The term "including," or any derivative thereof, means including, but not limited to, the requested item(s).

11.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.     The terms "relevant to" or "concerning" mean relating to, referring to, describing, evidencing or constituting.

14.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.     The term "Date" means the exact date, month, and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

16.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## **INSTRUCTIONS**

1.      Restate each request for production in Your written response followed immediately by Your response to each request.

2.      You should respond to each document request separately.

3.      You should produce any responsive documents as they are kept in the ordinary course of Your business.

4.      Documents shall be produced and numbered in such a manner that ensures that the source of each document may be determined.

5.      Each requested document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto, whether by paper clip or any other manner.  If Documents responsive to a Request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and identify the company, division, department, and/or individual from whose files the document is being produced.

6.      Whenever necessary to bring within the scope of any document request that might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

7.       Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

4

8.      If, in responding to these requests for production, You encounter an ambiguity in construing either the request or a definition or instruction pertaining to the request, set forth the matter deemed ambiguous and the construction that You used in responding.

9.      If You object to any request for production or subpart thereof on any ground, specify Your objection, furnish a response to all portions of such request to which You have no objection, and state whether any responsive materials are being withheld on the basis of any objection.  No part of any request for production shall be left unanswered merely because an objection has been interposed to another part of the request.

10.      If any Document is currently not available and is in the possession of another party, identify the person or persons from whom the Document may be obtained.  If any responsive Document has been destroyed or lost, describe the nature of the Document, identify the person(s) who created, sent and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document.  Identify when it was destroyed or lost, the person who destroyed or lost the Document, the person who directed that it be destroyed, and the reason for destruction.

11.      If You object to producing any responsive document on the basis of a claim of attorney-client privilege, or on the basis of the work-product doctrine, or any other evidentiary privilege or protection, the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (a) For documents or

5

electronically stored information, to the extent the information is readily obtainable from the witness being deposed or otherwise: (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel); (2) general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; and (4) such other information as is sufficient to identify the document or electronically stored information for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.  (b) For oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and (3) the general subject matter of the communication.

12.     Electronically stored information ("ESI") is to be produced in a single-page TIFF format, with load files demarcating document breaks, providing parent-child information, OCR, and relevant metadata (defined in the following Instruction), except that Excel or other spreadsheets, and PowerPoint or other slideshow presentations, are to be produced in native format.  Responsive non-ESI documents are to be produced: (i) in a single-page TIFF format, with load files demarcating document breaks, and containing searchable document text (that is, OCR data), (ii) in a manner that reflects physical boundaries such as boxes, folders, tabs, etc., and (iii) in a manner which reflects the document custodian.

13.     You must provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC,

Date Sent, Time Sent, Date Received, Duplicate Custodian, InReplytoID, IntMsgID, Source, Comments, Time Received, Subject, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or equivalent thereof).

14.     Unless otherwise specified, the relevant time period for these Requests shall be from January 1, 1998 to the date of production.

15.     Nothing in these requests is to be construed as an admission or waiver on the part of Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US), Inc., Fox Networks Group, Inc., Carlos Martinez, Hernan Lopez, James Ganley, T&T Sports Marketing Ltd., Torneos y Competencias S.A., Alejandro Burzaco, and Juan Angel Napout.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All documents or communications concerning any bribes paid, attempted to be paid, or offered to be paid, by GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, or any of their agents, to AUF, Conmebol, or any official of AUF or Conmebol.

2.     All contracts between You and Tenfield, GolTV, Global Sports, GolTV Latin America, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli or any business entity they own in whole or in part, including, but not limited to, contracts related to the television rights for AUF matches, AUF jersey sponsorship rights, or AUF static advertising rights.

3.     All documents or communications between You and GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, or any of their agents, related to the above-captioned action case, *GolTV, et al. v. Fox Sports*

*Latin America, et al.*, No. 1:16-cv-24431 (S.D. Fla. 2016), including but not limited to any PowerPoint presentation or other handouts, notes, or other document from any presentation or videoconference discussing this case or with any attorney in the above-captioned case.

4.    All testimony or documents You have provided to a Uruguayan Court, prosecutor, or other entity related to the Uruguayan Criminal Complaint, including, but not limited to, all documents and communications with Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, their agents, or any business entity they own (in whole or in part).

## SCHEDULE C

## DOCUMENTS TO BE PRODUCED BY TENFIELD S.A.

The Definitions and the Instructions that appear below form an integral part of the specific requests for the production of documents that follow, and must be read in conjunction with them. It is expected that the Definitions and the Instructions set forth will be followed in searching for and producing documents responsive to the specific requests for production.

## **DEFINITIONS**

As used in these Requests, the following terms shall be defined as follows:

1.      The terms "You," "Your," or "Tenfield" mean Tenfield S.A., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli.

2.      The term "Second Amended Complaint" means the Second Amended Complaint in this action, No. 1:16-cv-24431 (S.D. Fla. March 6, 2017), ECF No. 78.

3.      The term "GolTV" means GolTV, Inc., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

1

4.      The term "Global Sports" means Global Sports Partners LLP, its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

5.      The term "GolTV Latin America" means Gol TV LatinAmerica S.A.C., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

6.      The term "Uruguayan Criminal Complaint" means the criminal complaint filed in Uruguay in the first instance by certain Uruguayan soccer clubs, which proceedings are referenced in the Amended Complaint at Paragraphs 10 and 79.

7.      The term "AUF" means the Asociación Uruguaya de Fútbol, and any of its owners, subsidiaries, officers, directors, employees, agents, or counsel (including outside counsel).

8.      The term "Conmebol" means the Confederación Sudamericana de Fútbol, and any of its owners, subsidiaries, officers, directors, employees, agents, or counsel (including outside counsel).

9.      The terms "document" or "documents" include writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

10.      The term "including," or any derivative thereof, means including, but not limited to, the requested item(s).

11.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12.      The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.      The terms "relevant to" or "concerning" mean relating to, referring to, describing, evidencing or constituting.

14.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.      The term "Date" means the exact date, month, and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

16.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## **INSTRUCTIONS**

1.      Restate each request for production in Your written response followed immediately by Your response to each request.

3

2.      You should respond to each document request separately.

3.      You should produce any responsive documents as they are kept in the ordinary course of Your business.

4.      Documents shall be produced and numbered in such a manner that ensures that the source of each document may be determined.

5.      Each requested document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto, whether by paper clip or any other manner.  If Documents responsive to a Request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and identify the company, division, department, and/or individual from whose files the document is being produced.

6.      Whenever necessary to bring within the scope of any document request that might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

7.       Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

8.      If, in responding to these requests for production, You encounter an ambiguity in construing either the request or a definition or instruction pertaining to the request, set forth the matter deemed ambiguous and the construction that You used in responding.

9.      If You object to any request for production or subpart thereof on any ground, specify Your objection, furnish a response to all portions of such request to which You have no objection, and state whether any responsive materials are being withheld on the basis of any

4

objection.  No part of any request for production shall be left unanswered merely because an objection has been interposed to another part of the request.

10.     If any Document is currently not available and is in the possession of another party, identify the person or persons from whom the Document may be obtained.  If any responsive Document has been destroyed or lost, describe the nature of the Document, identify the person(s) who created, sent and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document.  Identify when it was destroyed or lost, the person who destroyed or lost the Document, the person who directed that it be destroyed, and the reason for destruction.

11.     If You object to producing any responsive document on the basis of a claim of attorney-client privilege, or on the basis of the work-product doctrine, or any other evidentiary privilege or protection, the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (a) For documents or electronically stored information, to the extent the information is readily obtainable from the witness being deposed or otherwise: (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel); (2) general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; and (4) such other information as is sufficient to identify the document or electronically stored information for a subpoena duces

tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.  (b) For oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and (3) the general subject matter of the communication.

12.     Electronically stored information ("ESI") is to be produced in a single-page TIFF format, with load files demarcating document breaks, providing parent-child information, OCR, and relevant metadata (defined in the following Instruction), except that Excel or other spreadsheets, and PowerPoint or other slideshow presentations, are to be produced in native format.  Responsive non-ESI documents are to be produced: (i) in a single-page TIFF format, with load files demarcating document breaks, and containing searchable document text (that is, OCR data), (ii) in a manner that reflects physical boundaries such as boxes, folders, tabs, etc., and (iii) in a manner which reflects the document custodian.

13.      You must provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Duplicate Custodian, InReplytoID, IntMsgID, Source, Comments, Time Received, Subject, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or equivalent thereof).

14.     Unless otherwise specified, the relevant time period for these Requests shall be from January 1, 1998 to the date of production.

15.     Nothing in these requests is to be construed as an admission or waiver on the part of Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US), Inc., Fox Networks Group, Inc., Carlos Martinez, Hernan Lopez, James Ganley, T&T Sports Marketing Ltd., Torneos y Competencias S.A., Alejandro Burzaco, and Juan Angel Napout.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All documents and communications concerning Your payments to the AUF, Conmebol or AUF or Conmebol officials (in their official or unofficial capacity, whether authorized or unauthorized), including, but not limited to, all documents and communications concerning Your bribes, attempts to bribe, or offers to bribe any AUF or Conmebol official.

2.     All contracts between You and the AUF, including, but not limited to, contracts related to the television rights for AUF matches, AUF jersey sponsorship rights, or AUF static advertising rights.

3.     All documents or communications between You and AUF, GolTV, Global Sports, GolTV Latin America, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, or any of their agents, related to the above-captioned action case, *GolTV, et al. v. Fox Sports Latin America, et al.*, No. 1:16-cv-24431 (S.D. Fla. 2016), including but not limited to any PowerPoint presentation or other handouts, notes, or other document from any presentation or videoconference discussing this case or with any attorney in the above-captioned case.

4.     All testimony or documents You have provided to a Uruguayan Court, prosecutor, or other entity related to the Uruguayan Criminal Complaint, including, but not limited to, all documents and communications with Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, their agents, or any business entity they own (in whole or in part).

**SCHEDULE D**

**DOCUMENTS TO BE PRODUCED BY FULL PLAY GROUP S.A.**

The Definitions and the Instructions that appear below form an integral part of the specific requests for the production of documents that follow, and must be read in conjunction with them.  It is expected that the Definitions and the Instructions set forth will be followed in searching for and producing documents responsive to the specific requests for production.

## <u>DEFINITIONS</u>

As used in these Requests, the following terms shall be defined as follows:

1.      The terms "You," "Your," or "Full Play" mean Full Play Group S.A., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including but not limited to, Hugo Jinkis and Mariano Jinkis.

2.      The term "GolTV" means GolTV, Inc., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

3.      The term "Global Sports" means Global Sports Partners LLP, its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or

1

controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

4.      The term "GolTV Latin America" means Gol TV LatinAmerica S.A.C., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

5.      The term "AUF" means the Asociación Uruguaya de Fútbol, and any of its owners, subsidiaries, officers, directors, employees, agents, or counsel (including outside counsel).

6.      The term "Conmebol" means the Confederación Sudamericana de Fútbol, and any of its owners, subsidiaries, officers, directors, employees, agents, or counsel (including outside counsel).

7.      The term "Tenfield" means Tenfield S.A., its predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and/or any entities it has acquired or that have merged with it, including any organization or entity that it manages or controls, together with all present and former owners, partners, directors, officers, employees, agents, representatives, or any person acting or purporting to act on behalf of it, including, but not

limited to, Francisco "Paco" Casal, Nelson Gutierrez, and Enzo Francescoli or any business entity they own in whole or in part.

8.      The terms "document" or "documents" include writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

9.      The term "including," or any derivative thereof, means including, but not limited to, the requested item(s).

10.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

11.     The term "relevant to" means relating to, referring to, describing, evidencing or constituting.

12.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

13.     The term "Date" means the exact date, month, and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

14.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## **INSTRUCTIONS**

1.      Restate each request for production in your written response followed immediately by your response to each request.

3

2.      You should respond to each document request separately.

3.      You should produce any responsive documents as they are kept in the ordinary course of Your business.

4.      Documents shall be produced and numbered in such a manner that ensures that the source of each document may be determined.

5.      Each requested document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto, whether by paper clip or any other manner.  If Documents responsive to a Request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and identify the company, division, department, and/or individual from whose files the document is being produced.

6.      Whenever necessary to bring within the scope of any document request that might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

7.       Each request shall be construed independently and without reference to any other request herein for purposes of limitation, unless a request so specifies.

8.      If, in responding to these requests for production, you encounter an ambiguity in construing either the request or a definition or instruction pertaining to the request, set forth the matter deemed ambiguous and the construction that you used in responding.

9.      If you object to any request for production or subpart thereof on any ground, specify Your objection, furnish a response to all portions of such request to which you have no objection, and state whether any responsive materials are being withheld on the basis of any

4

objection.  No part of any request for production shall be left unanswered merely because an objection has been interposed to another part of the request.

10.    If any Document is currently not available and is in the possession of another party, identify the person or persons from whom the Document may be obtained.  If any responsive Document has been destroyed or lost, describe the nature of the Document, identify the person(s) who created, sent and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document.  Identify when it was destroyed or lost, the person who destroyed or lost the Document, the person who directed that it be destroyed, and the reason for destruction.

11.    If you object to producing any responsive document on the basis of a claim of attorney-client privilege, or on the basis of the work-product doctrine, or any other evidentiary privilege or protection, the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (a) For documents or electronically stored information, to the extent the information is readily obtainable from the witness being deposed or otherwise: (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel); (2) general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; and (4) such other information as is sufficient to identify the document or electronically stored information for a subpoena duces

tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.  (b) For oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and (3) the general subject matter of the communication.

12.     Electronically stored information ("ESI") is to be produced in a single-page TIFF format, with load files demarcating document breaks, providing parent-child information, OCR, and relevant metadata (defined in the following Instruction), except that Excel or other spreadsheets, and PowerPoint or other slideshow presentations, are to be produced in native format.  Responsive non-ESI documents are to be produced: (i) in a single-page TIFF format, with load files demarcating document breaks, and containing searchable document text (that is, OCR data), (ii) in a manner that reflects physical boundaries such as boxes, folders, tabs, etc., and (iii) in a manner which reflects the document custodian.

13.      You must provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Duplicate Custodian, InReplytoID, IntMsgID, Source, Comments, Time Received, Subject, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or equivalent thereof).

14.     Unless otherwise specified, the relevant time period for these Requests shall be from January 1, 2009 to May 27, 2015.

15.     Nothing in these requests is to be construed as an admission or waiver on the part of Defendants Fox Sports Latin America, Ltd., Pan American Sports Enterprises Company, Fox International Channels (US), Inc., Fox Networks Group, Inc., Carlos Martinez, Hernan Lopez, James Ganley, T&T Sports Marketing Ltd., Torneos y Competencias S.A., Alejandro Burzaco, and Juan Angel Napout.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Documents sufficient to show all payments (monetary, in-kind, or otherwise) made to You by GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, their agents, or any business they own (in whole or in part).

2.     All contracts between You and GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, their agents, or any business they own (in whole or in part).

3.     All documents or communications between You and GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, or any of their agents, related to the above-captioned action, *GolTV, et al. v. Fox Sports Latin America, et al.*, No. 1:16-cv-24431 (S.D. Fla. 2016), including but not limited to any PowerPoint presentation or other handouts, notes, or other document from any presentation or videoconference discussing this case or with any attorney in the above-captioned case.

4.     All documents or communications concerning any bribes paid, attempted to be paid, or offered to be paid, by GolTV, Global Sports, GolTV Latin America, Tenfield, Francisco "Paco" Casal, Nelson Gutierrez, or Enzo Francescoli, or any of their agents, to AUF, Conmebol, or any official of AUF or Conmebol.