### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-24431-CIV-ALTONAGA/McALILEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - X

GOLTV, INC., *et al.*,

        Plaintiffs,

vs.

FOX SPORTS LATIN AMERICA, LTD., *et al.*,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       **REDACTED PORTIONS FILED UNDER SEAL AND EX PARTE**

### UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO CERTAIN DISCOVERY REQUESTS

#### PRELIMINARY STATEMENT

The United States (the "government"), through the undersigned Special Assistant United States Attorneys, respectfully submits this memorandum of law in support of its objection to certain discovery requests by the plaintiffs in this case (the "Civil Case") on the ground that plaintiffs seek certain documents, the disclosure of which would pose unwarranted risks to the integrity of the government's ongoing investigation of conduct at issue in the Civil Case and in a series of related criminal cases, including United States v. Napout, et al., 15 CR 252 (S-2) (PKC) and the underlying and related indictments, in the United States District Court for the Eastern District of New York (collectively, the "Criminal Case").   Specifically, the government objects to plaintiffs' demands that civil defendant Torneos y Competencias, S.A., ("Torneos") produce all presentations and documents prepared by Torneos and provided to the United States Attorneys' Office for the Eastern District of New York ("EDNY") in connection with Torneos's cooperation with the government's investigation of specified aspects of the Criminal Case.  See Plaintiffs'

First Set of Requests For Prod. to Def. Torneos, Request No. 23.[1]   For the reasons set forth below, the Court should sustain the government's objection to this request for production.[2]

BACKGROUND

I.    The Criminal Case

A.    The Indictments

On May 20, 2015, a federal grand jury sitting in the Eastern District of New York returned a 47-count indictment charging 14 individuals, including civil defendants Alejandro Burzaco and Eugenio Figueredo, as well as Hugo and Mariano Jinkis, principals of civil defendant Full Play Group, S.A., with racketeering conspiracy, wire fraud, and money laundering offenses, among other crimes.  See United States v. Webb, et al., 15-CR-252.   The original indictment was unsealed on May 27, 2015, following the arrests of some of the charged defendants.   On November 25, 2015, the grand jury returned a 92-count superseding indictment charging 16 additional defendants, including civil defendant Juan Ángel Napout, with racketeering conspiracy, wire fraud, and money laundering offenses, among other crimes.   See United States v. Hawit, et al., 15-CR-252 (S-1) (PKC).   The superseding indictment (hereinafter, the "Indictment") was unsealed on December 3, 2015, following the arrests of certain of the newly charged defendants.   On June 14, 2017, in anticipation of trial, the government sought and obtained a second

---

[1] The government has met and conferred with the parties to the Civil Case on multiple occasions since the discovery hearing held on April 24, 2018, resulting in a substantial narrowing of the issues in dispute.   The government understands that plaintiffs are now seeking, pursuant to their request 23(c), presentations prepared by counsel for Torneos and related materials provided to the government.

[2] In accordance with the procedure discussed at the discovery hearing held on April 24, 2018 and orally approved by the Court, without objection from the parties to the Civil Case, the government submits this Memorandum of Law under seal and ex parte, with a redacted version filed on the public docket.   See Trans. dated Apr. 24, 2018, at 171-75.

superseding indictment against the three trial defendants then before the court – Napout, former Peruvian soccer official Manuel Burga, and former Brazilian soccer official José Maria Marin. See United States v. Napout, et al., 15-CR-252 (S-2).

Several of the defendants in the Criminal Case were charged with, among other conduct, the same conduct the Plaintiffs subsequently alleged in the initial complaint in the Civil Case on filed on October 20, 2016 (ECF Dkt. No. 1) and in the amended and second amended complaints filed on March 6, 2017 and March 13, 2018, respectively (ECF Dkt. Nos. 78 and 325) (collectively, the "Civil Complaint").   The plaintiffs' pleadings in the Civil Case are expressly derivative of the government's allegations in the Criminal Case, principally concerning bribery and corruption in connection with a series of international soccer club tournaments referred to in the Civil Complaint and herein as the "Club Tournaments."   See, e.g., Second Amended Complaint ¶¶ 2, 3, 6, 7, 9, 11, 29, 60, 62, 66, 100, 105, 127, 135-37, 176, 261, 267 (non-exhaustive examples of citations to the Indictment or related documents in the Criminal Case); see also Gov't Mot. to Intervene and Stay Civil Proceedings, ECF Dkt. Entry No. 134, at 4-5 (noting Civil Case plaintiffs' reliance on allegations in Criminal Case).

     B.    Guilty Pleas and Trial

The guilty pleas of more than 20 individual defendants and three corporate entities have been made public during the course of the Criminal Case and the related investigation. Following a six-week trial in November and December 2017, Napout and Marin were convicted of racketeering conspiracy and related corruption offenses, including offenses directly related to the conduct at issue in the Civil Case.   (Burga was acquitted of the lone count on which he was extradited to the United States but remains under indictment on four other charges.)   Although Napout was the only party to the Civil Case who was tried in the Criminal Case, the testimony at

trial nevertheless implicated <u>all</u> of the parties to the Civil Case in possible criminal conduct, including GolTV (through its principal Francisco "Paco" Casal), certain of the Fox entities, Carlos Martinez, Hernan Lopez, James Ganley, T&T Sports Marketing Ltd. ("T&T"), Torneos, Alejandro Burzaco, Full Play Group, Confederacion Sudamericana de Futbol ("Conmebol"), Eugenio Figueredo, and Napout.  <u>See</u>, <u>e.g.</u>, <u>United States v. Napout, et al.</u>, 15-CR-252, Trial Trans. 351, 361-371 (Casal); 315 (Ganley); 498, 563, 566 (Lopez and Martinez); 253-254, 291, 310 (Fox); 296 (T&T); 297 (Figueredo); 298, 329-330 (Napout); 378-390 (Full Play, Torneos, Conmebol, and Burzaco); <u>see also</u> FIFA Trial: Fox Sports Accused of Playing Role in Bribing Officials, The New York Times, (Nov. 14, 2017) <u>available</u> <u>at</u> https://www.nytimes.com/2017/11/14/sports/soccer/fifa-trial-fox-sports.html.  The trial testimony concerning the various parties to the Civil Case (some of whom had previously been implicated in charging instruments and other case-related filings) pre-dated the recent sets of discovery demands for presentation decks provided by cooperating entity Torneos and other sensitive materials (some of which demands have been withdrawn or deferred).

      C.    <u>Protective Measures in the Criminal Case</u>

      Throughout the prosecution, the government has taken great care to limit the dissemination of certain materials produced to the defendants in the Criminal Case in an effort to protect the integrity of its ongoing investigation and the safety of witnesses.  These measures, which were approved by the United States District Court for the Eastern District of New York, included a protective order, which (as amended and extended) limited dissemination of discovery and <u>Jencks</u> material beyond the defense teams.  <u>See</u> Orders dated Jan. 28, 2016 and Sept. 19, 2017 (E.D.N.Y.).  Although the protective order was challenged during pretrial litigation, the District Court declined to lift its protections.  For example, when defendant Napout moved to vacate or

modify the protective order, the District Court denied Napout's motion, holding in relevant part that there was "'good cause' for continuing the Protective Order based on evidence proffered by the government regarding efforts to obstruct justice and tamper with witnesses and evidence by this Defendant and others, and the need to protect the government's ongoing investigations . . . ." Order dated Sept. 20, 2017 (E.D.N.Y.).   In two separate violations of the protective order, counsel for Napout filed on the public docket protected material, which the Court, upon motion of the government, promptly ordered stricken or removed from the docket.   See Orders dated July 27, 2017 and Oct. 27, 2017 (E.D.N.Y.).

Other protective measures taken by the Court in light of the need to protect the integrity of the government's ongoing investigation and the safety of witnesses have included: granting motions to maintain certain filings and transcripts under seal, despite challenges from members of the national and international news media (see, e.g., Orders dated May 29, 2015, Apr. 16, 2016 and Aug. 23, 2016); deferring disclosure of certain materials to the trial defendants (see, e.g., Order dated Apr. 11, 2017); granting the government's motion for a limited unsealing order as to certain search warrants, which limited disclosure to specified counsel of record for the trial defendants and ordered that they "shall not remove, transfer, transmit, or travel with any of the WARRANTS in any form, including paper and electronic, to any location outside of the United States," and prohibited counsel for the defendants from "communicating, disseminating, or sharing, orally or in writing, the substance of the WARRANTS to or with any third party" (Order dated Aug. 7, 2017); and granting, over defense objections, the government's motion for a partially anonymous and semi-sequestered jury (Order dated Oct. 17, 2017), among other protective measures.

        D.     <u>Involvement of Torneos in the Criminal Case</u>

On December 13, 2016, Torneos entered into a four-year deferred prosecution agreement ("DPA") with the EDNY. <u>See</u> <u>United States v. Torneos y Competencias S.A.</u>, No. 16-CR-634 (PKC) (E.D.N.Y. Dec. 13, 2016). In connection with the DPA, Torneos admitted its involvement and the involvement of several co-conspirators in, among other things, the conduct at issue in the Civil Case. As summarized in the DPA and referenced in a related press release issued by the EDNY, Torneos's decision to begin cooperating with the government's investigation immediately after the initial charges in the Criminal Case were unsealed was an important factor in the government's decision to defer prosecution of the company. <u>See</u> DPA at 3-4 (noting relevant considerations, including cooperation); Press Release, Argentine Sports Marketing Company Admits to Role in International Soccer Bribery Conspiracy (Dec. 13, 2016) (noting "prompt and decisive actions" to cooperate after unsealing of charges), <u>available</u> <u>at</u> https://www.justice.gov/usao-edny/pr/argentine-sports-marketing-company-admits-role-international-soccer-bribery-conspiracy.

During the course of that cooperation, Torneos conducted a thorough internal investigation, provided documents and related information to the government, and made presentations to the government concerning relevant factual information, often with the aid of slide decks containing the analysis of attorneys for Torneos that were subsequently produced to the EDNY. Among other things, the presentations and the accompanying presentation decks and related material reflected responses to the government's requests for information on particular areas of investigative interest, identified potential witnesses to, and participants in, criminal conduct, and provided analysis of underlying contracts and business records.

E.      The Government's Ongoing Investigation

The government's investigation into corruption in international soccer is ongoing, active, and is ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[3] The government notes that it sought to inform this Court of certain aspects of its ongoing investigation, including ███████████████████████, in a proposed ex parte portion of the government's memorandum in support of its motion to intervene and stay discovery.  Judge Altonaga granted the government's motion to intervene and denied its motion to stay without reference to the proposed ex parte filing, which she declined to permit.  See ECF Dkt. No. 127 (rejecting government's request to file portions of its motion to intervene and stay discovery under seal and ex parte).  The government makes the instant ex parte submission after proposing during the April 24, 2018 discovery hearing that such information may aid the Court and no party having raised any objections.

███████████████████████████████████████████

██████████████████████████████████

II.     The Government's Intervention in the Civil Case

On May 25, 2017, the Court granted the government's motion to intervene but denied its motion to stay the civil proceedings.   ECF Dkt. No. 140 at 8.   In granting the motion to intervene, the Court acknowledged the "substantial overlap" between the Civil and Criminal Cases and the fact that an indictment had already been returned in the Criminal Case.   Rather than put the entire Civil Case on hold, the Court held that "[a]ny potential concerns regarding discovery are adequately addressed if the civil case proceeds as usual, but the Government is allowed to participate in the civil discovery process as needed to object to particular requests or request protective orders related to certain evidence."   Id.

III.    The Government's Participation in Discovery and the Current Dispute

    A.     Jurisdictional Discovery

The government has participated in the discovery process, pursuant to the order referenced above, in order to protect the interests at stake in the Criminal Case.   Throughout the Civil Case, the government has acted sparingly in its role as intervener.   The government appeared at hearings held before U.S. Magistrate Judge William C. Turnoff in June and July 2017 during the jurisdictional discovery phase of the case, see ECF Dkt. Nos. 164, 172, and 209; at an October 11, 2017 hearing before Judge Cecilia M. Altonaga on the government's motion to stay discovery pending completion of the criminal trial in United States v. Napout, et al., 15 CR 252 (S-2) (PKC), which Judge Altonaga granted in part, ordering a stay of deposition discovery until completion of the trial, see ECF Dkt. Nos. 258, 260; and, more recently, at the April 24, 2018 hearing before Your Honor regarding merits discovery, see ECF Dkt. No. 357.   At those hearings, the government raised narrow concerns regarding discovery in the Civil Case.   In particular, the government made limited objections to certain discovery requests and certain anticipated lines of

deposition questioning seeking particular materials and information the disclosure of which could jeopardize the integrity of the government's Criminal Case and ongoing grand jury investigation.

While the government has advanced limited objections in the course of the Civil Case, it has correspondingly noted extremely broad requests—by the plaintiffs and certain defendants—seeking information about the government's witnesses and investigation.   Some of the requests for production propounded by various parties in this litigation would go directly to the ongoing aspects of the government's active grand jury investigation.   For example, request numbers 23 and 15 from the Plaintiffs to Torneos and Napout, respectively, requested "[a]ll documents produced to, or received from . . . the [government] . . . in connection with any investigation or case involving Club Tournament Rights," and request number 7 from the Fox entities to Napout requested "[a]ll documents and witness statements that . . . the United States provided or communicated to You concerning the Club Tournaments."

B.   The Current Dispute

The government has limited its objections to demands for documents the production of which is not proportional to the needs of the case in light of the government's interests in protecting its ongoing investigation.   After meeting and conferring with counsel for the plaintiffs, Torneos, and Napout, the government understands that the issues in dispute have been narrowed substantially.   The government's remaining objection (apart from issues that have been deferred with the agreement of the requesting party[4]) is limited to the plaintiffs' request for presentation decks and other materials prepared by Torneos's counsel and produced by Torneos to the

---

[4] In addition to the deferral of resolution of the dispute over request 7 by the Fox entities, among other things, the government understands that plaintiffs and counsel for Napout have agreed to seek resolution of Napout's Fifth Amendment objection to production of certain materials, including materials produced to Napout in the Criminal Case pursuant to Rule 16, before pressing their dispute as to whether the documents are otherwise discoverable given the protective order in place in the Criminal Case and other concerns.   The parties will continue to meet and confer on how to proceed should the Court reject Napout's Fifth Amendment arguments, without prejudice to the parties' ability to bring any further disagreement to the Court.

government in connection with the government's investigation to the extent the materials are relevant to the Club Tournaments.

ARGUMENT

The Court should sustain the government's objection to plaintiffs' demand for production of the specified documents because disclosure of the documents at issue would present significant risks to the government's ongoing prosecution and investigation in the Criminal Case, including by revealing information about the government's ongoing investigation and chilling the continuing cooperation of Torneos and other individuals and entities currently in a cooperative posture with the government or who may decide to cooperate in the future.

I.     Applicable Law

District courts have broad discretion to manage and limit civil discovery.  See Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002) (court's discretion regarding discovery management "is and must be broad"); Johnson v. Bd. of Regents of Univ. of Georgia, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."); Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) ("The trial court . . . is given wide discretion in setting the limits of discovery . . . .").  This includes determining the appropriate scope of discovery.  Id.  "[T]he court can exercise its discretion to manage the civil litigation to avoid interference with the criminal case."  Degen v. United States, 517 U.S. 820, 827 (1996).

At its most basic, information sought in civil discovery must be relevant.  Fed. R. Civ. Pro. 26(b)(1); Am. Gen. Life Ins. Co. v. Azurin, No. 14-62234-CIV, 2016 WL 7508086, at *1 (S.D. Fla. Feb. 2, 2016); SEC v. BankAtlantic, Inc., 285 F.R.D. 661, 665-66 (S.D. Fla. 2012). "[W]hen relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request." Am. Fed'n of State, Cty. & Mun. Employees Council 79 v.

10

Scott, 277 F.R.D. 474, 477 (S.D. Fla. 2011) (citing Dean v. Anderson, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002)).

Even when information sought in discovery is facially relevant, however, the scope of discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Pro. 26(b)(1). To that end, courts will cabin discovery of relevant evidence where it "is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure." Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla. 2007); see Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) (affirming district court's decision that the Center for Disease Control's interests in keeping its study participants' names confidential outweighed the discovery interests of defendant in toxic shock syndrome litigation).

Courts have long recognized that preserving the integrity of an ongoing criminal investigation is a paramount consideration in limiting civil discovery. See, e.g., Degen, 517 U.S. at 827 (in case where party defended civil forfeiture action but refused to appear in criminal action, "if, for instance, the [g]overnment were unable to rebut [the party's] arguments [in the civil case] except by revealing confidential details of the criminal investigation, the court could consider controlling or limiting the form of proof, or in an extreme case even the theories it permits [the party] to pursue, to prevent him from exploiting the asymmetries he creates . . ."); Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) ("A trial judge should give substantial weight to [the policy giving priority to the public interest in law enforcement] in balancing the policy against the

right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.").

It is longstanding precedent in this Circuit that "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit." Id. at 487; see also Fed. Trade Comm'n v. Mail Tree Inc., No. 15-61034-CIV, 2016 WL 3950034, at *2 (S.D. Fla. Feb. 29, 2016) ("the public has an interest in ensuring the criminal discovery process is not subverted" (internal quotation marks omitted)); SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (recognizing that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter.").

Moreover, "[u]nder federal common law, there is a qualified privilege which protects disclosure of information contained in criminal investigations." White v. City of Fort Lauderdale, 2009 WL 1298353, at *2 (S.D. Fla. May 8, 2009). This privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988); see United States v. Van Horn, 789 F.2d 1492, 1507 (11th Cir. 1986) ("We recognize a qualified government privilege not to disclose sensitive investigative techniques."); In re Matter of Eisenberg, 654 F.2d 1107, 1110 n.5 (5th Cir. 1981) (recognizing the federal privilege for production of documents relating to ongoing criminal investigations); Brown v. Thompson, 430 F.2d 1214, 1215 (5th Cir. 1970) (deeming files in open homicide investigation to be privileged and not subject to civil discovery); Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969) (the "pendency of a

criminal investigation is a reason for denying discovery of investigative reports" in civil litigation). There is a "strong presumption" against lifting the privilege.   Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997) (citing Black v. Sheraton Corp., 564 F.2d 531, 545-47 (D.C. Cir. 1977)).   Moreover, "[t]he claim for application of the privilege is 'somewhat stronger' when law enforcement is seeking to protect ongoing investigations as contrasted with closed files[.]"   Vodak v. City of Chicago, 2004 WL 2032147, at *4 (N.D. Ill. 2004) (citing G-69 v. Degnan, 130 F.R.D. 326, 332 (D.N.J. 1990)).

Because the privilege is qualified, "a court must balance the government's interest in confidentiality against the litigant's need for information."   JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals, 297 F.R.D. 522, 529 (S.D. Fla. 2013).   The privilege only may be overridden by the litigant's "substantial need for the documents and its inability to obtain their substantial equivalent by other means."   United States v. Davis, 131 F.R.D. 391, 395 (S.D.N.Y. 1990) (citing In re Department of Investigation, 856 F.2d 481, 484 (2d Cir. 1988)); see also Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984); In re M & L Bus. Mach. Co., Inc., 161 B.R. 689, 693 (D. Colo. 1993). The government's need for confidentiality can involve witness safety, see, e.g., United States v. Any & All Funds on deposit at JPMorgan Chase, No. 12 CIV. 7530 GBD, 2013 WL 5511348, at *4 (S.D.N.Y. Oct. 2, 2013), keeping investigative information out of the hands of criminal targets or subjects who will attempt to use "civil discovery to combat the criminal investigation and future prosecution," Eastwood Enterprises, LLC v. Farha, No. 8:07-CV-1940-T, 2010 WL 2836719, at *2 (M.D. Fla. July 19, 2010), and a desire not to chill witness cooperation, see, e.g., Martinez v. Fuentes, No. CV 15-2932 (BRM), 2017 WL 2345703, at *4 (D.N.J. May 30, 2017).   "In the end, society's interest in the assiduous prosecution of criminal wrongdoing almost always will

outweigh its interest in the resolution of a civil matter between private parties." In re Grand Jury Subpoena, 138 F.3d 442, 445 (1st Cir. 1998) (citing Nixon v. Fitzgerald, 457 U.S. 731, 754 n.37 (1982)).

The court's handling of this issue in State Comp. Ins. Fund v. Drobot, No. SACV130956AGCWX, 2016 WL 3546583, at *1 (C.D. Cal. Feb. 29, 2016), is informative. There, the plaintiff sued a number of defendants related to a complex healthcare kickback scheme. Id. The United States Attorney's Office and Federal Bureau of Investigation were pursuing an ongoing grand jury investigation into the same conduct. Id. In the heat of civil discovery, certain defendants requested that third parties or fellow co-defendants produce documents and communications exchanged with the United States Attorney's Office relating to the criminal case. Id. The government intervened in the case and argued that the discovery requests, which sought "disclosure of confidential information regarding the government's investigation," were protected from disclosure by the law enforcement privilege, of marginal relevance, and duplicative of underlying historical documents that were already being produced. Id. The court granted the government's motion, adopting the government's key point that permitting civil litigants to "discover[] 'details of communications between cooperating witnesses and the government could reveal information on the status and direction of the investigation, as well as the existence and location of potential evidence and other witnesses, which would provide the defendants or other interested parties with the opportunity to obstruct the investigation by tampering with witnesses and concealing or destroying evidence.'" Id. at *4. Moreover, the court recognized that the discovery requests regarding cooperators' communications with the government were of marginal or no relevance "when [d]efendants are free to demand the underlying documents that may have [been] exchanged with the government." Id.

II.     The Government's Objection to the Plaintiffs' Request Should be Sustained

      A.     Plaintiffs' Request for Presentations By Torneos

Plaintiffs have demanded that civil defendant Torneos produce presentation materials provided to the government during the course of Torneos's cooperation with the government's ongoing investigation.   The government understands that the underlying business records and documents referenced in and used in preparation of the presentation decks and related material have been or will be produced.   Accordingly, the government's objection is directed at plaintiffs' demand for access to analysis and evaluation of the underlying documents prepared at the request of the government during its ongoing investigation.   The government objects on the ground that the request seeks information of marginal, if any, relevance to the claims at issue in the Civil Case, given that the underlying records have been produced, and the disclosure of which would undermine important law enforcement interests.

      B.     Relevance

Because plaintiffs have received, or will receive, the underlying documents, the presentation materials are not relevant to any claim or defense in this case.   The government endorses Torneos's argument on this point and notes further that although a broad interpretation of relevance may be appropriate in most instances, here, given the law enforcement interest discussed below, the Court should require strict adherence to the requirement of relevance.

The materials at issue here cannot meet the applicable standard that they be "proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Fed. R. Civ. Pro. 26(b)(1).   That plaintiffs' request is disproportionate to the needs of the case, and that plaintiffs have no real need for the requested documents at all, is highlighted by their inability thus far to "show the relevancy

of the discovery request." Am. Fed'n of State, Cty. & Mun. Employees Council 79, 277 F.R.D. at 477. Throughout the meet and confer process and at the April 24, 2018 hearing, the government has repeatedly asked the plaintiffs to articulate the basis of relevance for the disputed presentation materials, and has received variations of the tautological response that if the presentations involve the Club Tournaments, they must be relevant. This is indicative of an impermissible fishing expedition and is inconsistent with the applicable legal standard for relevance.

        C.     Effect on Investigation

Even if the requested presentations were independently relevant, which they are not, the law enforcement interests at stake are significant and support the government's objection. Disclosure of the documents would undermine aspects of the government's ongoing investigation by revealing the government's interest in particular individuals, entities, and events. These risks are precisely why courts in this Circuit have long recognized a qualified law enforcement privilege. See, e.g., White, 2009 WL 1298353, at *2; Van Horn, 789 F.2d at 1507; In re Matter of Eisenberg, 654 F.2d at 1110 n.5; Brown v. Thompson, 430 F.2d at 1215; Swanner v. United States, 406 F.2d at 719.

Like in Drobot, in which the court precluded discovery seeking information about an ongoing government investigation that related to the issues in the civil case, here, "details of communications between cooperating witnesses and the government could reveal information on the status and direction of the investigation, as well as the existence and location of potential evidence and other witnesses . . . ." 2016 WL 3546583, at *4. The presentation decks and related material at issue include information assembled at the request of the government, including analysis of contractual relationships, identities of potential witnesses, identities of potential subjects of investigation, and the evolution of the government's investigative focus over time. To give one example, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

These documents are plainly revealing of the government's inquiries, thought processes, and focuses in its ongoing grand jury investigation.   Protecting these from disclosure on an ongoing basis—particularly from uncharged parties who were criminally implicated in sworn trial testimony and may have an interest in "mak[ing] use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents [they] would not otherwise be entitled to," Campbell, 307 F.2d at 487—is of paramount importance given the ongoing witness safety concerns and efforts to obstruct justice and tamper with witnesses that were repeatedly recognized by Judge Chen in the Criminal Case. By contrast, the plaintiffs have failed to show a "substantial need for the documents and [their] inability to obtain their substantial equivalent by other means," which is required for them to overcome the qualified privilege.   Davis, 131 F.R.D. at 395 (citing In re Department of Investigation, 856 F.2d at 484).   Because the plaintiffs are receiving all of the underlying documents, there is no need to disclose to them presentation compilations that would provide insight into the government's ongoing investigation, much less the "substantial need" required to overcome such a hurdle.   Id.

Beyond the effect of disclosing the particular information, a ruling that such information is generally available to civil litigants presents the risk of chilling cooperative conduct that the law should incentivize.   Indeed, the government is already reluctant to request documents or detailed presentations going forward for fear that such presentations will be sought by litigants in the Civil Case now or going forward.   This is having a real effect on the ongoing investigation.

Plaintiffs are not the only party to have expressed an interest in the documents, and it is not clear to the government where alliances may be formed among parties in the Civil Case as they consider their interests, if any, in connection with the Criminal Case.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that its objection to the plaintiffs discovery request be sustained.

Dated:      Brooklyn, New York
            May 15, 2018

                              Respectfully submitted,

                              RANDY HUMMEL
                              Attorney for the United States, Acting Under
                              Authority Conferred by 28 U.S.C. § 515.
                              Southern District of Florida

                  By:      /s/
                          Samuel P. Nitze
                          Special Assistant United States Attorney
                          Special Florida Bar ID No. A5502327
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                          Tel: (718) 254-6465
                          Fax: (718) 254-6320
                          samuel.nitze@usdoj.gov

                          M. Kristin Mace
                          Special Assistant United States Attorney
                          Special Florida Bar ID No. A5502326
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                          Tel: (718) 254-6879
                          Fax: (718) 254-6478
                          kristin.mace@usdoj.gov

                          Patrick T. Hein
                          Special Assistant United States Attorney
                          Special Florida Bar ID No. A5502324
                          271 Cadman Plaza East
                          Brooklyn, New York 11201

Tel: (718) 254-6284
Fax: (718) 254-7499
patrick.hein@usdoj.gov

Kaitlin T. Farrell
Special Assistant United States Attorney
Special Florida Bar ID No. A5502446
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6072
Fax: (718) 254-6320
kaitlin.farrell@usdoj.gov

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF on the 15th day of May, 2018.

        /s/_____

        Kaitlin T. Farrell

        Special Assistant United States Attorney
