**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-24431-CIV-ALTONAGA/McALILEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - X
GOLTV, INC., *et al.*,

        Plaintiffs,                          **REDACTED PORTIONS**
                                                               **FILED UNDER SEAL AND**
vs.                                                   **EX PARTE**

FOX SPORTS LATIN AMERICA, LTD., *et al.*,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS**
**TO CERTAIN DISCOVERY REQUESTS BY THE FOX DEFENDANTS**

     The United States (the "government") respectfully submits this memorandum of law in support of its objections to certain narrowed discovery requests by the Fox Defendants ("Fox") in this case (the "Civil Case"), namely, Fox's Requests for Production #2 and #3 to defendant Juan Ángel Napout for the following materials provided by the government to Napout in advance of his trial in the criminal case (the "Criminal Case")[1] as to government witnesses Luis Bedoya, Alejandro Burzaco, José Hawilla, Santiago Peña and Eladio Rodriguez: interview reports (including FBI Form 302s), testimony and witness statements (not including trial transcripts), and audio or video recordings or transcriptions of such recordings (the "Fox Requests"). The government incorporates by reference its memorandum dated May 15, 2018 (ECF No. 385), setting forth the government's objections to certain requests by the plaintiffs, which objections it also raises with regard to the Fox Requests. The government also raises herein the following additional objections: (1) the Fox Requests are overbroad and seek information not relevant to the Civil Case; and (2) production by Napout of the requested materials would allow Fox to use

---

[1] The Criminal Case includes <u>United States v. Napout, et al.</u>, 15 CR 252 (S-2) (PKC), and the underlying and related indictments, filed in the Eastern District of New York.

the Civil Case to circumvent the more limited discovery available in the Criminal Case and risk jeopardizing the government's ongoing investigation.

## BACKGROUND

In 2015, a federal grand jury in the Eastern District of New York returned indictments in the Criminal Case charging, among others, Juan Ángel Napout and Alejandro Burzaco, in a broad racketeering conspiracy running from 1991 to 2015, spanning multiple continents, and involving numerous criminal schemes.[2]  In 2016, Napout and Burzaco, among others, were named as defendants in the Civil Case, which alleges civil racketeering as to a narrow subset of conduct underlying the criminal racketeering conspiracy, namely bribery during the years 2000 to 2015 in connection with the Copa Libertadores, the Copa Sudamericana and the Recopa Sudamericana (collectively, the "Club Tournaments"), which are exclusively South American tournaments.

Shortly before trial began against Napout and two other criminal defendants in November 2017 (the "Criminal Trial"), the government produced, only to those three trial defendants, the statements of potential witnesses pursuant to the government's obligations under 18 U.S.C. § 3500 (the Jencks Act) and Giglio v. United States, 405 U.S. 150 (1972).[3]  A strict protective

---

[2] As alleged in paragraph 86 of the Second Superseding Indictment, the criminal schemes involved bribery in connection with, among other things: the rights held by CONCACAF for the Gold Cup and the CONCACAF Champions League; the rights held by CBF to the Copa do Brasil; the rights to World Cup qualifier matches held by certain national federations in the CONCACAF and CONMEBOL regions; the rights to friendly matches held by certain national federations; certain sponsorship rights for footwear, apparel, accessories, and equipment; and site selection for World Cup tournaments.

[3] The court ordered that the government was permitted to delay disclosure of the sensitive material until two days before a given witness was scheduled to testify, and denied Napout's motion for earlier disclosure.

2

order was entered limiting the use, and precluding dissemination of, that material and ordering that it be returned to the government or destroyed following any appeal in the Criminal Case. The court ordered the limited unsealing of certain sealed material for the limited purpose of providing it to the defendants in advance of the Criminal Trial. The testimony in the Criminal Trial implicated all of the parties to the Civil Case, including Fox, in possible criminal conduct. Following trial, Napout and another criminal defendant were convicted of racketeering conspiracy and other crimes.

    Since completion of the Criminal Trial in December 2017, the government's investigation into corruption in international soccer has continued. The investigation is active, ongoing and ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████[4]

## ARGUMENT

I.    <u>The Fox Requests Seek Information That Is Not Relevant to the Civil Case</u>

    Fox has demanded three overbroad categories of statements rather than limit their requests to specific subject matters relevant to the Civil Case, presumably to avoid the implications of the Court's prior rulings as to Napout's invocation of the Fifth Amendment. Although the government advised Fox that the overbroad requests would include material that is both sensitive and wholly irrelevant to the Civil Case, Fox has declined to limit its requests to what is at issue in the Civil Case.

---

[4] In accordance with the procedure discussed at the discovery hearing held on April 24, 2018 and orally approved by the Court, without objection from the parties to the Civil Case, the government submits this Memorandum of Law under seal and <u>ex parte</u>, with a redacted version filed on the public docket. See Trans. dated Apr. 24, 2018, at 171-75.

Rather, Fox has argued to the government that everything sought through the Fox Requests is necessarily relevant because the five specified individuals are "potential witnesses" in the Civil Case and, while Fox already has their Criminal Trial testimony about the Club Tournaments, Fox claims that it needs the requested materials to impeach those individuals. As an initial matter, these individuals are not likely to testify in the Civil Case given that Hawilla has passed away (as the government informed Fox), trial evidence established that each of the other four individuals has significant criminal exposure making invocation of the Fifth Amendment likely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, little, if any, weight should be given to the suggestion that Fox's failure to properly limit its requests to relevant information is cured simply by declaring that the individuals are "potential witnesses." The government respectfully submits that this Court should not accede to Fox's request to find that these materials are "discoverable" with no showing of relevance, especially where the district court in the Criminal Case has ruled through the protective order that the material should not be disclosed.

II.  Production of the Requested Materials Would Allow Fox to Circumvent the Criminal Discovery Rules And Risk Jeopardizing the Government's Ongoing Investigation

The Fox Requests are also objectionable because they impermissibly seek Jencks Act material through civil discovery, as well as protected consensual recordings.[5]  See Campbell v.

---

[5] Fox has specifically indicated that it is seeking consensual recordings made by cooperating witnesses never publicly disclosed by the government. While Fox suggested that "the government may redact the identity of confidential informants" from such recordings, this is clearly impractical, if not impossible, since the voice necessarily identifies the witness.

Eastland, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."). Fox's aggressive efforts to circumvent the criminal discovery rules are particularly objectionable in light of the fact that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Fox should not be permitted to obtain protected material to which only criminal trial defendants are entitled by using civil discovery to seek them from Napout, who has no property interest in them, during the narrow window before Napout must return or destroy them pursuant to the protective order. See United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005) ("Jencks requires the Government to produce copies of its witnesses' statements for inspection by the defense, for purposes of cross examination. It does not give defendants a property interest in such statements.").

Furthermore, disclosure of the requested materials to Fox and other parties to the Civil Case could jeopardize the government's ongoing criminal investigation into ███████████████████████████████████████. Courts have long recognized that preserving the integrity of an ongoing criminal investigation is a paramount consideration in limiting civil discovery. See May 15, 2018 Gov't Mem., ECF No. 385, at 12-14 (analyzing law enforcement privilege). This is particularly true, and the lack of proportionality of the Fox Requests is particularly striking, given that Fox already has the trial testimony of each of the five individuals.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sustain the government's objections as to the Fox Requests.

Dated:     Brooklyn, New York
           July 11, 2018

        Respectfully submitted,

        RANDY HUMMEL
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515.
Southern District of Florida

By:    /s/_____
Samuel P. Nitze
Special Assistant United States Attorney
Special Florida Bar ID No. A5502327
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6465
Fax: (718) 254-6320
samuel.nitze@usdoj.gov

M. Kristin Mace
Special Assistant United States Attorney
Special Florida Bar ID No. A5502326
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6879
Fax: (718) 254-6478
kristin.mace@usdoj.gov

Patrick T. Hein
Special Assistant United States Attorney
Special Florida Bar ID No. A5502324
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6284
Fax: (718) 254-7499
patrick.hein@usdoj.gov

Kaitlin T. Farrell
Special Assistant United States Attorney
Special Florida Bar ID No. A5502446
271 Cadman Plaza East
Brooklyn, New York 11201
Tel: (718) 254-6072
Fax: (718) 254-6320
kaitlin.farrell@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF on the 11th day of July, 2018.

/s/
Kaitlin T. Farrell
Special Assistant United States Attorney